## NOS. 24-10913(L); -11149 (XAP)

In The

# United States Court Of Appeals
# For The Eleventh Circuit

## DECLAN FLIGHT, INC.,
## RIGHT RUDDER AVIATION, LLC,

*Plaintiffs – Appellants/Cross-Appellees,*

v.

## TEXTRON EAVIATION, INC., TEXTRON, INC.,

*Defendants – Appellees/Cross-Appellants.*

ON APPEAL FROM THE MIDDLE DISTRICT OF FLORIDA

———————

### BRIEF OF PLAINTIFFS – APPELLANTS/CROSS-APPELLEES

———————

**John W. Barrett**
**BAILEY & GLASSER, LLP**
**209 Capitol Street**
**Charleston, WV  25301**
**(304) 345-6555**

*Counsel for Plaintiffs –*
*Appellants/Cross-Appellees*

**Leslie A. Brueckner**
**BAILEY & GLASSER, LLP**
**1999 Harrison Street**
**Suite 660**
**Oakland, CA  94612**
**(510) 272-8000**

*Counsel for Plaintiffs –*
*Appellants/Cross-Appellees*

**Robert R. Bell III**
**BAILEY & GLASSER, LLP**
**PO Box 1089**
**Hewitt, TX  76643**
**(304) 345-6555**

*Counsel for Plaintiffs –*
*Appellants/Cross-Appellees*

*GibsonMoore Appellate Services, LLC*
206 East Cary Street ♦ P.O. Box 1406 (23218) ♦ Richmond, VA  23219
(804) 249-7770 ♦ www.gibsonmoore.net

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Plaintiffs-Appellants
hereby certify that the following is a complete list of the trial judge, all attorneys,
persons, associations of persons, firms, partnerships, or corporations that have an
interest in the outcome of the particular case on appeal, including subsidiaries,
conglomerates, affiliates, and parent corporations, including any publicly held
corporation that owns 10% or more of the party's stock, and other identifiable legal
entities related to a party:

- Bailey Glasser LLP (counsel for Plaintiffs/Appellants)

- Barrett, John W. (counsel for Plaintiffs/Appellants)

- Bell, Robert R. (counsel for Plaintiffs/Appellants)

- Brueckner, Leslie A. (counsel for Plaintiffs/Appellants)

- Chan, Andrew (owner of Right Rudder Aviation, LLC)

- Declan Flight, Inc. (Plaintiff/Appellant)

- Freire, Andrew (attorney for Defendants/Appellees)

- Gibson Dunn & Crutcher LLP (counsel for
  Defendants/Appellees)

- Glasser, Brian A. (attorney for Plaintiffs/Appellants)

- Karlan, Mitchell A. (attorney for Defendants/Appellees)

- Kauffman, James L. (attorney for Plaintiffs/Appellants)

- Kennedy, Jessica M. (attorney for Defendants/Appellees)

- Lawson, Charles (owner of Right Rudder Aviation, LLC)

- McDonald Toole Wiggins, P.A. (counsel for Defendants/Appellees)

- Mesa Air Group (MESA)

- Mesa Airlines

- Pipistrel d.o.o.

- Pipistrel Italia S.r.l.

- Pipistrel Vertical Solutions d.o.o.

- Presnell, Gregory A. (United States District Judge)

- Richman, Scott A. (attorney for Defendants/Appellees)

- Right Rudder Aviation, LLC (Plaintiff/Appellant)

- Signorelli, Jacklyn (attorney for Defendants/Appellees)

- Sun, Timothy (attorney for Defendants/Appellees)

- Textron eAviation (Defendant/Appellee)

- Textron, Inc. (TXT) (Defendant/Appellee)

- Turner, John G. (attorney for Plaintiffs/Appellants)

- Wood, Bryan (owner of Declan Flight, Inc.)

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants respectfully request oral argument because this appeal concerns important issues regarding the interpretation of forum selection clauses. Oral argument would assist the Court in clarifying and testing the parties' arguments as to this important issue of law.

# TABLE OF CONTENTS

**Page:**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF AUTHORITIES ....................................................................vi

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ...............................................................1

STATEMENT OF THE ISSUES...............................................................1

INTRODUCTION ...............................................................................2

STATEMENT OF THE CASE...................................................................3

    A.    Course of Proceedings Below ...............................................3

    B.    Factual Overview ...............................................................4

    C.    The U.S. Focus of this Lawsuit .............................................8

    D.    The Contracts at Issue .....................................................13

    E.    Decision Below ...............................................................15

    F.    Standard of Review .........................................................18

SUMMARY OF THE ARGUMENT ......................................................19

ARGUMENT ....................................................................................22

    I.    The District Court Erred and Abused its Discretion in
Dismissing Counts I and II Based on the Doctrine of *Forum
Non Conveniens*....................................................................22

A.    The District Court Erred in Applying Federal Law to Determine Whether the Contracts' Forum Selection Clauses May Be Enforced by a Non-Signatory.......................22

    1.    Slovenian Law Governs Whether the Contracts' Forum Selection Clauses Can Be Enforced by a Non-Signatory....................................................................22

    2.    Under Slovenian Law, Only Signatories are Bound By A Contract's Jurisdictional Provisions ....................24

B.    The Court Abused its Discretion in Dismissing this Case Based on the Doctrine of *Forum Non Conveniens* ...................26

    1.    The Court Abused its Discretion in Holding that *Atlantic Marine* Forbids Consideration of the Plaintiffs' Private Interests in Litigating this Case in the United States ..........................................................28

    2.    The District Court Also Abused its Discretion When Evaluating the Public Factors Weighing Against Dismissal ............................................................33

C.    The District Court Erred in Dismissing Count III Because Plaintiffs Argued that Textron Interfered with Right Rudder's Relationship with Mesa and Supported that Argument with Specific Citations to the Record.....................36

CONCLUSION.....................................................................................................43

CERTIFICATE OF COMPLIANCE.......................................................................44

CERTIFICATE OF SERVICE ................................................................................45

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Atlantic Marine Const. Co., Inc. v.
U.S. Dist. Court for the Western Dist. Of Texas*,
  571 U.S. 49 (2013)............................................. 16, 20, 21, 28, 29, 30, 31, 32

*Baldwin v. Express Oil Change, LLC*,
  87 F.4th 1292 (11th Cir. 2023) ................................................................19, 27

*C.A. La Seguridad v. Transytur Line*,
  707 F.2d 1304 (11th Cir. 1983) ...............................................................19, 27

*Erie v. Tompkins*,
  304 U.S. 64 (1938)............................................................................................24

*Farah v. Canada*,
  740 So.2d 560 (Fla. Dist. Ct. App. 1999)......................................................41

*Firexo, Inc. v. Firexo Group Limited*,
  __ F.4th __, 2024 WL 1597520 (6th Cir. April 12, 2024) ......... 19-20, 23, 24

*Ford v. Brown*,
  319 F.3d 1302 (11th Cir. 2003) ......................................................27, 31, 33

*Fresh Results LLC v. ASF Holland, B.V.*,
  921 F.3d 1043 (11th Cir. 2019) ......................... 16, 17, 18, 20, 27, 28, 32, 33

*In re Rolls Royce Corp.*,
  775 F.3d 671 (5th Cir. 2014) ........................................................................ 31

*In re: Howmedica Osteonics Corp*,
  867 F.3d 390 (3d Cir. 2017) ........................................................... 28-29, 31

*Jysk Bed'N Linen v. Dutta-Roy*,
  810 F.3d 767 (11th Cir. 2015) ......................................................................19

*King v. Cessna Aircraft Co.*,
  562 F.3d 1374 (11th 2009) .............................................................................33

*Lumbermens Mut. Cas. Co. v. August*,
    530 So.2d 293 (Fla. 1988) ...............................................................25

*Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc*.,
    939 F.3d 1145 (11th Cir. 2019) .......................................................19

*MS Dealer Serv. Corp. v. Franklin*,
    177 F.3d 942 (11th Cir. 1999) .........................................................18

*Newbauer v. Carnival Corp.*,
    26 F.4th 931 (11th Cir.), *cert. denied*,
    143 S. Ct. 212, 214 L. Ed. 2d 83 (2022)...........................19, 21, 37

*P&S Business Machines, Inc. v. Canon USA, Inc.*,
    331 F.3d 804 (11th Cir. 2003) ....................................................22, 23

*Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc*.,
    363 F.3d 1089 (11th Cir. 2004) .......................................................25

*Slater v. Energy Servs. Grp. Int'l, Inc*.,
    634 F.3d 1326 (11th Cir. 2011) .......................................................18

*The Bremen v. Zapata Off–Shore Co*.,
    407 U.S. 1 (1972)..............................................................................29

*Weiland v. Palm Beach Cnty. Sherriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015) .......................................................42

*Wylie v. Island Hotel Co. Ltd.*,
    774 F. App'x 574 (11th Cir. 2019)..................................................24

*Wylie v. Island Hotel Co. Ltd.*,
    No. 15-24113, 2018 WL 3421374 (S.D. Fla., July 13, 2018)........24

*Wylie v. Kerzner International Bahamas Ltd.*,
    706 F. App'x 577 (11th Cir. 2017)............................................23, 27

**Statutes:**

28 U.S.C. § 1291 ...............................................................................1

28 U.S.C. § 1332(a)(1) .......................................................................1

28 U.S.C. § 1404(a) .........................................................................31

**Regulations:**

*Art. 4 Rome II Regulation* ................................................................35

**Rules:**

Fed. R. Civ. P. 12(b)(6).............................................................2, 19, 37

**Other Authorities:**

Decision of the Appellate Court in Ljubljana, II Cp
    26 1950/2015 of 2 September 2015............................................26

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This suit was filed in the United States District Court for the Middle District of Florida. That court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because the parties are all residents of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291. The district court entered an order dated March 12, 2024, dismissing all claims asserted by Plaintiffs-Appellants. This order disposed of all issues and all parties. Plaintiffs-Appellants filed their notice of appeal on March 26, 2024.

## STATEMENT OF THE ISSUES

1.  Whether the district court erred in applying the federal doctrine of equitable estoppel to allow a non-signatory to enforce contractual forum selection clauses against the parties to the contracts where (a) the underlying contracts specified application of Slovenian law; and (b) under Slovenian law, a contractual forum selection clause only applies to the signatories to the contract.

2.  Whether the district court abused its discretion in dismissing Counts I and II on *forum non conveniens* grounds where (a) all the parties to this case are U.S. companies; (b) the majority of the case's witnesses reside in the U.S.; (c) the majority of the underlying tortious activity occurred in the U.S.; (d) the majority of the relevant documents would have to be translated from

English to Slovenian; and (e) a Slovenian court would have to apply U.S. law to decide the case.

3.      Whether the district court erred in dismissing Count III with prejudice for failure to state a claim under Rule 12(b)(6) where Plaintiffs pled plausible facts supporting Count III's contention that Defendants intentionally and deliberately schemed to steal Plaintiff Right Rudder Aviation, LLC's business with non-party Mesa Airlines, leading to the breach of a contract between them, and incorporated those facts in their opposition to the motion to dismiss.

## INTRODUCTION

This appeal arises out of a classic case of tortious interference by two U.S. companies (Defendants-Appellees Textron eAviation, Inc. ("Textron eAviation"), and Textron, Inc. ("Textron") (collectively, "Textron")) against two other U.S. companies (Plaintiffs-Appellants Declan Flight, Inc. ("Declan") and Right Rudder Aviation, LLC ("Right Rudder"), collectively, "Plaintiffs").  Plaintiffs allege that Textron tortiously interfered with contracts they had entered into with Slovenian electric aircraft manufacturer, Pipistrel, and with Mesa Airlines, Inc. ("Mesa"), both non-parties to this action.[1]

---

[1] The three contracts are described below in Section D as the Declan-Pipistrel Contract, the Right Rudder-Pipistrel Contract, and the Right Rudder-Mesa Contract.

Even though all parties to this case are U.S. corporations, all material witnesses reside in the U.S., the vast majority of Textron's tortious misconduct occurred in the U.S., and all of Plaintiffs' damages stem from injury to their financial interests in the U.S. marketplace, the district court dismissed the first two counts of Plaintiffs' complaint on *forum non conveniens* grounds on the basis that Textron allegedly interfered with contracts between Plaintiffs and non-party Pipistrel, a Slovenian company. The district court then dismissed the third count — which relates to a contract with U.S.-based non-party Mesa — on the ground that Plaintiffs failed to state a claim, thereby disposing of this entire case. Each of these decisions was error and should be reversed.

## STATEMENT OF THE CASE

### A.    Course of Proceedings Below.

Declan and Right Rudder filed their original complaint on May 11, 2023. Doc 1 at 1.[2] Textron filed a Motion to Dismiss for Lack of Jurisdiction on July 21, 2023. Doc 27 at 1. In response, Declan and Right Rudder filed their First Amended Complaint. Doc 44 at 1. As a result, the district court denied as moot Textron's prior motion. Doc 49 at 1-2.

---

[2] References to the Appendix refer to the docket number ("Doc") followed by the page number included in the header generated by the district court's electronic filing system (for example, Doc 74 at 3-6), or instead, where applicable, the docket number followed by the paragraph number (for example, Doc 76 at ¶ 61).

On September 29, 2023, Textron filed a Motion to Dismiss Plaintiffs' First Amended Complaint, or in the Alternative to Stay the Case. Doc 52 at 1. Declan and Right Rudder responded in opposition on November 3, 2023. Doc 65 at 1. To correct a pleading deficiency, Declan and Right Rudder also moved to amend by interlineation or in the alternative to file a Second Amended Complaint. Doc 68 at 3-6. The district court granted Textron's Motion to Dismiss without prejudice and gave Declan and Right Rudder until December 1, 2023, to file a Second Amended Complaint. Doc 74 at 3-6.

The Second Amended Complaint ("SAC") was timely filed. Doc 76 at 1. Textron again moved to dismiss the complaint or to stay the case, which Declan and Right Rudder opposed. Doc 79 at 1; Doc 91 at 1. On March 12, 2024, the district court granted the Motion to Dismiss. Doc 95 at 24.

Declan and Right Rudder filed a joint notice of appeal on March 26, 2024. Doc 96 at 1.

**B.    Factual Overview.**

This appeal involves a calculated plan by Textron, a large multinational corporation, to not only to enrich itself at the expense of Right Rudder and Declan, two small American companies, but also to ruin their businesses in the process.

Textron's actions began two years ago when it was looking to branch into the burgeoning electric airplane business in the United States. Textron was

4

introduced as a potential business partner/purchaser and/or acquirer to Slovenian airplane manufacturer Pipistrel by Pipistrel's U.S. contractor, Declan.[3] Doc 76 at ¶¶ 61-63.  Declan's job, as described in the Declan-Pipistrel Contract, was to promote the sale of Pipistrel's planes in the Americas' market in exchange for a 5% commission on all of Pipistrel's American sales.  *Id*. at ¶¶ 59-60, 69.

Declan would come to regret making the introduction.  A few months later, Textron, through various European subsidiaries, devised a scheme to acquire 90% of Pipistrel's equity.  *Id*. at ¶¶ 5, 52-55.[4]  Spurred on by Textron's ongoing efforts to undermine Declan's relationship with Pipistrel, Pipistrel ended up terminating its contractual relationship with Declan on June 6, 2022, thereby freezing Declan out of its promised 5% commission and other fees. *Id.* at ¶¶ 73, 81.  Declan maintains that the termination of its contract with Pipistrel amounts to a breach and that Declan is still owed commissions under that contract. *Id.* at ¶ 84.

Meanwhile, Right Rudder began working with Pipistrel after signing a contract on September 27, 2021, to act as its exclusive U.S. distributor. *Id.* at ¶ 93. Thereafter Right Rudder began investing heavily in the infrastructure and

---

[3] "Pipistrel" as used herein refers to Pipistrel d.o.o., Pipistrel Vertical Solutions d.o.o., and Pipistrel Italia S.r.l.

[4] Notwithstanding this acquisition, Textron's indirect purchase of Pipistrel was not an asset sale, but rather was a stock purchase, meaning that Pipistrel continues its existence and remains the Contracting Authority for purposes of the contracts between Plaintiffs and Defendants. Doc 76 at ¶ 82.

equipment necessary to create and manage the U.S. distributor network. *Id*. at ¶¶ 97-98. Less than a year later, after Pipistrel was indirectly acquired by Textron, Right Rudder was reassured it remained an important partner. *Id*. at ¶¶ 99-101.

During the summer of 2022, Right Rudder began working on the specifics for a large fleet sale with non-party Mesa , which was completed and executed in August (the "Right Rudder-Mesa Contract"). *Id*. at ¶¶ 104-11. After the contract was signed and pricing negotiated between Right Rudder and Pipistrel, however, Textron told Right Rudder that the deal could not be "approved and proposed an alternative deal to Right Rudder whereby its commission structure was greatly reduced" and its exclusivity rights were diminished. *Id.* at ¶¶ 112-13.  Ultimately, at Textron's direction, Pipistrel ended up terminating its contract with Right Rudder, cutting Right Rudder out of its lucrative role as the exclusive distributor of Pipistrel's planes in the U.S. *Id*. at ¶ 125. These actions also caused Mesa to back out of its fleet-sale contract with Right Rudder  due to Pipistrel's refusal to deliver the planes to Right Rudder, and instead purchase the planes directly from Textron. *Id*. at ¶ 125.

 In short, through its single acquisition of Pipistrel, Textron terminated three contractual relationships with U.S. companies, saving it millions of dollars and casting Declan and Right Rudder aside and stepping in to assume their sales and distribution roles. Doc 76 at ¶ 83 (alleging that Textron recognized "the value of

misappropriating [the Declan] contract for themselves and turning Declan into a shell of the vibrant and fast-growing corporation it once was"); *Id.* at ¶ 101 (alleging that "Textron intended to take over the sale of Pipistrel aircraft sold by RRA, disband the existing distributor network, and work to otherwise injure RRA so that Textron could profit by eliminating RRA from the picture."); *Id.* at ¶ 125 (alleging that because of Textron's tortious interference, "Mesa cancelled the Mesa Agreement and entered into a new contract directly with Pipistrel.").

Declan and Right Rudder jointly filed this tortious interference action against Textron in Florida under Florida law, where Textron had committed most of the tortious acts underlying this action (more on this point below at Point C). Plaintiffs contend that Textron colluded with and ultimately directed both Pipistrel and Mesa to breach their contracts with Plaintiffs.

To defend itself, Textron devised an exculpatory plan: even though Textron was not a party to any contract with Declan or Right Rudder, Textron sought to defeat Declan and Right Rudder's lawsuit by asserting a Slovenian forum selection clause in those companies' contracts with non-party Pipistrel. Doc 79 at 16.

This strategy succeeded in the district court. Despite the fact that this action is between four U.S. companies over alleged tortious interference in the U.S., and all material witnesses—including the principals of each company—are in the U.S., the district court dismissed the first two counts of this dispute based on Slovenian

forum selection clauses in the contracts between Plaintiffs and Pipistrel to which Textron is neither a party nor a successor. As to the third count, which relates to Textron's interference with a contract between Right Rudder and non-party Mesa that selects Florida as the appropriate forum, the district court denied Textron's motion to dismiss for lack of personal jurisdiction but granted the motion based on Plaintiffs' alleged failure to state a claim. Doc 95 at 12 n.4 and 24. This appeal followed.

## C.    The U.S. Focus of this Lawsuit.

This case has no connection to Slovenia aside from the fact that Textron allegedly tortiously interfered with contracts between Plaintiffs and non-party Pipistrel, a Slovenian company. Not only are all the parties to this suit U.S. companies,[5] but virtually all the events that gave rise to this case occurred in the United States—particularly (but not exclusively) in Florida, where Right Rudder is located and which is a major U.S. market for aviation products. Doc 76 at ¶¶ 35-36, 50.

---

[5] Right Rudder, which served as Textron's exclusive U.S. distributor, is an LLC created under the laws of Florida with its principal place of business located in Florida. Doc 76 at ¶ 15. Declan, which served as Textron's U.S. sales representative, is a corporation organized and existing under the laws of Arizona with its principal place of business in Scottsdale, Arizona. *Id.* at ¶ 16. Textron is a multibillion-dollar conglomerate organized under the laws of Delaware with its principal place of business is in Rhode Island. *Id.* at ¶¶ 17, 47. Textron eAviation, an agent and subsidiary of Textron, is a corporation organized under the laws of Delaware with its principal place of business is in Kansas. *Id.* at ¶ 19.

For example, on June 6, 2022, Declan's CEO Bryan Wood travelled to Wichita, Kansas for a meeting with Textron's Special Missions Team. Instead of that meeting, Mr. Wood was taken to a conference room where Textron eAviation's then-CEO Robert Scholl and Nicholas Begley, Finance Director for Textron Aviation, were waiting. Mr. Scholl then ambushed Mr. Wood by handing a letter to Mr. Wood on Textron eAviation letterhead purportedly terminating Declan's Contract with Pipistrel. *Id.* at ¶ 81; Doc 76-6 at 2.

This meeting took place just a few short weeks after Mr. Wood had travelled to Florida to meet with several potential customers at Mr. Scholl's direction. During this trip, Mr. Wood had a meeting with Gabriel Massey, a former Textron employee who had been named President of Pipistrel. In this meeting, Mr. Wood explained to Mr. Massey the terms of Declan's contract with Pipistrel. Doc 76 at ¶¶ 45, 77.

The bulk of the tortious misconduct alleged in this case in furtherance of Textron's plan to take over Plaintiffs' businesses also occurred in the United States.  For example, on March 29, 2022, Textron eAviation's CEO Robert Scholl made a specific trip to Right Rudder's facilities in Inverness, Florida in order to "tortiously interfere with Right Rudder's contractual relationship with Pipistrel and injure its business overall." *Id.* at  ¶ 34. During that meeting, Mr. Scholl allegedly obtained "significant information" regarding RRA's processes and important customer leads that Right Rudder was working on.  *Id.* at ¶¶ 36,  102.

9

Furthermore, "[o]btaining this information was critical to Textron's overall scheme to rid its new subsidiary, Pipistrel, of the [Right Rudder-Pipistrel] Contract." *Id.* at ¶ 36.

Textron also allegedly sent Steve McKenna, a former Textron employee and current Director of Sales and Marketing for Pipistrel, to Florida "for the specific goal of setting up meetings with [Right Rudder's] customers and dealers located in Florida, disparaging [Right Rudder] and stealing [Right Rudder]'s business." *Id.* at ¶ 37.

"Furthermore," Plaintiffs allege, Textron "committed an act of tortious interference" when it attended and participated as a presenter of Pipistrel aircraft at the Orlando Florida 2022 NBAA Business Aviation Convention & Exhibition, where it had a display and was offering to sell aircraft to the public in Florida. *Id.* at ¶ 38. Right Rudder had been scheduled to participate in this Convention, but "was instructed by Textron eAviation's General Counsel, Fletcher Thomson, not to appear at this show." *Id.* Then, having instructed Right Rudder not to appear at this important show, Textron eAviation's CEO Mr. Scholl participated *instead*, "as evidenced by the picture of Mr. Scholl at that airshow/sales event in front of a Pipistrel aircraft with a Textron eAviation sign displayed prominently over his shoulder, which was posted publicly on Textron eAviation's LinkedIn page." *Id.*

As a result, "[Right Rudder] was not only being cut out of its contract, but it was also being cut out of business overall." *Id.*

Plaintiffs further allege that Textron eAviation's LinkedIn page encouraged prospective buyers to "[m]ake sure you come check out the latest in aviation at the Textron eAviation booth." *Id.* According to Plaintiffs, these trade shows and sales events "are critical to sales," and Textron "knew that fact, which is precisely why they moved to block [Right Rudder]'s access to the trade show while simultaneously marketing Pipistrel's products at their own booth." *Id.* Plaintiffs assert that "[t]his act by Textron eAviation in Florida, as the agent of Textron, constitutes an act of tortious interference specifically related to the contracts at issue in this suit." *Id.*

Another act of tortious interference directed at Right Rudder occurred in June 2022 at a "UP Summitt" air show in Bentonville, Arkansas, where Textron persuaded event staffers to physically bar Right Rudder personnel from participating in the event so that Textron could promote and sell Pipistrel aircraft instead. According to Plaintiffs, "[t]his act constituted tortious interference with the Distribution Contract causing its breach." *Id.* at ¶ 117.

On the heels of this event in Arkansas, Textron committed yet another act of tortious interference against Right Rudder at the July 2022 "EAA AirVenture Oshkosh Airshow," in Oshkosh, Wisconsin—which, according to Plaintiffs, "is the

most famous airshow and sales event in the world with over 650,000 attendees." *Id.* at ¶ 120. Textron was allegedly trying to steal Right Rudder's business by "displaying an actual Pipistrel Velis Electro despite the fact that [Right Rudder] was the exclusive U.S. Distributor for that product." *Id.* Making matters worse, Textron eAviation's CEO Mr. Scholl "and others" allegedly "came over to the RRA booth to take pictures of themselves in front of some of the Pipistrel aircraft that RRA was displaying. Those pictures were then posted on Pipistrel's LinkedIn and people were encouraged to contact Mr. Scholl 'of Textron eAviation,' instead of RRA, if they were interested in learning more about the products." *Id.*

Things came to a head in October 2022, when, as noted, Right Rudder "was instructed by Textron eAviation's General Counsel Fletcher Thomson not to appear" at the 2022 NBAA Business Aviation Convention & Exhibition in Orlando, Florida. *Id.* at ¶ 123. In response, Right Rudder "specifically warned" Textron against participating in that show to market Pipistrel's products. "Nevertheless," Plaintiffs alleged, "that is exactly what happened as evidenced by the picture of Mr. Scholl at that airshow and sales event in front of a Pipistrel aircraft with a Textron eAviation sign displayed prominently over his shoulder, which was posted on Textron eAviation's LinkedIn page. Once more, Textron eAviation, as Textron's agent, was interfering with the Distribution Contract and causing its breach." *Id.*

12

Shortly thereafter, on November 11, 2022, Textron "implemented [its] plan to get rid of [Right Rudder] by directing Pipistrel to send [Right Rudder] a letter terminating the [Right Rudder-Pipistrel] Contract." *Id.* at ¶ 124. At that point, Plaintiffs allege, Textron's "mission was nearly complete." *Id.* at ¶ 125. All that remained to be done was for Textron to "completely cut [Right Rudder] out of" the sale of a fleet of 100 Pipistrel airplanes to Mesa Airlines, a sale that would have been the second largest sale in the company's history. *Id.* at ¶¶ 108, 125. Mesa ultimately "cancelled the Mesa Agreement and entered into a new contract directly with Pipistrel," due to Pipistrel's refusal to deliver the planes to Right Rudder. *Id.* at ¶ 125.

Mission accomplished, indeed. As a result of all these actions, Plaintiffs allege, "Declan is now a shell of a company … and the operations of RRA have been gravely and permanently injured." *Id.* at ¶ 14.

## D.    The Contracts at Issue.

As the district court observed, this case involves three distinct contracts.

First, Count I relates to the contract that Declan executed with Pipistrel in October 2020 (the "Declan-Pipistrel Contract") that was due to run until December 31, 2021, and was extended through December 31, 2024. *Id*. at ¶¶ 58-59; Doc 76-3 at ¶ 8.2, et seq. The Declan-Pipistrel Contract charged Declan with "spearhead[ing] the [U.S.] sales of the Pipistrel products and provid[ing] sales support services" in

exchange for a monthly salary and commissions. Doc 76 at ¶¶ 59-60; *see also* Doc 76-2 at ¶¶ 1.1-1.3, 2.1-2.8, 4.1; Doc. 76-3 at ¶¶ 1.1-1.3, 2.1-2.8, 4.1. It contains a dispute resolution clause which states:

> Any controversial relations arising from this or in connection with this contract will be settled primarily by the contracting parties by mutual consent, otherwise the dispute shall be settled by the court having jurisdiction over the seat of the Contracting Authority.

Doc 76-2 at ¶ 9.1. The Declan-Pipistrel Contract identifies Pipistrel, located in Slovenia, as the "Contracting Authority." *See id.* at 2; Doc. 76-3 at 2.

The second contract at issue is the September 27, 2021 contract described in Count II between Right Rudder and Pipistrel (the "Right Rudder-Pipistrel Contract"), whereby Right Rudder became Pipistrel's exclusive distributor in the United States. Doc 76 at ¶ 93. The Right Rudder-Pipistrel Contract contains the following forum-selection clause: "In case of dispute the courts of Nova Gorica, Slovenia shall have jurisdiction." Doc 76-4 at ¶ 28.2 (emphasis added). Additionally, the Right Rudder Contract states that it is "governed by the laws of Slovenia." *Id.* at ¶ 27.1.

The third contract at issue is the contract between Right Rudder and non-party Mesa (the "Right Rudder-Mesa Contract"). Doc 76 at ¶ 91. The Right Rudder-Mesa Contract, signed in August 2022, delineated Mesa's purchase from Right Rudder of 25 Pipistrel aircraft, with an option to purchase another 75 such planes from Pipistrel. *Id.* at ¶¶ 110-111. The Right Rudder-Mesa Contract states

that it "shall be interpreted under and governed under the laws of Citrus County, Florida" and "any dispute or claim arising out of [it]…shall be filed in the courts of Citrus County, FL." Doc 90-2 at 5. It also states in more detail that:

> Any dispute arising under, out of, or related in any way to this Agreement or the legal relationship between Seller and Purchaser will be adjudicated solely and exclusively in the Citrus County, Florida, USA. Each of the parties consent to the exclusive personal jurisdiction of these courts and by signing this Agreement, waives any objection to venue of these Florida courts.

*Id.*, Part 2, ¶ 5.

### E.    Decision Below.

The district court dismissed this lawsuit in its entirety on March 12, 2024. Doc 95 at 24.  As to Counts I and II, the court ignored Textron's argument that the court lacked personal jurisdiction over it as to those claims.  Instead, the court moved directly to the issue of whether the case should be dismissed based on the forum selection clauses in the contracts between Plaintiffs and non-party Pipistrel. *Id.* at 9.

On this point, the Plaintiffs had argued that the issue was governed by Slovenian law and that, under Slovenian law, a jurisdiction provision is only binding on the contractual parties. Doc 91 at 13-14.  The district court disagreed, holding that Textron is entitled to seek enforcement of the contracts' forum selection clauses based on the federal doctrine of equitable estoppel.  Doc 95 at 10-11.

15

The district court then turned to whether the court should dismiss the case based on the doctrine of *forum non conveniens. Id.* at 11. On that issue, the district court acknowledged that, because the doctrine "effectively deprives the plaintiff of his favored forum," defendants usually bear a significant burden to justify dismissal on that basis. *Id.* at 12 (citing *Fresh Results LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1048 (11th Cir. 2019)). The court further acknowledged that, in the usual case, "the defendant must establish that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Id*. at 12 (citation omitted).

The district court held, however, that because the contracts between Pipistrel and Plaintiffs contain valid forum selection clauses, the private factors weighing against dismissal—which include the location of the parties, witnesses, and material evidence and the overall difficulty of litigating the case in a foreign forum—are entitled to *no* weight whatsoever. *See id.* at 14-15 (citing *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. Of Texas*, 571 U.S. 49, 64 (2013)).

Based on this reading of *Atlantic Marine*—which, as argued below, was incorrect—the district court refused to even consider Plaintiffs' arguments that it would be difficult, if not impossible, to try this case in Slovenia, given that all the

16

material witnesses reside in the U.S., the tortious misconduct occurred here, and Plaintiffs damages are based on injury to their financial interests in the U.S. marketplace. Instead, the court ruled that the "public factors" favor a Slovenian forum for this dispute given "Slovenia's interest in resolving disputes governed by Slovenian law at home." *Id*. at 16. In so ruling, the court did not acknowledge that Plaintiffs had submitted a declaration from an expert in Slovenian law who opined that a Slovenian court would apply *U.S.* law, not Slovenian law, in evaluating Plaintiffs' tortious interference claims. Doc 91-1 at ¶¶ 55-67.

Having dismissed Counts I and II on *forum non conveniens grounds*, the district court then turned to Count III, which involves Textron's interference with Right Rudder's contract for a sale of planes to Mesa (which specifies Florida as the appropriate forum). As to Count III, the court rejected Textron's personal jurisdiction argument, holding that Plaintiffs' allegations regarding Textron's "pivotal role" in causing the "delay of delivery of aircraft from Pipistrel to [Right Rudder] (in Florida), thereby preventing [Right Rudder] from performing its duties under the Mesa Contract … are sufficient to satisfy Florida's Long Arm Statute." Doc 95 at 18 (citations omitted). The court further held that, because the Right Rudder-Mesa Contract specified Florida as the appropriate forum, it was "eminently foreseeable [to Textron] that any future lawsuits" related to that contract "would be decided in compliance with the forum selection clause." *Id.* at 20.

The district court went on to rule, however, that Plaintiffs had failed to state a tortious interference claim as to the Right Rudder-Mesa Contract, "[b]ecause [Right Rudder] failed to respond to Defendants' plausible arguments that the Complaint shows that Mesa chose to renegotiate its contract of its own accord, … [and thus] RRA has tacitly conceded those arguments." *Id.* at 23 (citations omitted). Based on this reasoning, and without considering whether Textron's argument as to Count III was correct on the merits, the district court dismissed Count III with prejudice.[6]

## F.    Standard of Review.

**Counts I and II.** The enforceability of a forum-selection clause is a question of law subject to *de novo* review. *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1329–30 (11th Cir. 2011). Further, whether the doctrine of equitable estoppel applies is a question of law that is reviewed *de novo*. *Id*. (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 946 (11th Cir. 1999).

A district court's determination regarding *forum non conveniens* is reviewed for abuse of discretion. *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1048 (11th Cir. 2019). A district court abuses its discretion when "it applies an

---

[6] The district court also noted in a footnote that the Second Amended Complaint is a "prohibited 'shotgun pleading' because it … lump[s] claims against both Defendants without specifying which of the defendants are responsible for which acts or omissions," but did not base its decision on that ground. Doc 95 at 23, n.11 (citation omitted).

incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous." *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 773–74 (11th Cir. 2015) (internal quotations omitted).

In deciding a *forum non conveniens* motion, "[a] court abuses its discretion when it fails to balance the relevant factors." *C.A. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir. 1983). "An error of law is an abuse of discretion per se." *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc*., 939 F.3d 1145, 1153 (11th Cir. 2019) (internal quotation marks omitted); *see also Baldwin v. Express Oil Change, LLC*, 87 F.4th 1292, 1301 (11th Cir. 2023).

**Count III.** This Court "review[s] *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir.), *cert. denied*, 143 S. Ct. 212, 214 L. Ed. 2d 83 (2022) (cited authority omitted).

## SUMMARY OF THE ARGUMENT

The district court committed three distinct errors in dismissing this case.

*First*, the district court erred by allowing Textron, a non-signatory to the underlying contracts between Plaintiffs and Pipistrel, to enforce the forum selection clauses in those contracts against Plaintiffs. As the Sixth Circuit recently held in *Firexo, Inc. v. Firexo Group Limited*, __ F.4th __, 2024 WL 1597520 *20

(6th Cir. April 12, 2024), the question of whether a contract's forum selection clause applies to a non-signatory is governed by the choice-of-law provision set forth in that contract.  In this case, Textron conceded in its Motion to Dismiss that the contracts between Plaintiffs and Pipistrel are governed by Slovenian law.  And it is clear that, under Slovenian law, a forum selection clause *cannot be invoked by a non-signatory*. That fact alone should have put an end to Textron's attempt to transfer this case to Slovenia.

*Second*, the district court erred—and thus abused its discretion—in concluding that this case should be dismissed under the doctrine of *forum non conveniens*, the "central purpose [of which] is to ensure that the trial is convenient.'" *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1048 (11th Cir. 2019) (cleaned up; citation omitted).  In so ruling, the district court refused to consider any of the reasons why trying this case in Slovenia would not just be inconvenient, it would be virtually impossible given that all the material witnesses and evidence are here in the United States and every relevant document would have to be translated into Slovenian.

The district court's refusal to consider this crucial fact was based on its misreading of the U.S. Supreme Court's decision in *Atlantic Marine*, 571 U.S. at 64, which held that where the "parties" to a contract have agreed to a forum selection clause, a court should not consider the private factors weighing against

dismissal.  That was error, because *Atlantic Marine*'s holding only applies to cases involving contractual signatories—and Textron is undisputedly not a party to any of the contracts at issue in this case.

*Third*, the district court erred by dismissing Count III with prejudice for failure to state a claim.  On this point, the court held that Plaintiffs' Opposition to the Motion to Dismiss "failed to respond to Defendants' plausible arguments that the Complaint shows that [non-party] Mesa chose to renegotiate its contract of its own accord," and therefore "tacitly conceded those arguments."  Doc 95 at 23. That is simply untrue. The district court ignored that Plaintiffs' opposition emphasized outlined Textron's deliberate, concerted, and ultimately successful efforts to cast Right Rudder aside and steal its business with Mesa, directly citing to the supporting allegations of the SAC. *See* Doc 91 at 26 (stating that Textron's "heinous actions" included "the stealing of the RRA-Mesa Airlines Fleet Sale" and citing SAC ¶¶ 14, 155); *id.* at 27 (stating that Textron "successfully used its market power to steal the RRA-Mesa Airlines Fleet Sale" and citing SAC ¶¶ 104–11).

The district court's refusal to acknowledge these arguments was wrong as a matter of plain fact.  The court's dismissal also violated the settled principle that complaint allegations must be taken as true and construed in the light most favorable to the non-movant. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir.), *cert. denied*, 143 S. Ct. 212 (2022) (cited authority omitted). The district court's dismissal of Count III must therefore be reversed.

21

## ARGUMENT

### I.    The District Court Erred and Abused its Discretion in Dismissing Counts I and II Based on the Doctrine of *Forum Non Conveniens*.

The district court dismissed Counts I and II on *forum non conveniens* grounds based on the fact that "both contracts underlying Plaintiffs' claims for tortious interference contain mandatory forum-selection clauses that require any disputes arising out of those contracts … to be resolved by the courts of Slovenia." Doc 95 at 22. This was error for several reasons.

### A.    The District Court Erred in Applying Federal Law to Determine Whether the Contracts' Forum Selection Clauses May Be Enforced by a Non-Signatory.

First, the district court erred in applying federal law to decide the threshold issue of whether the contracts' forum selection clauses could be enforced by a non-signatory to the contracts—here, Textron.  *See* Doc 95 at 10.  As explained below, the issue of whether a forum selection clause can be enforced by a non-signatory is governed by Slovenian law, not federal law. And, unlike federal law, Slovenian law provides that a jurisdictional provision in a contract can only be enforced by the contract's parties.

### 1.    Slovenian Law Governs Whether the Contracts' Forum Selection Clauses Can Be Enforced by a Non-Signatory.

The district court cited *P&S Business Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003), for the proposition that "[c]onsideration of

whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law…not state law." Doc 95 at 9-10.  Is so ruling, the district court read *P&S* too broadly:  although the *enforcement* of a forum selection clause is governed by federal law, the actual *interpretation* of a clause—including the issue of whether a non-signatory can enforce such a clause against the contract's signatories—is governed by the law specified in the contract.

So held the Sixth Circuit in *Firexo, Inc. v. Firexo Group Limited*, -- F.4th --, 2024 WL 1597520 (6th Cir. April 12, 2024), which held that question of whether a non-signatory is subject to a forum selection clause is governed by the law specified in the underlying contract—in that case, English law.

In so ruling, *Firexo* addressed the question that was "left unanswered" by this Court in *Wylie v. Kerzner International Bahamas Ltd.*, 706 F. App'x 577, 578 (11th Cir. 2017): namely, whether "a forum-selection clause's *applicability* is distinct from and antecedent to its *enforceability*, such that the law of the state and/or the contract (or the combination of the two) determines whether the forum-selection clause applies to the non-signatory; or whether applicability is just a part of the federal law of enforceability, such that the federal-common-law "closely related" doctrine decides." *Id.* at *14 (emphasis added).[7]

---

[7] In *Wylie*, the district court enforced a forum selection clause against a non-signatory based on federal law. This Court vacated and remanded for consideration of "whether the validity of a forum-selection clause [as applied to a non-signatory]

After a lengthy and exhaustive analysis, the Sixth Circuit ultimately held that fealty to *Erie* principles require that a federal court sitting in diversity begin with a conflict-of-laws analysis using the law of the State in which it sits … to determine the governing law, and then interprets the contract provision under that law."  *Id*. at *19.  The Court applied English law based on the fact that neither party argued for Ohio law.  *Id*. at *20.  Because English law does not allow for non-signatories to be bound by contractual provisions, the Sixth Circuit denied the motion to dismiss on *forum non conveniens grounds*.  *Id*.

### 2.    Under Slovenian Law, Only Signatories are Bound By A Contract's Jurisdictional Provisions.

Under *Firexo*, the district court here clearly erred in applying federal law to determine whether the forum selection clauses in the contracts between Plaintiffs and Pipistrel apply to Textron, a non-signatory.  As the Sixth Circuit concluded in *Firexo*, applying federal law to decide that question does violence to the core principles enunciated in *Erie v. Tompkins*, 304 U.S. 64 (1938).  Thus, absent

---

is distinct from, and antecedent to, its enforceability [and thus is governed by state law], or whether the validity of such a clause is just part of the federal law of enforceability." 706 F. App'x at 580. But on remand the district court ruled that "[a] traditional *forum non conveniens* analysis mandates that this case be dismissed, regardless of whether there is a valid and enforceable forum selection clause binding Ms. Wylie." *Wylie v. Island Hotel Co. Ltd.*, No. 15-24113, 2018 WL 3421374, at *2 (S.D. Fla., July 13, 2018). In the ensuing appeal, the Eleventh Circuit affirmed on that basis and "d[id] not address whether the forum-selection clause was valid and enforceable against Ms. Wylie." *Wylie v. Island Hotel Co. Ltd.*, 774 F. App'x 574, 580 (11th Cir. 2019).

agreement between the parties as to the applicable law, that issue should be governed by state law, not federal law.

Under Florida's choice-of-law rules, "the laws of the jurisdiction where the contract was executed governs interpretation of the substantive issues regarding the contract." *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc*., 363 F.3d 1089, 1091 (11th Cir. 2004) (quoting *Lumbermens Mut. Cas. Co. v. August*, 530 So.2d 293, 295 (Fla. 1988)). That means that Slovenian law should govern here—a fact on which the parties to this case actually *agree. See* Doc 79 at 9 (arguing that both the Right Rudder-Pipistrel and the Declan-Pipistrel contracts are governed by Slovenian law); Doc 91 at 12-13 (arguing same).

The district court's failure to apply Slovenian law to determine whether a contractual forum selection clause can bind a non-signatory constitutes reversible error because a Slovenian court would *not* enforce such a clause with respect to Textron. This issue was addressed by Plaintiffs' expert Prof. Galič, who submitted a declaration in support of Plaintiffs' Opposition to the Motion to Dismiss. *See* Doc 91-1 at 2. There, Prof. Galič opined that a "jurisdiction agreement may only [be] extended to [a] third party not privy to the original contract … if the third party had succeeded to an original contracting party's rights and obligations." *Id*. at 2.

This conclusion is supported by one of the cases cited in Prof. Galič's declaration, "referenced as Decision of the Appellate Court in Ljubljana, II Cp

1950/2015 of 2 September 2015." *Id*. at ¶ 26 n.14.  There, the respondent was sued in a Slovenian court by one of the parties to a lease to which Respondent was guarantor, but not a signatory.  The respondent sought to enforce a forum selection clause in that contract specifying that any lawsuit must be filed in Croatia or Austria.  The Slovenian court held that the respondent could not enforce that clause because he never assumed all the obligations to the main contract.[8]

That reasoning applies here with full force, because Textron has not undertaken *any* of the obligations of the contracts between Plaintiffs and Pipistrel.  Moreover, Textron is undisputedly a nonparty, and thus cannot be said to have "succeeded" to the contracts between Plaintiffs and Pipistrel.  That being so, the district court erred in concluding that the clause could be invoked by Textron and then proceeding to the *forum non conveniens* part of the analysis.

**B.    The Court Abused its Discretion in Dismissing this Case Based on the Doctrine of *Forum Non Conveniens*.**

Even if the contractual forum selection clauses in the contracts between Plaintiffs and Pipistrel could be applied to Textron (and, under Slovenian law, they cannot), the district court abused its discretion in finding that dismissal is proper

---

[8] This decision can be found at http://www.sodnapraksa.si/?q=id:201508111 1386017&database[SOVS]=SOVS&database[IESP]=IESP&database[VDSS]=VD SS&database[UPRS]=UPRS&_submit=išči&rowsPerPage=20&page=0&moreLik eThis=1&id=doc_2015081111384273. A certified translation of this case is included in the Addendum to the brief.

based on the doctrine of *forum non conveniens*. Because *forum non conveniens* "effectively deprives the plaintiff of his favored forum," defendants bear a significant burden to justify dismissal on these grounds. *Fresh Results LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1048 (11th Cir. 2019). "To satisfy this burden, the defendant must establish that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Id*. at 1048-49. "[T]he court abuses its discretion when it fails to balance the relevant factors." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003) (quoting *C.A. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1308 (11th Cir. 1983)).

The district court abused its discretion in two distinct respects when evaluating the second prong of this test: first, by refusing to consider the parties' private interests weighing against dismissal; and second, by disregarding the significant public interests in adjudicating this dispute here in the United States. As explained below, each error independently justifies reversal.[9]

---

[9]  As set forth above, "an error of law is an abuse of discretion per se." *Baldwin v. Express Oil Change, LLC*, 87 F.4th 1292, 1301 (11th Cir. 2023)

1.    **The Court Abused its Discretion in Holding that** *Atlantic Marine* **Forbids Consideration of the Plaintiffs' Private Interests in Litigating this Case in the United States.**

The district court recognized that the second factor of the *forum non conveniens* test ordinarily "requires the district court to weigh *both* the private interests of the participants in the litigation (including "the relative ease of access to sources of proof") and various public factors (including "the local interest in having localized controversies decided at home"). Doc 95 at 12 (emphasis added) (citing *Fresh Results, LLC v. ASF Holland, B.V.*, 921 F.3d 1043, 1049 (9th Cir. 2019) (cleaned up; citation omitted)).

The district court held, however, that under the Supreme Court's decision in *Atlantic Marine*, 571 U.S. at 64, the fact that the contracts between Plaintiffs and Pipistrel specify Slovenia as the appropriate forum meant that the court could only consider public factors under the second part of the *forum non conveniens* test. *See id.* at 14 (holding, based on *Atlantic Marine*, that "where the 'parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient' and the plaintiff's choice of forum 'merits no weight.'").

In so holding, the district court failed to recognize that, in *Atlantic Marine*, all the parties were signatories to the contract that contained a forum selection clause, and thus *Atlantic Marine* "did not have occasion to address how [its ruling] should apply where non-contracting parties are present[.]" *In re: Howmedica*

28

*Osteonics Corp*, 867 F.3d 390, 401 (3d Cir. 2017).  Rather, *Atlantic Marine* simply concluded that where "*the parties* agreed to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for the pursuit of the litigation."  571 U.S. at 64 (emphasis added).

This holding was grounded in the Supreme Court's view that "when *parties* have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt *the parties'* settled expectations." *Id*. at 66 (emphasis added).  The Court added that "[a] forum-selection clause, after all, may have figured centrally in *the parties'* negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place."  *Id*. (emphasis added). The Court concluded that, "[i]n all but the most unusual cases, therefore, 'the interest of justice' is served by holding *parties* to their bargain."  *Id*.  (emphasis added).  *Atlantic Marine* further emphasized that, in a case involving contractual signatories, "[w]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting." *Id*. at 64 (citing *The Bremen v. Zapata Off–Shore Co*., 407 U.S. 1, 17–18 (1972)).

None of this reasoning applies to this case.  Unlike the litigants in *Atlantic Marine*, Textron is not a signatory to either of the contracts that contain the forum selection clauses.  Although Right Rudder and Declan were parties to those contracts, they solely agreed to a Slovenian forum for disputes involving *Pipistrel*, a Slovenian corporation.  Plaintiffs never agreed to submit themselves to Slovenian jurisdiction in the unlikely event that a dispute were to arise between them and a U.S. company like Textron.[10]  Indeed, even if Plaintiffs could have foreseen such a thing, it would not have made any sense for them to agree to a Slovenian forum for such a dispute, given the inherent difficulty of litigating a tort claim against a U.S. company on foreign soil, where all material witnesses—including the principals of each company—are in the U.S, where most of the relevant misconduct occurred in the U.S., and where almost all the relevant documents are in English and would have to be translated into Slovenian.

Thus, unlike the parties in *Atlantic Marine*, 571 U.S. at 66, Plaintiffs had no "settled expectations" that they would be forced to litigate claims against a U.S. company alleging U.S.-based misconduct in remote Slovenia.  Unlike the parties in *Atlantic Marine*, the inconvenience the Plaintiffs would suffer by being forced to

---

[10] The Declan-Pipistrel Contract's forum selection clause is specifically limited to "the contracting parties," Doc 76-2 at ¶ 9.1, and the Right Rudder-Pipistrel Contract simply provides that "[i]n case of dispute the courts of Nova Gorica, Slovenia shall have jurisdiction." Doc 76-4 at ¶ 28.2.

litigate against *Textron* in the contractual forum was neither something they "agreed to do" nor was it "clearly foreseeable at the time of contracting." *Id.* As a result, *Atlantic Marine*'s holding that a court should not consider the signatories' private interests in deciding whether to dismiss a case on *forum non conveniens* ground simply has no bearing on this case. *See In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014) (noting that *Atlantic Marine* was premised on the fact that "the parties had agreed in advance where their private litigation interests lie, and the reviewing court had no cause to disturb those expectations" and holding that where a party "did not make any such advance agreements ... their private interests must still be considered by the district court."); *see also In re: Howmedica Osteonics Corp*, 867 F.3d 390, 402-03 (3d Cir. 2017) ("[w]hile the Court in *Atlantic Marine* modified the § 1404(a) transfer inquiry for contracting parties who affirmatively agreed to litigate in a particular forum as an express term of their agreements, … it did not disturb in any way the customary § 1404(a) analysis that applies where parties are not bound by a forum-selection clause") (citations omitted).

The district court's contrary conclusion rendered its *forum non conveniens* analysis entirely invalid. In the usual case, the "private interest" analysis is central to the *forum non conveniens* determination. *See Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003). But under *Atlantic Marine*, a district court must deem the private interests to "weigh entirely in favor of the preselected forum," which means

that district courts must enforce valid forum-selection clauses "[i]n all but the most unusual cases." 571 U.S. at 583.

The district court here applied *Atlantic Marine* with full force, refusing to consider the Plaintiffs' private interests in litigating in the United States. That was reversible error, because those interests—which include relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the enforceability of a judgment, and "all other practical problems that make trial of a case easy, expeditious, and inexpensive," *Fresh Results*, 921 F.3d at 1049 (citations omitted)—all overwhelmingly (and quite obviously) militate against a Slovenian forum.  As this Court has said, "[t]he 'central purpose' of *forum non conveniens* is 'to ensure that the trial is convenient.'" *Id*. at 1048 (citation omitted).  In a case like this one, where four U.S. companies are in a dispute, where the majority of the case's witnesses reside in the U.S., where only U.S. tortious interference law is applicable, where the vast majority of the case events occurred in the United States, and where virtually every document would have to be translated from English to Slovenian, a Slovenian forum undoubtedly would be more "convenient" for all of the parties, *including* Textron.[11]

---

[11] In a footnote, the district court brushed off Plaintiffs' assertion that a Slovenian forum would require translation of myriad documents by noting that the underlying contracts had already been translated into English. Doc 95 at 15 n.5. This ignores that the underlying contracts are only a small fraction of the documentary evidence relevant to this dispute.

The district court's refusal to even consider that fact is reason enough to reverse the decision below. *See Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003) (noting that "[p]erhaps the most important 'private interest' of the litigants is access to evidence."); *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1384 (11th 2009) (same); *Ford v. Brown*, 319 F.3d 1302, 1311 (11th Cir. 2003) (noting that "[t]he fact that prominent witnesses are located in England only underscores the point that Florida is an inappropriate forum."); *see also Fresh Results*, 921 F.3d at 1048 (vacating *forum non conveniens* ruling based on finding that district court "abused its discretion when it failed to consider the relevant public factors and committed two errors in its analysis of the private factors" and requiring the court to reweigh the factors on remand).

### 2. The District Court Also Abused its Discretion When Evaluating the Public Factors Weighing Against Dismissal.

The district court also abused its discretion by discounting the substantial public interest factors weighing against a Slovenian forum for this dispute. As this Court has explained, "[p]ublic interest factors include each forum's interest in hearing the case, the administrative burdens placed on the Court in hearing the case, and the need to apply foreign law." *King*, 562 F.3d at 1384; *see also Fresh Results*, 921 F.3d at 1049 (listing factors).

On this point, the district court mistakenly concluded that Slovenia's interest in resolving this dispute is stronger than that of the United States. The court first

33

observed that, because "Pipistrel is a Slovenian company, the Slovenian forum has a strong interest in resolving this dispute[.]" Doc 95 at 15, n.5. In so ruling, the court failed to acknowledge that Pipistrel is *not a party to this suit* and that Plaintiffs' claims are for tortious misconduct against an *American* company based conduct that occurred here in the U.S.

The district court compounded this error by wrongly assuming that Slovenian law would govern resolution of Plaintiffs' claims. The court specifically stated that "the interests of Slovenian courts in resolving disputes over 'Slovenian contracts with Slovenian counterparties, expressly governed by Slovenian law' are entitled to the greater weight." Doc 95 at 16 (citations omitted)). Here again, the Court ignored that this is a tortious interference case against *Textron*, not a breach-of-contract case against Pipistrel. The district court cited no authority to support its assumption that, under Slovenian law, the choice of law provision in *contracts* between Plaintiffs and non-party Pipistrel should apply to a U.S.-based *tort* claim between Plaintiffs and Textron predicated on damage that Plaintiffs suffered in America. That is not surprising, because no such authority exists.

To the contrary, as Plaintiffs' expert Prof. Galič explained at length in his declaration, a Slovenian court would *not* apply Slovenian law in this context. *See* Doc. 91-1 at ¶¶ 55-67. There, Prof. Galič agreed with the opinion of Textron's Slovenian expert, Prof. Damjan Možina (Doc 80-7 at ¶¶ 11-12), that a claim for

tortious interference would, under Slovenian law, be characterized as "an act against fair competition." Doc 91-1 at ¶¶ 54-55. He then opined that, under governing Rome Regulation II, the parties' choice of law "would need to be disregarded." *Id*. at ¶¶ 59-60. Instead, the governing law would be the "law of the country where the market is or likely to be affected…" *Id*. at ¶ 62.

Prof. Galič concluded that, "[b]ecause the RRA Distribution contract was restricted to the USA market," and because Declan's contract, "while stipulating for worldwide coverage[,] has never resulted in any significant Declan's business on Slovenian market, … *Slovenian law would not apply*." Doc 91-1 at ¶ 62 (emphasis added). Instead, a "Slovenian court would need to apply law of the countries where the market was affected"—i.e., the United States. *Id*.; *see also id.* at ¶ 65 ("The law of the place where the direct damage occurred…is the governing law of tort, pursuant to this general rule"); *id*. at ¶ 66 ("It is clear that direct damage for Declan and RRA did not occur in Slovenia, *so Slovenian law cannot be the governing law of the tort under Art. 4 Rome II Regulation*.") (emphasis added).[12]

---

[12] Prof. Možina's declaration is not to the contrary. In his declaration, he concludes that "the parties" to the Pipistrel contracts intended for Slovenian law to apply to any contractual dispute between them. Doc 80-7 at ¶ 14. He does not express any opinion on whether Slovenian law would govern a tort dispute with a non-signatory like Textron.

Remarkably, the district court did not even acknowledge Dr. Galič's declaration when it concluded that a Slovenian court would apply Slovenian law to decide Plaintiffs' tortious interference claim. Rather, the court simply assumed that Plaintiffs' tortious interference claim would be governed by Slovenian law—and, based on this assumption, briskly concluded that "the public interest factor weighs in favor of dismissal." Doc 95 at 16.

This conclusion cannot stand. Even if the court had not abused its discretion by refusing to consider the myriad private factors counselling against a Slovenian forum (it clearly did), the court clearly erred (and thus abused its discretion, *see* n.9, *supra*) when evaluating the respective "public" interests of Slovenia and the United States in adjudicating their dispute. That, too, is reason enough to reverse the decision below.

### C. The District Court Erred in Dismissing Count III Because Plaintiffs Argued that Textron Interfered with Right Rudder's Relationship with Mesa and Supported that Argument with Specific Citations to the Record.

The district court also erred when it dismissed Right Rudder's claim that Textron tortiously interfered with the Right Rudder-Mesa Contract on a single, narrow ground: that Plaintiffs failed to respond to Textron's argument that "it was Mesa who approached Textron about restructuring the underlying contract[,]" and therefore Mesa "could not have been induced to breach" by Textron. Doc 95 at 21-22. This conclusion was wrong as both a matter of fact and law.

36

As a factual matter, Plaintiffs most certainly did not concede this argument. *See* Doc 91 at 22, 24-25, 28, 33-34. To the contrary, and as shown by these citations, Plaintiffs' Opposition to Textron's motion to dismiss outlines each element of a tortious interference claim and expressly argues, with multiple citations to the Second Amended Complaint, that Textron "completely cut [Right Rudder] out of the Mesa transaction" (*id.* ¶ 125) so it could "steal [Right Rudder's] sales to Mesa" (*id.* ¶ 14), thereby causing the ultimate breach of the Right Rudder-Mesa Contract (*id.* ¶¶ 114, 126, and 160). In light of these arguments and supporting citations to the record, the district court's conclusion that Plaintiffs "conceded" this point is difficult to understand.

The district court's decision to dismiss Count III also cannot be reconciled with its duty, when considering a Rule 12(b)(6) motion, to "accept the complaint's allegations as true and construe them in the light most favorable to the plaintiff." *Newbauer*, 26 F.4th at 934 (cleaned up). The allegations cited in Plaintiffs' Opposition—again, all cited in the briefing below—vividly demonstrate the extent of Textron's interference with the Right Rudder-Mesa Contract, and thus are worth recounting here in some detail.

As set forth in the Second Amended Complaint, shortly after the Pipistrel-Right Rudder Contract was signed in September 2021, Right Rudder immediately went to work on Pipistrel's behalf, approaching U.S.-based Mesa about purchasing

37

a fleet of Pipistrel-manufactured training airplanes, and soon began working to iron out the pricing terms. Doc 76 at ¶¶ 104-106.  In July 2022, Right Rudder and Pipistrel agreed on the pricing, lining everything up for the consummation of Right Rudder's sale of Pipistrel aircraft to Mesa, believed to be Pipistrel's second largest fleet sale ever. Doc 76  at ¶¶ 106-108. However, this agreement soon began to hit roadblocks engineered by Textron, which had recently taken over control of Pipistrel.

First, Textron's proxy at Pipistrel—a former Textron employee named Gabriel Massey, whom Textron installed as Pipistrel's CEO—arranged an August 2022 meeting with Right Rudder's representative and, without explanation, a Textron eAviation employee named Robert Scholl, regarding pricing. *Id.* at ¶ 109. Massey later emailed Right Rudder's COO and backtracked on the pricing that Pipistrel had previously agreed to, leading to an email from Right Rudder explaining that Pipistrel had already agreed to the pricing, and that Mesa was already seeking board approval to buy the airplanes under the negotiated pricing. *Id.*

On August 18, 2022, Mesa executed the Right Rudder-Mesa Contract, agreeing to purchase 25 airplanes, at the pricing previously approved by Pipistrel, with an option to purchase another 75 airplanes.  Nonetheless, Pipistrel, orchestrated and controlled by Textron (*id.* at ¶¶ 110-11), continued to insist on a

higher pricing structure, and proposed another meeting with Textron eAviation's Mr. Scholl—odd, because Textron eAviation was not a party to any agreement at issue. *Id.* at ¶ 109. And Mr. Massey, the Pipistrel CEO and former Textron executive, had told Right Rudder he did not think he could get the Mesa Agreement "approved"—also odd, because Mr. Massey was Pipistrel's CEO, with ultimate authority to sign off on any Pipistrel agreement. *Id.* at ¶ 112.

These facts—Textron's installation of its longtime executive Mr. Massey as CEO of Pipistrel; his reneging on the pricing agreement worked out with Right Rudder; Mr. Massey's inclusion of Textron eAviation executive Rob Scholl in pricing discussions with Right Rudder; Mr. Massey's claimed lack of authority to approve the Mesa Agreement—all support Right Rudder's allegations that Textron was "driving these discussions [and] calling the shots" so Textron could eliminate Right Rudder from the market, steal its business, and call its own shots on pricing. *Id.*.

So it is no wonder that Textron eAviation's Mr. Scholl soon began directly renegotiating the terms of the Mesa Agreement with Mesa, despite the fact Textron eAviation was a stranger to that Agreement. *Id.* at ¶ 114. Ultimately, as a result of Textron and Textron eAviation's actions, Mr. Scholl himself told Right Rudder that Pipistrel would not honor its previously approved pricing structure for the Mesa Agreement. *Id.* It was this refusal that led to the breach of the Right Rudder-Mesa Contract. *Id.*

The Second Amended Complaint makes clear that Textron's fingerprints were all over this breach. In fact, when Right Rudder wrote Pipistrel to outline the breach, it was Textron eAviation's general counsel who responded to justify the company's actions. *Id*. at ¶ 122. Finally, in March 2023, Textron's plan to push Right Rudder aside and steal its business was complete. Mesa cancelled the Right Rudder-Mesa agreement because Right Rudder delivered no aircraft to Mesa.

Why didn't Right Rudder deliver the aircraft to Mesa? Because even though Pipistrel had accepted the sale deposits and was obligated to deliver the planes to Right Rudder, it refused to deliver the planes due to Textron's interference. *Id.* at ¶ 125. This is why Mesa approached Textron, a fact the district court found dispositive. Doc 95 at 21-22. The SAC makes clear, however, that Mesa approached Textron because it needed planes and that Right Rudder could not deliver the planes due to Textron's interference. Doc 76 at ¶ 125.

\* \* \* \* \*

These allegations were pled in the Second Amended Complaint, and all were specifically referenced in Plaintiffs' Opposition to the Motion to Dismiss. Doc 91 at 24-26.  This makes the district court's statement that "nowhere in Plaintiffs' thirty-five page Response does RRA rebut Defendants [sic] arguments that Count III fails to state a claim" (Doc 95 at 21-22) perplexing and, in any event, manifestly incorrect. There was simply no basis, especially when construing the facts most

favorably to Plaintiffs, to conclude that Mesa was going to terminate the Right Rudder-Mesa contract regardless of Textron's aggressive actions to push Right Rudder aside and directly negotiate the fleet sale to Mesa.

Textron also did not give the district court any legal basis for concluding that these facts do not state a claim for tortious interference with the Right Rudder-Mesa Contract. In the briefing below, Textron cited a single case—*Farah v. Canada*, 740 So.2d 560, 562 (Fla. Dist. Ct. App. 1999)—to support its assertion that it cannot be liable for tortious interference with the Mesa contract because Mesa was going to breach anyway. Doc 79 at 40. But *Farah* is easily distinguishable. There, a buyer purchased a home from a seller who told him her listing agreement with a real estate agency had lapsed. *See* 740 So.2d at 561. The agency sued both the seller for breach of the listing agreement, and the buyer for intentional interference with that contract. *Id.* After judgment was entered against the buyer for tortious interference, the appeals court reversed, finding that there was "no evidence" that the buyer induced the seller to breach her listing agreement, as the evidence showed that the seller had intended to breach anyway, and in fact "told the buyer that there was no broker." *Id.* at 562.

So the buyer in *Farah* did *nothing* to induce the breach—quite unlike here, where Textron itself is alleged, in great detail as recounted above, to have orchestrated Mesa's breach through Textron's relentless, and ultimately successful, campaign to cast Right Rudder aside and assume its business.

41

If anything, the fact that Mesa approached Textron to negotiate a new deal and breach the Right Rudder-Mesa Contract establishes that Textron's intentional and deliberate campaign to push Right Rudder aside and interfere with that Contract *succeeded*. The district court was wrong to treat Mesa's negotiation with Textron as dispositive, particularly in the face of well-pled allegations cited in the briefing describing Textron's machinations to inject itself into Right Rudder's role and steal its business with Mesa. The dismissal of Count III disregarded settled principles requiring that well-pled facts be construed in the light most favorable to the Plaintiffs, and must be reversed.[13]

---

[13] Although the district court characterized the Second Amended Complaint as a "prohibited 'shotgun pleading,'" it did not dismiss on that basis, and in any event, Plaintiffs disagree with that characterization. The Second Amended Complaint does not incorporate and adopt the allegations of all preceding counts, *cf. Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015), but instead lists in Count III only those 22 paragraphs directly related to Textron's tortious interference with the Right Rudder-Mesa Contract. Doc 76 at ¶ 157. Nor does the SAC include the "relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." 792 F.3d at 1322-33. Count III is pled solely against Textron and its agent, Textron eAviation — the companies that pushed Right Rudder out of the way and stole its sales to Mesa. The district court also stated that, despite its admonishment, Plaintiffs continue to refer to a tranche of contracts that have no connection to the three counts in the Second Amended Complaint. Doc 95 at 23, n.11. The court is just wrong. These contracts are listed because they provide further evidence that the Defendants interfered with the Right Rudder-Pipistrel Contract and thus are directly related to the claims stated. Doc 76 at ¶ 126 n.7.

42

**CONCLUSION**

For the foregoing reasons, the district court's decision dismissing Counts I and II on *forum non conveniens* grounds and dismissing Count III for failure to state a claim should be reversed.

Respectfully submitted this 6th day of May, 2024.

BAILEY GLASSER LLP

*/s/ Leslie A. Brueckner*
Leslie A. Brueckner (CA 140968)
1999 Harrison Street, Suite 660
Oakland, CA 94612
(510) 272-8000
lbrueckner@baileyglasser.com

John Barrett (WV 7289)
209 Capitol Street
Charleston, WV 25301
(304) 345-6555
jbarrett@baileyglasser.com

Robert R. Bell III (TX 787062)
PO Box 1089
Hewitt, TX 76643
(304) 345-6555
rbell@baileyglasser.com

*Counsel for Plaintiffs –*
  *Appellants/Cross-Appellees*

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because:

   this brief contains <u>10,423</u> words, excluding those parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Office Word</u> in <u>Times New Roman</u>, <u>14-point</u>.

Respectfully submitted this 6th day of May, 2024.

BAILEY GLASSER LLP

*/s/ Leslie A. Brueckner*
Leslie A. Brueckner (CA 140968)
1999 Harrison Street, Suite 660
Oakland, CA  94612
(510) 272-8000
lbrueckner@baileyglasser.com

*Counsel for Plaintiffs –*
*  Appellants/Cross-Appellees*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2024, the foregoing Appellants' Brief was electronically filed with the Clerk of Court using the Court's CM/ECF system which sent notification to all attorneys of record.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.

Respectfully submitted this 6th day of May, 2024.

BAILEY GLASSER LLP

*/s/ Leslie A. Brueckner*
Leslie A. Brueckner (CA 140968)
1999 Harrison Street, Suite 660
Oakland, CA  94612
(510) 272-8000
lbrueckner@baileyglasser.com

*Counsel for Plaintiffs –
  Appellants/Cross-Appellees*

# ADDENDUM

[coat of arms]
### THE REPUBLIC OF SLOVENIA
### LJUBLJANA HIGHER COURT

Decision VSL II Cp 1950/2015

**Court:** Ljubljana Higher Court
**Department:** The Civil Department
**ECLI:** ECLI:SI:VSLJ:2015:II.CP.1950.2015
**Evidentiary number:** VSL0082677
**Date of the decision:** 2 September 2015
Panel, sole judge: Polona Marjetič Zemljič (president), Matej Čujovič, LLM (rapporteur), Katarina Marolt Kuret
**Field:** CIVIL PROCEDURAL LAW - PRIVATE INTERNATIONAL LAW – LAW OF THE EUROPEAN UNION – LAW OF OBLIGATIONS – CONTRACTUAL LAW
**Institute:** jurisdiction of the Slovenian court – determination of jurisdiction among court of the EU Member States – circumstance of the case – guarantee – guarantee statement – content of statement – prorogation of jurisdiction – agreement on jurisdiction - assumption of obligations from the main contract – payment obligation – prorogation clause – agreement on jurisdiction

# Main part

With the guarantee contract, the respondents, as guarantors, did not assume all the obligations and conditions from the main contract, but only the payment obligations, so they cannot claim that the prorogation clause from the main contract also applies to them. The Slovenian court therefore has jurisdiction for the trial.

# Operative part

I.    The appeal is dismissed and the decision of the court of first instance is confirmed.

II.   Each party shall bear its own costs of the appeal procedure.

# Explanatory note

1. The first-instance court dismissed the objection of lack of subject-matter jurisdiction submitted by the two respondents.

2. With the timely appeal, the respondents state as essential that they asserted that their guarantee statement should be evaluated in connection with the main leasing contract, which they also signed as statutory representatives of the lessee. The court should assess what the respondents knew or had in mind when they signed the guarantee obligation, especially since it is written that they were aware of all the terms of the contract. They do not agree with the position of the court of first instance that there is no accessory, as the court ignored that the two signatories were the same and knew about the prorogation agreement from the main contract. The court shall accept the position that there are two separate contracts without at least hearing the respondents about it first. Further on, it summarizes the legal opinion of the Institute for Comparative Law and challenges the court's reference to case II Ips 167/98. The court did not rule

on the objection of the respondents with regard to the legal nature of their statement and the related question of whether or not it is a surety at all. They propose annulment of the contested decision and the rejection of the action.

3. The claimant responded to the appeal served upon him in a timely manner, opposes the appeal allegations, agrees with the reasons of the court of first instance and proposes the dismissal of the appeal.

4. The appeal is unfounded.

5. In the present case, it is the duty of the court to decide whether the litigants have concluded an agreement on jurisdiction, since the latter, based on Article 23 of the Council Regulation (EC) no. 44/2001 on Jurisdiction and recognition and enforcement of judgements in civil and commercial matters (Brussels I Regulation), prevails over other circumstances for determining jurisdiction between courts of the EU Member States. The respondents assert that either a Croatian or an Austrian court, but not a Slovenian court, has jurisdiction.

6. The appellants do not even assert that they entered into a special/separate/independent agreement with the claimant that would contain a prorogation clause. However, they claimed, and they insist on this in the appeal, that they signed both the main (in their capacity as statutory representatives of the lessee) and the guarantee agreement (as natural persons), and since the main contract with which they were aware contains such an agreement, it also extends on them as on guarantors. Such argumentation is not correct.

7. The appellants unfoundedly refer to the opinion of the Institute for Comparative Law of the Faculty of Laws in Ljubljana, as they misunderstand it. The author of the opinion, dr. Jerca Kramberger Škerlj writes in the concluding part of the opinion that "the prorogation clause contained in the main contract binds the guarantor if it is unequivocally established that he knew (or should have known) of the existence of this clause and undertook to fulfil all obligations of the party for whom he guarantees, but he did not exclude the prorogation clause" (attachment B4). It is not disputed between the litigants that the respondents knew about the existence of this clause in the main contract, but according to the assessment of the court of appeals, the second condition is not met in order to be able to conclude that the prorogation clause also extends to the guarantor relationship. Indeed, it does not follow from the guarantee statements (attachments A3 and A6) that the respondents undertook to fulfil all obligations, but only to fulfil all payment obligations. In other words: by signing the contract, they undertook to fulfil the substantive legal obligations of the principal debtor, while the guarantor contract is silent on the commitment on procedural rules from the main contract. Since the appellants limited their obligation to the main debtor to the fulfilment of payment obligations with the guarantee contracts, they thereby excluded the application of the prorogation clause from the main contract and cannot successfully refer to it. They undoubtedly knew about the existence of the clause, but did not commit themselves to it. In this part, accessory is not specified, but the fact that it exists in terms of payment obligations was not even disputed between the parties. The hearing of the respondents is inappropriate evidence, since in the absence of a contractual agreement on the prorogation clause, the court has nothing to question them about, while it is not disputed that they knew about this clause and were familiar with it.

8. No agreement on jurisdiction was concluded between the litigants, therefore the claimant filed the action correctly before the Slovenian court, namely before the subject-matter and territorially competent Ljubljana District Court.

9. Based on the above, the appellate court [1] upheld the appeal and, in accordance with point two of Article 365 of the ZPP, confirmed the appealed decision.

10. The decision on the costs of the appeal procedure is based on the provision of paragraph one of Article 165 of the ZPP. The respondents were unsuccessful in their appeal, while the response to the appeal filed by the claimant did not contribute to the decision of the appellate court, thus it was not a necessary expense (paragraph one of Article 155 of the ZPP).

------------

Ref. no. (1): The decision was adopted by the appeal panel on the basis of the third indent of paragraph two of Article 366 of the ZPP.

**Reference**:

The Council Regulation (EC) no. 44/2001 of 22 December 2000 on jurisdiction and recognition and enforcement of judgements in civil and commercial matters (Brussels I) Article 23. Articles 18 and 29 of the ZPP.

**Associated documents**: *

*Cases in which the court adopted the substantively identical position on procedural or substantive legal issues.

**Date of last amendment**: 29 September 2015

Spodaj podpisani Luka Milanović, stalni sodni tolmač za angleški jezik, imenovan z odločbo Minstrstva za pravosodje Republike Slovenije v Ljubljani, št. 705-156/2021 z dne 14. 4. 2023, izjavljam, da se ta prevod popolnoma ujema z izvirnikom.

I, the undersigned Luka Milanović, Permanent Court Interpreter for the English language, appointed by the Decree of the Ministry of Justice of the Republic of Slovenia in Ljubljana, no. 705-156/2021 on 14th of April 2023, hereby declare that the attached translation is correct and accurate to the best of my knowledge and belief and corresponds entirely to the original.

Luka Milanović

2 November 2023



Iskalnik sodne prakse



**R E P U B L I K A**
**S L O V E N I J A**
**V I Š J E**
**S O D I Š Č E**
LJUBLJANA

VSL sklep II Cp 1950/2015



| | |
|---|---|
| **Sodišče:** | Višje sodišče v Ljubljani |
| **Oddelek:** | Civilni oddelek |
| **ECLI:** | ECLI:SI:VSLJ:2015:II.CP.1950.2015 |
| **Evidenčna številka:** | VSL0082677 |
| **Datum odločbe:** | 02.09.2015 |
| **Senat, sodnik posameznik:** | Polona Marjetič Zemljič (preds.), mag. Matej Čujović (poroč.), Katarina Marolt Kuret |
| **Področje:** | CIVILNO PROCESNO PRAVO - MEDNARODNO ZASEBNO PRAVO - PRAVO EVROPSKE UNIJE - OBLIGACIJSKO PRAVO - POGODBENO PRAVO |
| **Institut:** | pristojnost slovenskega sodišča - določitev pristojnosti med sodišči držav članic EU - okoliščine primera - poroštvo - poroštvena izjava - vsebina izjave - prevzem obveznosti iz glavne pogodbe - plačilna obveznost - prorogacijska klavzula - dogovor o pristojnosti |

## Jedro

Toženca kot poroka s poroštvenima pogodbama nista prevzela vseh obveznosti in pogojev iz glavne pogodbe, temveč le plačilne obveznosti, zato se ne moreta sklicevati, da se prorogacijska klavzula iz temeljne pogodbe nanaša tudi na njiju. Za sojenje je zato pristojno slovensko sodišče.

## Izrek

I. Pritožba se zavrne in se sklep sodišča prve stopnje potrdi.

II. Vsaka stranka krije svoje stroške pritožbenega postopka.

## Obrazložitev

1. Sodišče prve stopnje je zavrnilo ugovor stvarne nepristojnosti, ki sta ga podala toženca.

2. Toženca v pravočasni pritožbi kot bistveno navajata, da sta zatrjevala, da je treba njuno poroštveno izjavo presojati v povezavi s temeljno lizing pogodbo, ki sta jo kot zakonita zastopnika lizingojemalca prav tako podpisala. Sodišče bi moralo presojati, kaj sta toženca vedela ali imela v mislih, ko sta podpisovala poroštveno obveznost, zlasti ker je zapisano, da so jima znani vsi pogoji iz pogodbe. Ne strinjata se s stališčem sodišča prve stopnje, da ni nobene akcesornosti, saj je sodišče prezrlo, da sta bila podpisnika ista in sta vedela za prorogacijski sporazum iz glavne pogodbe. Sodišče se ne more postaviti na stališče, da gre za dve ločeni pogodbi, ne da bi toženca o tem prej vsaj zaslišalo. V nadaljevanju povzema pravno mnenje Inštituta za primerjalno pravo in izpodbija sklicevanje sodišča na zadevo II Ips 167/98. Sodišče se ni opredelilo do ugovora toženc glede pravne narave njune izjave in s tem povezanega vprašanja, ali gre sploh za poroštvo ali ne. Predlagata razveljavitev izpodbijanega sklepa in zavrženje tožbe.

3. Tožeča stranka je na vročeno pritožbo pravočasno odgovorila, nasprotuje pritožbenim navedbam, soglaša z razlogi sodišča prve stopnje in predlaga zavrnitev pritožbe.

4. Pritožba ni utemeljena.

5. V obravnavani zadevi je dolžnost sodišča, da presodi, ali sta pravdni stranki sklenili dogovor o pristojnosti, kajti ta ima na podlagi 23. člena Uredbe Sveta (ES) št. 44/2001 o pristojnosti in priznavanju ter izvrševanju sodnih odločb v civilnih in gospodarskih zadevah (Uredba Bruselj I) prednost pred drugimi okoliščinami za določitev pristojnosti med sodišči držav članic EU. Tožena trdita, da je za sojenje pristojno bodisi hrvaško bodisi avstrijsko, nikakor pa slovensko sodišče.

6. Pritožnika niti ne trdita, da bi s tožečo stranko sklenila poseben/ločen/samostojen dogovor, ki bi vseboval prorogacijsko klavzulo. Trdila pa sta, in pri tem vztrajata v pritožbi, da sta podpisala tako glavno (v svojstvu zakonitih zastopnikov

Iskalnik sodne prakse

lizingojemalca) kot poroštveno pogodbo (kot fizični osebi), in ker glavna pogodba, s katero sta bila seznanjena, vsebuje tak dogovor, se ta razteza tudi nanju kot na poroka. Tako stališče ni pravilno.

7. Pritožnika se neutemeljeno sklicujeta na mnenje Inštituta za primerjalno pravo PF v Ljubljani, saj ga nepravilno razumeta. Avtorica mnenja, dr. Jerca Kramberger Škerlj, namreč v sklepnem delu mnenja zapiše, da „prorogacijska klavzula, vsebovana v temeljni pogodbi, zavezuje poroka, če je nedvoumno ugotovljeno, da je vedel (oziroma bi moral vedeti) za obstoj te klavzule in se je zavezal k izpolnitvi vseh obveznosti stranke, za katero jamči, pri tem pa ni izvzel prorogacijske klavzule" (priloga B4). Med pravdnima strankama niti ni sporno, da sta toženca vedela za obstoj te klavzule v temeljni pogodbi, pač pa po oceni pritožbenega sodišča ni izpolnjen drugi pogoj, da bi bilo mogoče zaključiti, da se prorogacijska klavzula razteza tudi na poroštvene razmerje. Iz poroštvenih izjav (prilogi A 3 in A 6) namreč ne izhaja, da sta se toženca zavezal k izpolnitvi vseh obveznosti, temveč sta se zavezala le k izpolnitvi vseh plačilnih obveznosti. Povedano drugače: s podpisom pogodbe sta se zavezala k izpolnjevanju materialnopravnih obveznosti glavnega dolžnika, glede zaveze o postopkovnih/procesnih pravilih iz temeljne pogodbe pa poroštveni pogodbi molčita. Ker sta pritožnica svojo obveznost do glavnega dolžnika s poroštvenima pogodbama omejila na izpolnjevanje plačilnih obveznosti, sta s tem izključila uporabo prorogacijske klavzule iz temeljne pogodbe in se nanjo ne moreta uspešno sklicevati. Za obstoj klavzule sta namreč nesporno vedela, pa se k njej nista zavezala. V tem delu akcesornost ni podana, da pa glede plačilnih obveznosti ta obstaja, med strankama niti ni bilo sporno. Zaslišanje tožencev je neprimeren dokaz, saj ju ob odsotnosti pogodbenega dogovora o prorogacijski klavzuli, sodišče nima o čem zasliševati, da sta za to klavzulo vedela in bila z njo seznanjena, pa, kot rečeno, ni bilo sporno.

8. Med pravdnima strankama torej ni bil sklenjen dogovor o pristojnosti, zato je toženja stranka tožbo pravilno vložila pred slovenskim sodiščem, in sicer pred stvarno in krajevno pristojnim Okrožnim sodiščem v Ljubljani.

9. Na podlagi navedenega je pritožbeno sodišče(1) pritožbi ugodilo ter v skladu s 2. točko 365. člena ZPP izpodbijani sklep potrdilo.

10. Odločitev o pritožbenih stroških temelji na določbi prvega odstavka 165. člena ZPP. Tožena s pritožbo nista uspela, odgovor na pritožbo, ki ga je vložila tožeča stranka, pa ni pripomogel k odločanju pritožbenega sodišča, zato ni šlo za strošek, ki bi bil za to potreben (prvi odstavek 155. člena ZPP).

----------

Op. št. (1): Odločitev je na podlagi tretje alineje drugega odstavka 366. člena ZPP sprejel pritožbeni senat.

**Zveza:**

Uredba Sveta (ES) št. 44/2001 z dne 22. decembra 2000 o pristojnosti in priznavanju ter izvrševanju sodnih odločb v civilnih in gospodarskih zadevah (Bruselj I) člen 23. ZPP člen 18, 29.

**Pridruženi dokumenti:\***

*Zadeve, v katerih je sodišče sprejelo vsebinsko enako stališče o procesnih oz. materialnopravnih vprašanjih.

**Datum zadnje spremembe:** 29.09.2015