# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## Case No. 24-10913-A

DECLAN FLIGHT, INC. and RIGHT RUDDER
AVIATION, LLC,

*Appellants/Cross-Appellees*,

v.

TEXTRON eAVIATION INC. and TEXTRON INC.,

*Appellees/Cross-Appellants*.

Appeal from the United States District Court for the Middle District of Florida
No. 5:23-cv-00301-GAP-PRL

## APPELLEES/CROSS-APPELLANTS' PRINCIPAL AND RESPONSE BRIEF

Mitchell A. Karlan, Esq.
Timothy Sun, Esq.

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

Scott A. Richman, Esq.
Keef Fred Owens, Esq.

McDonald Toole Wiggins, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 246-1800

*Attorneys for Appellees/Cross-Appellants Textron Inc. and Textron eAviation Inc.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned certifies that the persons and entities listed below have an interest in the outcome of this case.

1.    Bailey Glasser LLP (counsel for Appellees/Cross-Appellants)

2.    Barrett, John W. (attorney for Appellees/Cross-Appellants)

3.    Bell, Robert R. (attorney for Appellees/Cross-Appellants)

4.    Brueckner, Leslie (attorney for Appellees/Cross-Appellants)

5.    Chan, Andrew (owner of Right Rudder Aviation, LLC)

6.    Declan Flight, Inc. (Appellee/Cross-Appellant)

7.    Freire, Andrew (attorney for Appellees/Cross-Appellants)

8.    Gibson, Dunn & Crutcher LLP (counsel for Appellees/Cross-Appellants)

9.    Glasser, Brian A. (attorney for Appellants/Cross-Appellees)

10.    Gvardjančič, Minu Anamaria (Slovenian attorney for Pipistrel)

11.    Karlan, Mitchell A. (attorney for Appellees/Cross-Appellants)

12.    Kauffman, James L. (attorney for Appellants/Cross-Appellees)

13.    Kennedy, Jessica M. (attorney for Appellees/Cross-Appellants)

14.    Law Firm Ketler & Partners l.f. LLC, a member of Karanovic & Partners (Slovenian counsel for Pipistrel, based in Ljubljana, Slovenia)

15.  Lawson, Charles (owner of Right Rudder Aviation, LLC)

16.  McDonald Toole Wiggins, P.A. (counsel for Appellees/Cross-Appellants)

17.  Mesa Air Group, Inc. (contractual signatory of the Mesa Agreement)

18.  Owens, Keef F. (attorney for Appellees/Cross-Appellants)

19.  Pipistrel d.o.o. (contractual signatory of the RRA Contract)

20.  Pipistrel Italia S.r.l. (contractual signatory of the RRA Contract)

21.  Pipistrel Vertical Solutions d.o.o. (contractual signatory of the Declan Contract)

22.  Presnell, Gregory A. (United States District Judge)

23.  Richman, Scott A. (attorney for Appellees/Cross-Appellants)

24.  Right Rudder Aviation, LLC (Appellants/Cross-Appellees)

25.  Ruhtar, Kevin (Slovenian attorney for Pipistrel)

26.  Signorelli, Jacklyn (attorney for Appellees/Cross-Appellants)

27.  Sun, Timothy (attorney for Appellees/Cross-Appellants)

28.  Textron eAviation Inc. (Appellee/Cross-Appellant) – Textron eAviation Inc. ("eAviation") is not publicly traded. eAviation is a wholly-owned subsidiary of Textron Inc.

29.  Textron Inc. (TXT) (Appellee/Cross-Appellant) – Textron Inc. is a U.S. publicly-held corporation with its common stock traded on the New

York Stock Exchange. Based upon reports filed by Textron Inc. with the U.S. Securities and Exchange Commission, both The Vanguard Group, Inc. and T. Rowe Price Mid-Cap Growth Fund, Inc. are deemed to beneficially own more than 10 percent of the stock of Textron Inc.

30.  Turner, John G. (attorney for Appellants/Cross-Appellees)

31.  Wood, Bryan (owner of Declan Flight, Inc.)

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellees/Cross-Appellants Textron Inc. and Textron eAviation Inc. are not requesting oral argument.

## <u>TABLE OF CONTENTS</u>

JURISDICTIONAL STATEMENT ............................................................. 1

STATEMENT OF THE ISSUES.................................................................. 2

STATEMENT OF THE CASE .................................................................... 4

I.     INTRODUCTION ............................................................................ 4

II.    STATEMENT OF FACTS ................................................................ 5

       A.     Parties And Other Relevant Entities ..................................... 5

       B.     Declan's Contract With Pipistrel........................................... 6

       C.     RRA Contract With Pipistrel................................................. 6

       D.     Mesa Agreement.................................................................... 7

III.   LITIGATION HISTORY ................................................................. 7

       A.     Plaintiffs' Abortive Attempts To Sue Defendants ............... 7

       B.     The District Court Dismisses The FAC ................................ 8

       C.     Plaintiffs Try Yet Again With Their SAC, And Defendants
              Move Again To Dismiss ........................................................ 8

       D.     The District Court Dismisses The SAC ................................ 9

IV.    STANDARD OF REVIEW ............................................................ 12

SUMMARY OF THE ARGUMENT ....................................................... 13

ARGUMENT ........................................................................................... 17

I.     THE DISTRICT COURT CORRECTLY DISMISSED COUNTS I
       AND II UNDER THE *FORUM NON CONVENIENS* DOCTRINE .......... 17

       A.     The District Court Correctly Held That Defendants May Enforce
              The Forum Selection Clauses Against Plaintiffs ............................... 18

              1.     Plaintiffs Have Waived Their Argument ................................. 18

              2.     Courts In The Eleventh Circuit Have Long Applied
                     Federal Law To The Enforcement And Construction Of
                     Forum Selection Clauses........................................................ 21

              3.     Even If There Is A Distinction Between
                     Federal/"Enforcement" And State/"Interpretation,"
                     Whether A Non-Signatory May Bind A Signatory To A
                     Forum Selection Clause Is A Matter Of Enforcement............. 28

4.      Even If State Law Did Apply, Florida Estoppel Law, Not Slovenian Law, Would Govern, And Plaintiffs Would Still Be Bound By Their Forum Selection Clauses ................. 31

B.      The District Court Did Not Abuse Its Discretion In Considering The *Forum Non Conveniens* Factors.................................................. 34

1.      The District Court Did Not Abuse Its Discretion In Analyzing The Public Interest Factors...................................... 35

2.      The District Court Correctly Applied Atlantic Marine In Disregarding Private Interests.................................................. 37

3.      Even If Private Factors Applied, They Do Not Outweigh The Public Factors ................................................................... 43

II.    THE DISTRICT COURT CORRECTLY DISMISSED COUNT III FOR FAILURE TO STATE A CLAIM ........................................ 46

A.      Plaintiffs Never Addressed Mesa's Predisposition To Breach .......... 46

B.      Plaintiffs Never Identified Any Breach Of The Mesa Agreement .... 48

C.      Plaintiffs Ignored Defendants' Other Arguments, Including Defendants' Privilege To Interfere........................................ 49

D.      The District Court Correctly Dismissed The SAC As A Shotgun Pleading ............................................................................ 50

III.    THE DISTRICT COURT ERRED IN FINDING THAT IT COULD EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS ON COUNT III....................................................................... 53

A.      The Mesa Agreement's Forum Selection Clause Does Not Confer Jurisdiction ............................................................. 53

B.      The Breach-Of-Contract Prong Of The Long-Arm Statute Does Not Provide A Basis For Jurisdiction................................. 60

CONCLUSION ................................................................................... 62

## TABLE OF CITATIONS

### Cases

*420 Julia St., L.L.C. v. Meecorp Cap. Markets, LLC*,
  2010 WL 11623496 (M.D. Fla. Nov. 30, 2010) .................................................. 60

*A/S Dan-Bunkering Ltd. v. M/V Centrans Demeter*,
  633 F. App'x 755 (11th Cir. 2015) ....................................................... 37

*Access Now, Inc. v. Southwest Airlines Co.*,
  385 F.3d 1324 (11th Cir. 2004) ........................................................ 18

*Adams v. Raintree Vacation Exch., LLC*,
  702 F.3d 436 (7th Cir. 2012) .......................................................... 31

*Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*,
  678 F. App'x 839 (11th Cir. 2017) ..................................................... 36

*AFC Franchising, LLC v. Purugganan*,
  43 F.4th 1285 (11th Cir. 2022) ........................................................ 26

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
  578 F.3d 1283 (11th Cir. 2009) .............................................. 12, 36, 37

*AQuate II LLC v. Myers*,
  100 F.4th 1316 (11th Cir. 2024) .................................................. 22, 29

*Argos Glob. Partner Servs., LLC v. Ciuchini*,
  446 F. Supp. 3d 1073 (S.D. Fla. 2020) ................................................ 62

*Artier LLC v. Carre D'Artistes SAS*,
  2017 WL 7732129 (S.D. Fla. Nov. 20, 2017) ..................................... 24

*Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of
  Texas*,
  571 U.S. 49 (2013) ........................................10, 15, 34, 35, 37, 38, 39, 40, 41, 42

*Avicenna Laser Tech., Inc. v. Nathaniel Grp., Inc.*,
  2005 WL 8154578 (S.D. Fla. Nov. 3, 2005) ...................................... 22

*Bahamas Sales Assoc., LLC v. Byers*,
  701 F.3d 1335 (11th Cir. 2012) ...........................................12, 24, 29, 30, 32

*Barmapov v. Amuial*,
  986 F.3d 1321 (11th Cir. 2021) ........................................................ 12

*Blixseth v. Disilvestri*,
  2013 WL 12063940 (S.D. Fla. Jan. 31, 2013) .................................. 29

*Bryant v. Jones*,
  575 F.3d 1281 (11th Cir. 2009) ........................................................ 38

iii

*Centennial Bank v. Servisfirst Bank Inc.*,
  2016 WL 6037539 (M.D. Fla. Oct. 14, 2016) ....................................49

*Cooper v. Meridian Yachts, Ltd.*,
  575 F.3d 1151 (11th Cir. 2009) ....................................................59

*Cornett v. Carrithers*,
  465 F. App'x 841 (11th Cir. 2012) ...............................................22

*Dollar Rent a Car, Inc. v. Westover Car Rental, LLC*,
  2017 WL 5495126 (M.D. Fla. Nov. 16, 2017) ...........................54, 55

*Don King Prods., Inc. v. Mosely*,
  2016 WL 3950930 (S.D. Fla. Jan. 27, 2016) ................................44

*E-One, Inc. v. R. Cushman & Assocs., Inc.*,
  2006 WL 2599130 (M.D. Fla. May 15, 2006) ...............................59

*Econocaribe Consolidators, Inc. v. EGF Energy Partners, LLC*,
  2012 WL 13014703 (S.D. Fla. June 19, 2012) ...............................58

*Emerald Grande, Inc. v. Junkin*,
  334 F. App'x 973 (11th Cir. 2009) ...............................................22

*Emrit v. Universal Music Grp.*,
  2020 WL 4751446 (M.D. Fla. Aug. 17, 2020), *aff'd*, 833 F. App'x
  333 (11th Cir. 2021)....................................................................47

*Farah v. Canada*,
  740 So.2d 560 (Fla. Dist. Ct. App. 1999) ....................................47

*Firexo, Inc. v. Firexo Grp. Ltd.*,
  99 F.4th 304 (6th Cir. 2024) ..........................20, 25, 26, 27, 28, 30, 31

*Five Points Sarasota Invs. LLC v. Investec Bank PLC*,
  2023 WL 2071463 (M.D. Fla. Feb. 17, 2023)..........................23, 26

*GDG Acquisitions, LLC v. Gov't of Belize*,
  749 F.3d 1024 (11th Cir. 2014) ...................................................39

*Gennusa v. Canova*,
  748 F.3d 1103 (11th Cir. 2014) ...................................................19

*Golden Palm Hosp. Inc. v. Stearns Bank Nat. Ass'n*,
  874 So.2d 1231 (Fla. Dist. Ct. App. 2004) ..................................33

*Gonzalez v. Watermark Realty Inc.*,
  2010 WL 1299740 (S.D. Fla. Mar. 30, 2010) ...............................24

*Gurba v. PeoplesBank*,
  2022 WL 17904395 (M.D. Fla. Dec. 23, 2022) .................23, 24, 26, 29

*Heimmermann v. First Union Mortg. Corp.*,
  305 F.3d 1257 (11th Cir. 2002) ...................................................55

iv

*HNA LH OD, LLC v. Loc. House Int'l, Inc.,
   2021 WL 4459404 (S.D. Fla. Sept. 29, 2021) ..................................29, 41

In re Howmedica Osteonics Corp,
   867 F.3d 390 (3d Cir. 2017) ..................................................................41, 42

Hunt v. Cornerstone Golf, Inc.,
   949 So.2d 228 (Fla. Dist. Ct. App. 2007) ...............................................44

*Johnson v. Houston Cnty. Georgia,
   758 F. App'x 911 (11th Cir. 2018) ...........................................................21

King v. Cessna Aircraft Co.,
   562 F.3d 1374 (11th Cir. 2009) ................................................................45

Knepfle v. J-Tech Corp.,
   48 F.4th 1282 (11th Cir. 2022) .................................................................12

*Koechil v. BIP Intern., Inc.,
   870 So.2d 940 (Fla. Dist. Ct. App. 2004) ...............................................34

Ledford v. Peeples,
   657 F.3d 1222 (11th Cir. 2011) ................................................................38

*Liles v. Ginn-Law West End, Ltd.,
   631 F.3d 1242 (11th Cir. 2011) ................................................................24

Lipcon v. Underwriters at Lloyd's, London,
   148 F.3d 1285 (11th Cir. 1998) .......................................17, 58, 59, 60

Magluta v. Samples,
   375 F.3d 1269 (11th Cir. 2004) ................................................................12

Manetti-Farrow, Inc. v. Gucci America, Inc.,
   858 F.2d 509 (9th Cir. 1988) ....................................................................25

Martinez v. Bloomberg,
   740 F.3d 211 (2d Cir. 2014) ....................................................26, 27, 30

Matuszevoska v. Princess Cruise Lines, Ltd.,
   2007 WL 7728281 (S.D. Fla. Feb. 12, 2007) .........................................60

In re McGraw-Hill Glob. Educ. Holdings LLC,
   909 F.3d 48 (3d Cir. 2018) ......................................................................41, 42

Mesa v. L. Enf't Sys., LLC,
   2015 WL 12804525 (S.D. Fla. Aug. 4, 2015) .........................................47

*Metnick & Levy, P.A. v. Seuling,
   123 So.3d 639 (Fla. Dist. Ct. App. 2013) ...............................................43

*Mitchell v. City of Miami Beach,
   2024 WL 140065 (11th Cir. Jan. 12, 2024) ....................................19, 38

*Ney v. 3iGro., P.L.C.*,
  2023 WL 6121774 (5th Cir. Sept. 19, 2023) ...................................... 41

*Nygård v. DiPaolo*,
  753 F. App'x 716 (11th Cir. 2018) ...................................................... 37

*\*Ocwen Orlando Holdings Corp. v. Harvard Prop. Trust, LLC*,
  526 F.3d 1379 (11th Cir. 2008) .......................................................... 23

*P & S Bus. Machines, Inc. v. Canon USA, Inc.*,
  331 F.3d 804 (11th Cir. 2003) ............................................................ 29

*\*Pappas v. Kerzner Int'l Bahamas Ltd.*,
  585 F. App'x 962 (11th Cir. 2014) ................................................ 26, 29

*People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild
  Things, Inc.*,
  2017 WL 10299577 (M.D. Fla. July 14, 2017) .................................. 43

*\*PNC Bank, N.A. v. Akshar Petroleum, Inc.*,
  2014 WL 1230689 (M.D. Fla. Mar. 25, 2014) .............................. 23, 26

*Prolow v. Aetna Life Ins. Co.*,
  510 F. Supp. 3d 1303 (S.D. Fla. 2021) ............................................... 51

*\*In re Rolls Royce Corp.*,
  775 F.3d 671 (5th Cir. 2014) .............................................................. 42

*Rucker v. Oasis Legal Fin., L.L.C.*,
  632 F.3d 1231 (11th Cir. 2011) .......................................................... 26

*\*Ruckh v. Salus Rehab., LLC*,
  963 F.3d 1089 (11th Cir. 2020) ............................................... 18, 19, 20

*\*SANDP Sols., Inc. v. Silver Logic, LLC*,
  2022 WL 7049243 (S.D. Fla. Jan. 14, 2022) ...................................... 56

*Sapuppo v. Allstate Floridian Ins. Co.*,
  739 F.3d 678 (11th Cir. 2014) ............................................................ 21

*\*Sekula v. Residential Credit Sols., Inc.*,
  2016 WL 4272203 (M.D. Fla. Aug. 15, 2016) ................................... 43

*\*Serra-Cruz v. Carnival Corp.*,
  400 F. Supp. 3d 1354 (S.D. Fla. 2019) ............................................... 56

*\*Shaps v. Provident Life & Acc. Ins. Co.*,
  317 F.3d 1326 (11th Cir. 2003) .......................................................... 32

*\*Shoppes Ltd. P'ship v. Conn*,
  829 So.2d 356 (Fla. Dist. Ct. App. 2002) ........................................... 33

*\*Singh v. U.S. Atty. Gen.*,
  561 F.3d 1275 (11th Cir. 2009) .......................................................... 20

*Slaihem v. Sea Tow Bahamas Ltd.,*
 148 F. Supp. 2d 1343 (S.D. Fla. 2001) ........................................ 58, 60

*Slater v. Energy Servs. Grp. Int'l, Inc.,*
 634 F.3d 1326 (11th Cir. 2011) ..................................................... 22

*Sourcing Sols. USA, Inc. v. Kronos Am., LLC,*
 2011 WL 13223514 (S.D. Fla. Jan. 26, 2011) ........................... 35, 49

*Stewart Org., Inc. v. Ricoh Corp.,*
 810 F.2d 1066 (11th Cir. 1987), *aff'd and remanded,* 487 U.S. 22
 (1988) ................................................................... 22, 23, 25, 26

*Stiles v. Bankers Healthcare Grp., Inc.,*
 637 F. App'x 556 (11th Cir. 2016) ............................................ 41, 58

*Sybac Solar AG v. Sybac Solar, LLC,*
 2012 WL 6814193 (M.D. Fla. Oct. 22, 2012) ................................ 23

*Team Health Holdings, Inc. v. Caceres,*
 357 So.3d 746 (Fla. Ct. App. 2023) .............................................. 52

*TRG Holdings G & H, LLC v. Patel,*
 621 F. Supp. 3d 1308 (N.D. Ga. 2022) .......................................... 24

*United Cap. Funding Corp. v. Salaman,*
 2017 WL 6205792 (M.D. Fla. Dec. 6, 2017) ........................ 55, 56, 59

*United States v. Cincinnati Ins. Co.,*
 2022 WL 1801193 (M.D. Fla. Mar. 25, 2022) ................................ 24

*United States v. King,*
 751 F.3d 1268 (11th Cir. 2014) ..................................................... 21

*United States v. Levy,*
 379 F.3d 1241 (11th Cir. 2004) ..................................................... 32

*Usme v. CMI Leisure Mgmt., Inc.,*
 2024 WL 3217570 (11th Cir. June 28, 2024) ................................. 26

*Vernon v. Stabach,*
 2014 WL 1806861 (S.D. Fla. May 7, 2014) ................................ 23, 26

*Vloeibare Pret Ltd. v. Lloyd's Reg. N. Am., Inc.,*
 606 F. App'x 782 (5th Cir. 2015) .................................................. 41

*W. Sur. Co. v. Steuerwald,*
 760 F. App'x 810 (11th Cir. 2019) ................................................ 32

*Waite v. All Acquisition Corp.,*
 901 F.3d 1307 (11th Cir. 2018) ..................................................... 53

*Weiland v. Palm Beach Cnty. Sheriff's Off.,*
 792 F.3d 1313 (11th Cir. 2015) ..................................................... 50

*Whitten v. Social Sec. Admin., Comm'r,
     778 F. App'x 791 (11th Cir. 2019) ................................................. 21, 50

Wiand v. Stoel Rives LLP,
     2016 WL 8931304 (M.D. Fla. Dec. 27, 2016) ................................. 59

Worth Grp. Inc. v. Morales,
     2023 WL 526318 (S.D. Fla. Jan. 27, 2023), aff'd, 2023 WL
     9018410 (11th Cir. Dec. 29, 2023) ........................................ 54

Wylie v. Kerzner Int'l Bahamas Ltd.,
     706 F. App'x 577 (11th Cir. 2017) ............................................ 27, 28

Yavuz v. 61 MM, Ltd.,
     465 F.3d 418 (10th Cir. 2006) ...................................... 26, 27

## Statutes

Fla. Stat. § 48.193(1)(a)(2) ......................................................... 61

*Fla. Stat. § 48.193(1)(a)(7) ....................................................... 17, 61

*Fla. Stat. § 48.193(1)(a)(9) ................................................. 16, 54, 57

Fla. Stat. § 685.101 .......................................................... 54, 55, 56

Fla. Stat. § 685.102 ...................................................... 54, 55, 56, 57

## <u>JURISDICTIONAL STATEMENT</u>

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.  The District Court dismissed the Plaintiffs-Appellants' claims in an order dated March 12, 2024.  Doc. 95. Plaintiffs-Appellants ("Plaintiffs") filed their notice of appeal on March 26, 2024. On April 12, 2024, Defendants-Appellees/Cross-Appellants ("Defendants") filed their notice of cross-appeal on the issue of whether the District Court erred when it found that it had jurisdiction over Defendants with respect to Count III of the Second Amended Complaint ("SAC").  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiffs raise three issues on appeal:

I.   Whether the District Court correctly applied federal law to the issue of non-signatory Defendants enforcing forum selection clauses ("FSCs") against signatory Plaintiffs, or whether the District Court should have followed an out-of-circuit decision that was not decided at the time of the District Court's ruling and applied state law, and ultimately Slovenian law, to that issue.

II.  Whether the District Court was within its discretion in considering *forum non coveniens* factors where Plaintiffs are bound by Slovenian FSCs, Plaintiffs have not identified any prohibitive administrative burdens that would be placed on Slovenian courts, and the fundamental question of whether the Slovenian contracts were breached is governed by Slovenian law.

III. Whether the District Court correctly dismissed Count III for failure to state a claim where Plaintiffs never addressed Defendants' arguments below and the District Court held, in any event, that the SAC was a shotgun pleading.

Defendants raise one issue on cross-appeal:

I.   Whether the District Court erred in finding that it could exercise personal jurisdiction over Defendants on Count III of the SAC based on an FSC in the

2

Mesa Agreement to which Defendants were not parties, and without reference to the proper Florida statutory law; or, in the alternative, based on the breach-of-contract prong of the Florida long-arm statute despite the fact that Defendants, as non-parties to the Mesa Agreement, could not have breached it.

<u>STATEMENT OF THE CASE</u>[1]

## I.    INTRODUCTION

This case, in the words of the District Court, is a "breach of contract" case against a Slovenian counterparty in "the guise of a domestic tortious interference claim" against U.S. Defendants.  Doc. 95 at 16.  Plaintiffs Declan Flight, Inc. ("Declan") and Right Rudder Aviation ("RRA") each had contracts with non-party Pipistrel.[2]  Those contracts included Slovenian FSCs.  After Pipistrel terminated those contracts, Plaintiffs, rather than sue for breach in Slovenia, concocted baseless tortious interference claims against Defendants Textron Inc. and Textron eAviation Inc. ("eAviation") and brought suit in the Middle District of Florida.  After numerous attempts at pleading cognizable claims against Defendants, the District Court put an end to Plaintiffs' charade, admonishing that they "may not elude their Slovenian forum selection clauses" and dismissing the two primary Counts of their Second Amended Complaint, Doc. 76 ("SAC"), on grounds of *forum non conveniens* in favor of a Slovenian forum.  This was correct as a matter of law and well within the District

---

[1] Citations in the form "Doc. X at Y" refer to the District Court docket entry X at page Y.  Citations to particular pages reference the CM/ECF page number at the top of the page.  Citations to Doc. 90, 90-2, and 90-3 are to documents filed under seal, which may be found in Plaintiffs-Appellants' Appendix Volume VI.  Plaintiffs' opening appellate brief is cited as "PB."

[2] "Pipistrel" collectively refers to three entities: Pipistrel d.o.o., based in Slovenia; Pipistrel Vertical Solutions d.o.o., also based in Slovenia ("Pipistrel Vertical"); and Pipistrel Italia S.r.l., based in Italy.  Doc. 80-4 ¶ 11; Doc. 80-5 ¶¶ 8-11.

Court's discretion.

The District Court went on to dismiss with prejudice Count III of the SAC—a claim for tortious interference with a contract between RRA and non-party Mesa Air Group, Inc. ("Mesa")—for failure to state a claim. Although the District Court mistakenly found that it could exercise personal jurisdiction over Defendants on that claim—an erroneous holding on which Defendants now cross-appeal—its holding that the SAC failed to state a claim under Count III was correct.

Indeed, in addition to the District Court's other grounds for dismissal, the District Court held that the SAC "remain[ed] a prohibited 'shotgun pleading,'" which "fail[ed] to give Defendants and the Court adequate notice of the grounds upon which each claim rests." Doc. 95 at 23 n.11 (alterations omitted).

Plaintiffs' attempt to undo these rulings on appeal fail. Where their purported "arguments" have not been waived—and most have—they are contrary to law, fact, logic, or all of the above. This Court should affirm the dismissal of the SAC.

## II.    STATEMENT OF FACTS

### A.    Parties And Other Relevant Entities

Textron Inc. is a Delaware corporation with its principal place of business in Rhode Island. SAC ¶ 18; Doc. 80-4 ¶ 4. eAviation is a Delaware corporation with its principal place of business in Kansas. SAC ¶ 19; Doc. 80-5 ¶ 3.

On April 15, 2022, an indirect Slovenian subsidiary of Textron Inc. acquired

Pipistrel.  SAC ¶ 2; Doc. 80-4 ¶ 11.  After the acquisition, Pipistrel became part of Textron eAviation, a new reporting segment of Textron Inc. focused on the development of sustainable electric aircraft.  SAC ¶ 63; Doc. 80-4 ¶ 11.

Prior to the acquisition, Pipistrel had contracted with Declan to provide sales and related services (the "Declan Contract"), Doc. 76-3, and contracted with RRA to distribute various products (the "RRA Contract"), Doc. 76-4.

In 2022, Pipistrel separately terminated the Declan Contract and the RRA Contract.  SAC ¶¶ 11, 13.

### B.  Declan's Contract With Pipistrel

The Declan Contract expressly provided that it could be terminated at the discretion of Pipistrel and upon the "free will" of Declan.  Doc. 76-3 § 4.5.  Each party could also "unilaterally withdraw" from the contract for cause.  *Id.* § 8.3.

The Declan Contract is governed by Slovenian law.  *Id.* § 9.2.  The contract provides that "[a]ny controversial relations arising from [] or in connection with" that contract must be heard in a Slovenian court.  *Id.* § 9.1; Doc. 80-7 ¶¶ 16-24.

### C.  RRA Contract With Pipistrel

The RRA Contract gave Pipistrel the right to terminate upon RRA's breaches, Doc. 76-4 Art. 22, and was in fact terminated based on "RRA's multiple substantial and fundamental breaches of the Contract," Doc. 80-1.

Slovenian law likewise governs the RRA Contract.  Doc. 76-4 Art. 28.1.  It too

6

requires suit in Slovenia. "[A]ny dispute arising out of or in connection with" that contract must first be submitted to "settlement proceedings under the ICC ADR Rules." *Id.* If the dispute is not settled, "the courts of Nova Gorica, Slovenia shall have jurisdiction." *Id.* Art. 28.2.

### D.     Mesa Agreement

In August 2022, RRA and non-party Mesa entered into an agreement for the purchase of Pipistrel aircraft (the "Mesa Agreement"). SAC ¶ 110; Doc. 90-2. In March 2023, Mesa, consistent with the contract, cancelled the Mesa Agreement because no aircraft had been delivered. SAC ¶ 125; Doc. 90-2 § 8.

## III.     LITIGATION HISTORY

### A.     Plaintiffs' Abortive Attempts To Sue Defendants

Declan first sued Textron Inc. in Rhode Island Superior Court for breach of the same contract at issue here, but voluntarily dismissed its lawsuit on February 22, 2023. *See* Doc. 13. Plaintiffs then filed suit in the Middle District of Florida on May 11, 2023, Doc. 1, but abandoned their original complaint rather than respond to Defendants' first motion to dismiss, Doc. 27. On August 11, 2023, Plaintiffs filed their First Amended Complaint ("FAC"). Doc. 44.

After Defendants moved to dismiss the FAC, Doc. 52, Plaintiffs conceded that their FAC contained shotgun pleading "errors." Doc. 65 at 38-39. Plaintiffs then moved to amend their FAC. Doc. 68 at 3-5. Defendants opposed. Doc. 70. *One day* later, Plaintiffs moved to amend the FAC *again*, seeking to dismiss a count that they

7

admitted was of "no practical consequence to this litigation." Doc. 71 at 3. The District Court denied both motions to amend, finding that "Plaintiffs have not been diligent" and that their "actions have prejudiced the Defendants." Doc. 73 at 4, 6.

### B.    The District Court Dismisses The FAC

On November 22, 2023, the District Court dismissed without prejudice Plaintiffs' FAC as a shotgun pleading. Doc. 74 at 5-6. The District Court warned Plaintiffs that future shotgun pleadings would be "subject to dismissal *with* prejudice." Doc. 74 at 5 (emphasis in original).[3]

### C.    Plaintiffs Try Yet Again With Their SAC, And Defendants Move Again To Dismiss

Plaintiffs filed their SAC on December 1, 2023. Doc. 76. Count I alleged tortious interference with the Declan Contract; Count II alleged tortious interference with the RRA Contract; Count III alleged tortious interference with the Mesa Agreement. SAC ¶¶ 132-145, 146-156, 157-166. On December 15, 2023, Defendants moved to dismiss the SAC. Doc. 90.

Defendants argued that the District Court did not have personal jurisdiction over either Defendant because Plaintiffs failed to satisfy the Florida long-arm statute and constitutional due process, Doc. 90 at 12-22; that Counts I and II should be dismissed under the *forum non conveniens* doctrine, *id.* at 23-26; that all claims

---

[3] All emphases herein are added unless otherwise noted.

against Textron Inc. must be dismissed because, *inter alia*, rather than allege any tortious conduct against Textron Inc., the SAC impermissibly lumped together Textron Inc. and eAviation and relied on a baseless "agency" theory to ascribe eAviation's actions to Textron Inc., *id.* at 26-31; that the SAC fails to state a claim for relief as to eAviation under all three Counts, *id.* at 31-41; and that the SAC should be dismissed as a shotgun pleading, *id.* at 10-12.  Defendants also noted that, while this litigation has been pending, Plaintiffs have been engaging in pre-litigation negotiations with Pipistrel's Slovenian counsel in Slovenia.  *Id.* at 41-42.

### D.    The District Court Dismisses The SAC

On March 12, 2024, the District Court dismissed Counts I and II of the SAC without prejudice on *forum non conveniens* grounds, and dismissed Count III with prejudice for failure to state a claim.  *See* Doc. 95.

The District Court did not reach Defendants' arguments that Defendants were not subject to personal jurisdiction under Counts I and II, that Plaintiffs failed to state a claim for Counts I and II, or that all claims against Textron Inc. should be dismissed.

More specifically as to the issues on appeal:

**Counts I and II.**  First, the District Court held that under federal law, non-signatory Defendants could enforce the Slovenian FSCs in the Declan and RRA Contracts against signatory Plaintiffs based on the doctrine of equitable estoppel.  *Id.* at 9-11.  Plaintiffs now contest the application of federal law to this issue.

Next, the District Court undertook a *forum non conveniens* analysis, finding that Slovenia is an adequate and available forum, and that Plaintiffs can reinstate their claims in Slovenia without undue inconvenience or prejudice. *Id.* at 11-17. Plaintiffs do not contest these conclusions. Rather, Plaintiffs contest only the District Court's analysis of public and private factors.

On this issue, the District Court held that, under *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49 (2013), because there were applicable FSCs, the court need *only* "consider arguments about public-interest factors." Doc. 95 at 14-15. As to those public factors, the court stated that "Plaintiffs do not list any public interest factors weighing in their favor apart from allusions to the fact that some events occurred in Florida and that some witnesses reside in the U.S.—primarily private interest factors." *Id.* at 15.

The District Court then found that Plaintiffs had not identified any "prohibitive administrative burdens that would be placed on Slovenian courts," and that having to translate some documents would not outweigh "Slovenia's interest in resolving disputes governed by Slovenian law." *Id.* at 15-16. Assessing both sides' expert declarations on Slovenian law, the District Court recognized that the core question of whether Pipistrel breached the Declan and RRA Contracts is governed by Slovenian law, and that "the interests of Slovenian courts in resolving" this dispute are therefore "entitled to the greater weight." *Id.* at 14, 16 & n.6.

10

The District Court also held that for it to "move forward with interpreting Slovenian law would . . . create a significant risk of inconsistent rulings regarding the breach of contract question." *Id.* at 16.

**Count III.** The District Court found that it had jurisdiction over the Defendants for Count III, but that Count III should be dismissed with prejudice for failure to state a claim. Defendants cross-appeal the jurisdictional finding, while Plaintiffs appeal the dismissal for failure to state a claim.

In concluding that it could exercise jurisdiction over Count III, the District Court—making an argument that even Plaintiffs have never raised—held that the Mesa Agreement's "underlying forum-selection clause is determinative," even though the Mesa Agreement was only between RRA and Mesa. *Id.* at 17. The District Court relied on the "reasons outlined in Count I and II," which concerned different contracts, and vague references to Defendants having "colluded" with Mesa. *Id.* at 18-20. Apparently as an alternative ground for finding jurisdiction, the District Court also held that Defendants' alleged "role in frustrating the aims" of RRA's contracts was "alone" sufficient to satisfy the breach-of-contract prong of Florida's long-arm statute, despite the fact that Defendants, as non-parties to the Mesa Agreement, could not have breached that contract. *Id.* at 18.

As to the merits of Count III, the District Court stated that "Defendants contend that RRA . . . cannot point to a breach of the Mesa Contract," *id.* at 21; Plaintiffs had

failed to rebut *any* of Defendants' arguments as to Count III, *id.* at 22; and Plaintiffs had failed to rebut Defendants' argument regarding the privilege to interfere, *id*.

The District Court also held that "the SAC remains a prohibited shotgun pleading," and that, "[i]n more vivid relief than most, Plaintiffs' [SAC] is emblematic of those shotgun pleadings which fail to give Defendants and the Court adequate notice of the grounds upon which each claim rests." *Id.* at 23 n.11 (citations and alterations omitted).

## IV.    STANDARD OF REVIEW

**Counts I and II.**  This Court may only "reverse a district court's dismissal based on *forum non conveniens* if it constitutes a clear abuse of discretion . . . [A]buse of discretion review is extremely limited and highly deferential." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1288 (11th Cir. 2009).  "The enforceability of a forum-selection clause is a question of law" that is reviewed "de novo." *Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012).

**Count III.**  Dismissals for failure to state a claim are reviewed "de novo." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004).  "When a district court dismisses a complaint because it is a shotgun pleading," that decision is reviewed for "abuse of discretion." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). Whether a district court "properly exercised personal jurisdiction over a nonresident defendant" is "review[ed] *de novo*." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, 1291

(11th Cir. 2022).

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed Counts I and II on grounds of *forum non conveniens*.  The District Court correctly held that Count III failed to state a claim, but erred in concluding that it could exercise jurisdiction over Defendants.

**Counts I and II – Application of FSCs.**  Plaintiffs contend that the District Court erred by applying federal law to the question of whether the non-signatory Defendants could enforce the FSCs against the signatory-Plaintiffs.  They claim that, instead, the District Court should have followed a Sixth Circuit decision—decided *after* the District Court's ruling—and undertaken an *Erie* analysis by which federal law would apply to *enforcing* FSCs, and state law would apply to *interpreting* FSCs.  Plaintiffs contend that because the question of non-party enforcement against signatories is a question of interpretation, state law would apply.  And because, Plaintiffs contend, Florida conflict of law rules lead to Slovenian law governing this issue, the District Court should have held that under Slovenian law Defendants cannot enforce the clause against Plaintiffs.  Plaintiffs are wrong.

*First*, Plaintiffs have waived this argument, twice over.  They never made this argument to the District Court, and may not do so for the first time on appeal.  And on appeal, they have not actually made any *argument* as to *why* the Sixth Circuit's decision—on which they exclusively rely—should bind *this* Court, or how the

District Court could have possibly erred by not following an out-of-circuit case that was not even decided at the time of its ruling. The Court should thus disregard Plaintiffs' non-argument, made for the first time on appeal.

*Second*, even if the Court were to consider Plaintiffs' argument, it fails. Courts in this circuit have long applied federal law to the enforcement and interpretation of FSCs. Plaintiffs ignore *all* of this intra-circuit case law.

*Third,* even if Plaintiffs are correct that an *Erie* analysis would result in application of state law to questions of interpretation, the issue here—whether non-signatories may enforce FSCs against signatories—is a matter of *enforcement*, which Plaintiffs concede is governed by federal law. Indeed, the estoppel doctrine applied by the District Court does not consider the text of the FSCs at all, but rather the nature of Plaintiffs' claims. The question is simply one of whether non-signatories may *enforce* a contract term to which the signatory has already agreed.

*Fourth*, even if Plaintiffs are correct that this is not an issue of enforcement but of interpretation, they are *still* bound by their FSCs. Under Plaintiffs' own *Erie* framework, Florida law would apply. But Plaintiffs are incorrect in asserting that Florida conflict of law rules would lead to the application of Slovenian law. Florida courts treat the application of FSCs as a *procedural matter*. Whether non-signatories may enforce against signatories would therefore be governed by *Florida law*. And under Florida law, the same estoppel principles the District Court applied under

federal law would allow Defendants to enforce the FSCs against Plaintiffs.

**Counts I and II – Consideration of *Forum Non Conveniens* Factors.**
Plaintiffs are incorrect in their contention that *Atlantic Marine* does not apply because Defendants were non-signatories.

*First*, their argument is waived because it was not raised below.

*Second*, their argument fails on the merits. As even the cases on which Plaintiffs rely make clear, *Atlantic Marine* was not concerned with counting signature blocks. Rather, the question is whether the party resisting enforcement of the FSC is bound by the clause, such that consideration of its private interests is obviated by the fact that it already contracted away such considerations when it agreed to the FSC. Here, Plaintiffs are bound to their FSCs by equitable estoppel, and knew full well when entering into their contracts that any lawsuit they could bring that arose from or were connected with those Slovenian contracts would be litigated in Slovenia. *Atlantic Marine* obviates consideration of Plaintiffs' private interests.

Even if private factors are considered, Plaintiffs—who already agreed to litigate claims arising from the Pipistrel contracts in Slovenia—cannot be heard to complain of inconvenience because they tried to evade their FSCs by suing U.S. entities. And much of the relevant evidence and witnesses will be located in Slovenia because the gravamen of their claims is that Defendants induced Pipistrel to breach.

As to public interest factors, the District Court was well within its discretion

15

in finding that Slovenia's interest was "entitled to the greater weight" because the "crux of this dispute"—whether Pipistrel breached Plaintiffs' contracts—is a question of Slovenian law.  Doc. 95 at 16.

**Count III – Failure to State a Claim.**  Plaintiffs can point to no portion of their Opposition below which remotely addressed Defendants' argument that they cannot be liable because Mesa was predisposed to breach.  Nor can they contest other bases for dismissal: that they never identified any breach of the Mesa Agreement; that they failed to rebut Defendants' argument regarding the privilege to interfere, among others; and that, in any event, the SAC as a whole (including Count III) "remain[ed] a prohibited 'shotgun pleading.'"  Doc. 95 at 23 n.11.

**Count III – Personal Jurisdiction**.    The District Court erred in its jurisdictional analysis in several respects.

*First*, it failed to apply the proper legal standard for determining whether the Mesa Agreement's FSC could confer jurisdiction over Defendants.  That question is governed by the Florida long-arm statute, Fla. Stat. § 48.193(1)(a)(9), which in turn incorporates other statutory law, none of which was even cited by the District Court. Those statutes make clear that the long-arm's contractual-consent prong can only be satisfied where, *inter alia*, the non-resident *agreed* to the jurisdictional consent clause, *i.e.*, that it is a *party* to the agreement.  Defendants are not parties to the Mesa Agreement, so the long-arm statute is not satisfied.

*Second*, even if Defendants could somehow be bound to the Mesa Agreement's FSC, the grounds the District Court asserted for doing so are invalid. Its reference to its reasoning for Counts I and II is inapposite, as those Counts involved different contracts and the application of equitable estoppel against a *signatory*—a doctrine with no applicability here where it is *non-signatory* Defendants who are to be bound. Moreover, the District Court's reliance on the "closely related" doctrine under *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998), was misplaced because, *inter alia*, that doctrine requires that the non-signatory's rights be completely derivative of a signatory's, a dynamic absent here.

*Third*, the District Court's apparent alternative ground for jurisdiction—the long-arm statute's breach-of-contract prong, Fla. Stat. § 48.193(1)(a)(7)—fails. Defendants were not parties to the Mesa Agreement and thus could not have breached it, thereby rendering the essential requirement of that prong inapplicable.

## **ARGUMENT**

### I.    **THE DISTRICT COURT CORRECTLY DISMISSED COUNTS I AND II UNDER THE *FORUM NON CONVENIENS* DOCTRINE**

As the District Court recognized, Counts I and II are nothing more than Plaintiffs' attempt to "elude their Slovenian forum selection clauses by pursuing their breach of contract claims against Pipistrel under the guise of a domestic tortious interference claim." Doc. 95 at 16. As such, the District Court correctly dismissed those claims on *forum non conveniens* grounds. Plaintiffs' attempts to resist

17

application of the FSCs and the *forum non conveniens* doctrine are unavailing.

## A. The District Court Correctly Held That Defendants May Enforce The Forum Selection Clauses Against Plaintiffs

Plaintiffs do not dispute that the FSCs in the Declan and RRA Contracts are valid, mandatory, and sufficiently broad to apply to their tort claims. Nor do they object to the substance of the District Court's estoppel analysis. Instead, they raise—for the first time in this litigation—a new argument that a federal court should eschew federal law in favor of state law (which they argue leads to application of Slovenian law in this case) to determine whether a non-signatory can enforce an FSC against a signatory. This argument fails for numerous reasons.

### 1. *Plaintiffs Have Waived Their Argument*

As a threshold, dispositive matter, Plaintiffs' present argument has been waived—both by failing to preserve the argument below and by failing to adequately argue their novel position on appeal.

As to their failure to preserve, it is axiomatic that "an issue not raised in the district court and raised for the first time in an appeal will not be considered." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). "[T]o preserve a claim, argument, theory, or defense on appeal," a party "must first clearly present it to the district court . . . in such a way as to afford the district court an opportunity to recognize and rule on it." *Ruckh v. Salus Rehab., LLC*, 963 F.3d 1089, 1111 (11th Cir. 2020). A party's "single, passing reference" to an issue,

"unaccompanied by any discussion or elaboration," is "insufficient to preserve an . . . argument." *Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014).

Here, while Plaintiffs claim they "argued" that the contracts' FSCs are "governed by Slovenian law," PB15, they offered no such argument below. Plaintiffs never so much as *hinted* to the District Court, as they now argue, that "*Erie* principles" require the application of federal law to the *enforcement* of an FSC, while state law applies to the *interpretation* of an FSC, which ultimately leads to Slovenian law controlling the question of whether non-signatories can enforce the clause against signatories. PB23-24. Indeed, there is no mention of applying state law at all.

To the contrary, all Plaintiffs did was assert a single bare conclusion—without argument or citation—that the District Court "must use Slovenian law." Doc. 91 at 13. This is exactly the kind of "[c]ursory, conclusory statement[]" that this Court has held "do[es] not adequately preserve a more developed argument that could have been presented to the district court but was not." *Mitchell v. City of Miami Beach*, 2024 WL 140065, at *3 (11th Cir. Jan. 12, 2024); *see also Gennusa*, 748 F.3d at 1116. Plaintiffs made no attempt to argue *why* Slovenian law should apply to the FSCs, and failed to present any disputed issue of law "in such a way as to afford the district court an opportunity to recognize and rule on it." *Ruckh*, 963 F.3d at 1111.[4]

---

[4] Plaintiffs directed the District Court to a foreign law declaration on the substance of Slovenian law, Doc. 91 at 13, but without any argument as to why Slovenian law should apply, this was an irrelevant red-herring.

The novelty of Plaintiffs' contention is underlined by the fact that the only authority Plaintiffs have *ever* cited in support of their position—for the first time on appeal—is an out-of-circuit case decided months *after* the District Court ruled.  PB22-24 (relying on *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304 (6th Cir. 2024)).  As such, Plaintiffs' argument was "insufficient to permit reasoned consideration by the district court" and is waived.  *Ruckh*, 963 F.3d at 1111.

Even if this Court were to consider Plaintiffs' argument, Plaintiffs have utterly failed to *make* an "argument" for the Court to consider.  While Plaintiffs cite to *Firexo*, they do not actually make any *argument* as to how the District Court could have possibly erred by not following *Firexo*—which is not only not binding, but was not even decided at the time of the District Court's decision.  Indeed, as explained below, there is a mountain of intra-circuit case law entirely in line with the District Court's conclusion.  *Infra* 21-28.  Plaintiffs ignore *all* of that case law, and fail to explain why the District Court's adherence to that case law was somehow error.

Nor do Plaintiffs even attempt to explain the reasoning of *Firexo*, much less make any actual *argument* as to why this Court should cast aside decades of intra-circuit authority in favor of just reflexively adopting the entirety of *Firexo* and considering this case "[u]nder" it.  PB24.

Plaintiffs have thus not made an argument at all, and their totally unexplained position should be disregarded.  *See Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278

(11th Cir. 2009) (appellant's brief "must include an *argument* containing appellant's contentions *and the reasons for them*"); *Whitten v. Social Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) (to adequately raise issue in opening brief, "it must be plainly and prominently raised and *must be supported by arguments*"); *Johnson v. Houston Cnty. Georgia*, 758 F. App'x 911, 917 (11th Cir. 2018) (issue insufficiently raised when opening brief fails to "offer[] supporting *arguments* . . . to explain why the [district] court erred"); *United States v. King*, 751 F.3d 1268, 1277 (11th Cir. 2014) (appellant "abandon[s]" argument when it "fails to challenge . . . the grounds on which the district court based its [decision]").[5]

### 2. Courts In The Eleventh Circuit Have Long Applied Federal Law To The Enforcement And Construction Of Forum Selection Clauses

In any event, Plaintiffs are wrong on the merits. The District Court correctly applied the federal common law of estoppel to enforce the FSCs against Plaintiffs.

Tellingly, Plaintiffs do not rely on *any* apposite intra-circuit case law, and completely ignore the authority in this circuit holding that "determining the proper forum through the forum-selection clause is a procedural issue, even if it involves principles of contract law. Accordingly, ***federal law applies and the Court need not***

---

[5] Moreover, Plaintiffs cannot remedy their deficiency by attempting to assert an untimely argument in their Reply Brief. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) (arguments raised for first time in reply brief are not considered).

*venture further into choice-of-law and Erie matters*."  *Avicenna Laser Tech., Inc. v. Nathaniel Grp., Inc.*, 2005 WL 8154578, at *2 (S.D. Fla. Nov. 3, 2005).

Indeed, reams of Eleventh Circuit case law direct federal courts to apply federal common law to the enforcement and construction of FSCs.  As an *en banc* Eleventh Circuit explained decades ago, "forum selection clauses present procedural questions to be resolved by federal law independent of forum state policy."  *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1067 (11th Cir. 1987), *aff'd and remanded*, 487 U.S. 22 (1988).  Therefore, "federal law, not [state] law, must be applied to determine the effect of forum selection clauses."  *Id.* at 1068.

Accordingly, this Court has stated that "[t]he *enforceability* of forum-selection clauses is governed by federal law," *AQuate II LLC v. Myers*, 100 F.4th 1316, 1323 (11th Cir. 2024), and that "[t]he *construction* of forum selection clauses by federal courts is a matter of federal common law, not state law of the state in which the federal court sits," *Cornett v. Carrithers*, 465 F. App'x 841, 842 (11th Cir. 2012). And under federal common law, FSCs are to be interpreted under "ordinary contract principles."  *Id.*

Numerous decisions of this Court reinforce these principles.  *E.g.*, *Slater v. Energy Servs. Grp. Int'l, Inc.*, 634 F.3d 1326, 1330 (11th Cir. 2011) (interpretation under "general contract principles" without reference to state law); *Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 975 (11th Cir. 2009) ("[E]nforceability" is

22

"governed by federal law[,] and ordinary principles of contract interpretation apply."); *Ocwen Orlando Holdings Corp. v. Harvard Prop. Trust, LLC*, 526 F.3d 1379, 1381 (11th Cir. 2008) ("[FSCs] are interpreted according to ordinary contract principles."); *Stewart*, 810 F.2d at 1070 (analyzing enforceability and scope under federal law).

Given this guidance, intra-circuit district courts have long applied federal law to determine the effect of FSCs, without reference to state law or contractually-chosen law.  *E.g.*, *Vernon v. Stabach*, 2014 WL 1806861, at *4 (S.D. Fla. May 7, 2014) ("Within the Eleventh Circuit . . . federal common law governs the construction of a forum-selection clause"; interpreting scope of clause under federal law); *Sybac Solar AG v. Sybac Solar, LLC*, 2012 WL 6814193, at *3 (M.D. Fla. Oct. 22, 2012) ("construction" of FSC is "a matter of federal common law"; applying "ordinary contract principles" to determine mandatory/permissive nature of clause); *PNC Bank, N.A. v. Akshar Petroleum, Inc.*, 2014 WL 1230689, at *3 (M.D. Fla. Mar. 25, 2014) ("To interpret the meaning of the forum-selection clauses, the Court applies federal common law"; determining mandatory/permissive under federal law); *Five Points Sarasota Invs. LLC v. Investec Bank PLC*, 2023 WL 2071463, at *2 (M.D. Fla. Feb. 17, 2023) ("federal law governs whether to enforce a forum selection clause" and "federal common law" governs "interpreting a forum selection clause"); *Gurba v. PeoplesBank*, 2022 WL 17904395, at *7 (M.D. Fla. Dec. 23, 2022) ("The Eleventh

23

Circuit has looked to federal law in examining whether a forum-selection clause was mandatory or permissive in diversity-jurisdiction actions."); *TRG Holdings G & H, LLC v. Patel*, 621 F. Supp. 3d 1308, 1310 (N.D. Ga. 2022) (FSCs are "interpreted according to ordinary contract principles"; interpreting scope under federal law); *Artier LLC v. Carre D'Artistes SAS*, 2017 WL 7732129, at *3-4 (S.D. Fla. Nov. 20, 2017) (rejecting plaintiffs' reliance on French law to claim that they were not bound by the FSC and applying federal law); *United States v. Cincinnati Ins. Co.*, 2022 WL 1801193, at *2-4 & n.4 (M.D. Fla. Mar. 25, 2022) (rejecting plaintiffs' "erroneous[]" contention that state law applies, and assessing validity, enforceability, scope, and mandatory/permissive nature under federal law).

Indeed, both this Court and intra-circuit district courts have analyzed the precise question at issue here—whether non-signatories may enforce FSCs against signatories—by reference to federal law, not state law or the contractually-chosen law. *See Liles v. Ginn-Law West End, Ltd.*, 631 F.3d 1242, 1256 (11th Cir. 2011) (applying federal estoppel doctrine); *Byers*, 701 F.3d at 1342 (same); *Gonzalez v. Watermark Realty Inc.*, 2010 WL 1299740, at *4 (S.D. Fla. Mar. 30, 2010) (same); *Gurba*, 2022 WL 17904395, at *5 ("Federal law, not state law, governs consideration of whether to enforce a forum-selection clause in a diversity action"; applying federal law to allow non-signatories to enforce against signatory).

The District Court's application of federal law was entirely in line with this

24

authority, and should be affirmed.

This result makes sense. FSCs are fundamentally about where to hear a case. And as the *en banc Stewart* Court held, for federal courts, "housekeeping" matters like venue are "a matter of federal procedure" and "manifestly within the province of federal law." *Stewart*, 810 F.2d at 1068. As such, "forum selection clauses present procedural questions to be resolved by federal law," not state law. *Id.* at 1067. The Ninth Circuit, relying specifically on this Court's *en banc* decision in *Stewart*, has likewise long held that because "the federal procedural issues raised by forum selection clauses significantly outweigh the state interests," federal law controls the enforcement and interpretation of FSCs. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988) (applying federal law to whether non-signatory defendants could enforce against signatory plaintiff).

Plaintiffs do not acknowledge *any* of the foregoing authority, much less provide any reason to deviate from this great weight of intra-circuit law. Nor, as noted above, do Plaintiffs provide any rationale for why *Firexo* should wipe away all of this intra-circuit authority. Indeed, *Firexo* noted a circuit split on the questions of whether enforcement and interpretation—or "applicability," in its own term of art—should be analyzed separately, and if so, whether federal or state law applied to each issue. *See Firexo*, 99 F.4th at 323. It did not include the Eleventh Circuit on its side of the divide, and *Firexo*'s position is incompatible with the federal-procedure-

25

focused rationale of Eleventh Circuit law and the cases referenced above. *See id.* at

323 & n.10.[6]

Moreover, it is worth noting that the circuit split is deeper than *Firexo* made it

appear. Although the Sixth Circuit characterized its decision as aligned with

*Martinez v. Bloomberg*, 740 F.3d 211 (2d Cir. 2014), and *Yavuz v. 61 MM, Ltd.*, 465

---

[6] While the weight of authority in this circuit is as described herein, there are outlier cases that have not been given precedential value. For example, *Vernon*, 2014 WL 1806861, at *4, explained that "[w]ithin the Eleventh Circuit . . . federal common law governs the construction of a forum selection clause," but acknowledged with a "*but see*" citation *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011), which undertook an *Erie* analysis to determine whether federal or state law applied to "enforceability" of an FSC. *See also PNC*, 2014 WL 1230689, at *3 (applying federal law but acknowledging *Rucker* with a "*but see*"). Neither *Vernon* nor *PNC* applied *Rucker*'s *Erie* analysis, which is contrary to the "well-settled" law in this and other circuits that enforcement is governed by federal law. *Pappas v. Kerzner Int'l Bahamas Ltd.*, 585 F. App'x 962, 966 n.4 (11th Cir. 2014); *supra* 21-24; *infra* 28-31. *AFC Franchising, LLC v. Purugganan* also alluded to *Erie*, but concluded that such analysis was unnecessary because the litigants were in agreement as to which law should apply to enforcement of the FSC. 43 F.4th 1285, 1290 (11th Cir. 2022). *AFC* also generically noted—without acknowledging the foregoing authority and in reliance on a case that did not involve FSCs—that state law governs "contract interpretation." 43 F.4th 1285, 1290 (11th Cir. 2022). This was contrary to the weight of authority applying federal law to the construction of FSCs, and contrary to *Stewart*'s insight that the effect of FSCs is procedural and should be governed by federal law. Indeed, cases post-dating *AFC* have continued to apply federal law to questions of interpretation. *E.g.*, *Five Points Sarasota Invs.*, 2023 WL 2071463, at *2; *Gurba*, 2022 WL 17904395, at *7. Lastly, *Usme v. CMI Leisure Mgmt., Inc.*, 2024 WL 3217570, at *4-5 (11th Cir. June 28, 2024), while noting in dicta (without reference to the foregoing authority) that exceptions to the rule that only parties may enforce contractual provisions are governed by "traditional principles of state law," nevertheless permitted application of federal law in accordance with the parties' briefing. *Usme* thus supports the application of federal law in this case, particularly given that Plaintiffs never before argued that state law, rather than federal law, should govern. *Supra* 18-20.

F.3d 418 (10th Cir. 2006), the Second and Tenth Circuit's position is quite different. While *Firexo* undertakes an *Erie* analysis which could result in state law controlling regardless of the contract's choice of law clause, *see Firexo*, 99 F.4th at 327-28; *infra* 31-34, the Second and Tenth Circuits simply hold that the contractually-chosen law governs matters of interpretation, *Martinez*, 740 F.3d at 224; *Yavuz*, 465 F.3d at 431. Thus, including the Seventh Circuit's position as noted in *Firexo*, *see* 99 F.4th at 323 n.10, there are at least *four* "sides" to this split. Plaintiffs do not provide *any* argument why this Court should reject its own precedent and simply adopt the Sixth Circuit's position—as opposed to, *e.g.*, the Second, Tenth, or Seventh's.

The one intra-circuit case Plaintiffs cite, *Wylie v. Kerzner Int'l Bahamas Ltd.*, 706 F. App'x 577 (11th Cir. 2017), does not alter any of the foregoing. In that case, the district court applied federal law to enforce an FSC against a non-signatory, analyzing only whether the contract had been "induced by fraud or overreaching." *Id.* at 579-580. This Court held that the district court had overlooked the non-signatory's true argument, which was that no contract had been formed with her at all, and thus she could not be bound by the clause. *Id.* In doing so, the Court characterized this as a question of contract "validity," and asked, without deciding, if state-law principles around "the formation of contracts" should be considered. *Id.* at 580.

The question here, however, is directionally opposite and has nothing to do

27

with contract formation: can a *non-signatory* bind a *signatory* to a clause to which the signatory indisputably and validly agreed. At no point did *Wylie* somehow nullify—or even cite—any of the intra-circuit authority discussed above.

*Firexo* mischaracterized *Wylie*'s narrow discussion by reading out *Wylie*'s focus on contract formation and replacing it with *Firexo*'s own, much broader focus on "applicability." *Firexo*, 99 F.4th at 318-19; *id.* at 309-310 (defining "applicability" as including all matters related to contract interpretation and scope). Thus, while *Firexo* described *Wylie* as having "left unanswered" the entire issue *Firexo* sought to address—that is, whether "applicability" and "enforceability" are separately analyzed under state versus federal law—*Wylie* did no such thing, and *Firexo* does not fill any gap in Eleventh Circuit law.

In sum, the District Court correctly adhered to a substantial body of intra-circuit authority and should be affirmed.

### 3. Even If There Is A Distinction Between Federal/"Enforcement" And State/"Interpretation," Whether A Non-Signatory May Bind A Signatory To A Forum Selection Clause Is A Matter Of Enforcement

Assuming *arguendo* that this circuit would apply a federal/state law split between enforcement and interpretation of an FSC, dismissal here was still warranted because the question at issue is one of enforcement.

The majority of circuit courts, whether they adhere to a federal/state split between enforcement/interpretation or not, hold that federal law controls whether to

enforce an FSC. *See Gurba*, 2022 WL 17904395, at *5 (noting that majority of circuits apply federal law to question of enforcement). And as noted above, this Court also applies federal law to this question. *See AQuate*, 100 F.4th at 1323; *P & S Bus. Machines, Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003); *Pappas*, 585 F. App'x at 966 n.4.

Even Plaintiffs agree, therefore, that issues involving questions of *enforcement* are governed by federal law. PB23. Plaintiffs' position thus rests on an assumption that whether non-signatories can enforce FSCs against signatories is a question of *interpretation*. Yet Plaintiffs provide *no* reason why this issue should be considered a question of interpretation rather than enforcement. Their whole baseless contention should thus be disregarded. *Supra* 20-21.

In any event, Plaintiffs' position is incorrect. Courts in this circuit have routinely considered the question of whether non-signatories can enforce FSCs against signatories to be an issue of *enforcement*. *See Byers*, 701 F.3d at 1342 (applying federal estoppel and explaining that "[e]quitable estoppel allows a nonsignatory to ***enforce*** the provisions of a contract against a signatory"); *Blixseth v. Disilvestri*, 2013 WL 12063940, at *15 (S.D. Fla. Jan. 31, 2013) (applying federal estoppel and holding that although defendant "is not a party" to the agreements containing the FSC, "he too can ***enforce*** it"); *HNA LH OD, LLC v. Loc. House Int'l, Inc.*, 2021 WL 4459404, at *5 (S.D. Fla. Sept. 29, 2021) (applying federal law to

29

whether "non-signatory defendants can ***enforce*** a forum-selection clause against a signatory plaintiff").

This is as it should be. Defendants' argument here does not involve any "interpretation" of the FSC at all—it requires no parsing of contractual language or textual analysis whatsoever. *See Martinez*, 740 F.3d at 220 (drawing federal/state distinction between enforcement/interpretation, but limiting "interpretation" "to questions about *the meaning of the terms used in the contract*"). Defendants' argument is entirely about whether the FSC may be asserted—that is, *enforced*—by non-signatories against signatories.

As the District Court explained, the estoppel analysis does not look to what the FSC actually says, but rather to the *nature of Plaintiffs' claims*: equitable estoppel "allows a nonsignatory to ***enforce*** the provisions of a contract against a signatory" when the signatory "relies on the terms of the contract to assert his or her claims against the nonsignatory," and when "the signatory raises allegations of interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories." Doc. 95 at 10 (quoting *Byers*, 701 F.3d at 1342).

Even *Firexo* discussed a non-signatory seeking to enforce against a signatory as independent of any textual interpretation of the FSC: "[t]he effect is merely to substitute one [defendant] for another [defendant] that is [] bound by the forum selection clause to which the plaintiffs had agreed." *Firexo*, 99 F.4th at 316 (quoting

30

*Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 442 (7th Cir. 2012)). There is no dispute over the meaning of the clause, and the "substitute[ed]" defendant is not trying to "alter" the agreement or "change the forum agreed on." *Id.* at 316-317. Defendants are simply enforcing a clause to which Plaintiffs, "by signing the contracts," already agreed. *Id.* at 316. "[E]quity" thus "binds signatories to their agreement due to their consent," *id.* at 317, regardless of how the FSC is "interpreted."

Thus, even if federal law applies to enforcement and state law applies to interpretation, the District Court was correct in applying federal law to allow the enforcement of the FSCs against the signatory-Plaintiffs.

### 4. Even If State Law Did Apply, Florida Estoppel Law, Not Slovenian Law, Would Govern, And Plaintiffs Would Still Be Bound By Their Forum Selection Clauses

If this Court were to agree with Plaintiffs that this is a question of interpretation, and therefore under Plaintiffs' *Erie* framework state law would apply, Plaintiffs would *still* be bound by the FSCs under *Florida* law.

Plaintiffs' *Erie* analysis makes an unfounded leap: they argue that, once it is determined that state law applies, Florida conflict-of-law rules would ultimately lead to Slovenian law controlling the issue because the contracts were "executed" in Slovenia. PB25. This is baseless.

As an initial matter, Plaintiffs do not point to *any* facts or even allegations to

support their *ipse dixit* assertion that the Declan and RRA Contracts were "executed" in Slovenia. *See W. Sur. Co. v. Steuerwald*, 760 F. App'x 810, 816 (11th Cir. 2019) (determining where contract was executed is "fact-intensive," and requires determining "where the last act necessary to complete the contract was done"). And Plaintiffs never raised this issue before the district court, thus forfeiting such contention now. *Supra* 18-20.[7]

In any event, under Florida law, this doctrine of *lex loci contractus* only controls "in the absence of a contractual provision specifying governing law." *Shaps v. Provident Life & Acc. Ins. Co.*, 317 F.3d 1326, 1329-30 (11th Cir. 2003). Here, there are choice of law clauses specifying Slovenian law, so where the contracts were executed is irrelevant. But the Slovenian choice of law clauses do not help Plaintiffs either because (i) Plaintiffs have not invoked those clauses and so have waived any reliance on them as a means of applying Slovenian law to this issue, *see United States v. Levy*, 379 F.3d 1241, 1245 (11th Cir. 2004); and (ii) applying Florida conflict-of-law rules in this circumstance results in *Florida* law—*not* Slovenian law—controlling the issue.

---

[7] Moreover, it would be illogical and unjust for Plaintiffs to invoke their contracts *in order to avoid* application of the forum selection clauses *in those contracts*. *Cf.* Doc. 95 at 10-11 ("[E]quitable estoppel precludes a party from claiming the benefits of some of the provisions of a contract while simultaneously attempting to avoid the burdens that some other provisions of the contract impose." (quoting *Byers*, 701 F.3d at 1342)).

When a Florida court is faced with a contract that includes, as here, both an FSC and a choice of law clause, "whether the forum selection clause is valid and enforceable is a procedural issue that ***must be determined in accordance with the law of the forum state rather than the law of the state designated in the agreement***." *Golden Palm Hosp. Inc. v. Stearns Bank Nat. Ass'n*, 874 So.2d 1231, 1234-45 (Fla. Dist. Ct. App. 2004). This analysis includes whether—under Florida law—the clause is "enforceable and binding on the parties" and is "permissive or mandatory." *Id.* at 1236. Thus, the *Golden Palm* court proceeded to apply Florida law to analyze even, *inter alia*, the "language of the clause" despite a choice of law clause identifying Minnesota law. *Id.* at 1236-37; *see also Shoppes Ltd. P'ship v. Conn*, 829 So.2d 356, 357-58 & n.1 (Fla. Dist. Ct. App. 2002) (interpreting clause as permissive under Florida law notwithstanding Massachusetts choice of law clause, and noting that "issues concerning venue and the validity of forum selection clauses are deemed procedural in nature and governed by the law of the forum state").

It is thus clear that the issue of non-signatories enforcing FSCs against signatories—whether characterized as validity, enforceability, or textual interpretation—would be governed by Florida law, *not* Slovenian law. And under Florida law, estoppel would permit Defendants to enforce against Plaintiffs. Just as under federal law, estoppel under Florida law is warranted where "the signatory's claims allege substantially interdependent and concerted misconduct by [a] signatory

and the non-signatory," or where "the claims relate directly to the contract and the signatory is relying on the contract to assert its claims against the non-signatory." *Koechil v. BIP Intern., Inc.*, 870 So.2d 940, 943-44 (Fla. Dist. Ct. App. 2004). Thus, under Plaintiffs' own *Erie* analysis, they are still bound by the FSCs.

Taking a step back, there is a fundamental absurdity in Plaintiffs' position. Plaintiffs have chosen to sue in U.S. federal court to try to escape their own Slovenian FSC. But when faced with that clause, Plaintiffs now try to escape the application of U.S. federal law and apply Slovenian law—all in an effort to stay in federal court to continue trying to avoid Slovenian law. The Court should not allow Plaintiffs to so flagrantly wriggle out of their own agreements.

### B. The District Court Did Not Abuse Its Discretion In Considering The *Forum Non Conveniens* Factors

Having established that Defendants may enforce the FSC against Plaintiffs, the District Court then considered the *forum non conveniens* factors. If there were no applicable FSCs, then to obtain dismissal, the moving party must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." Doc. 95 at 12. But where, as here, there are applicable FSCs, then, under *Atlantic Marine*, a court deciding the second factor need *only* "consider arguments about public-interest factors," since a party to an FSC has already "waive[d] the right to challenge the preselected forum as

inconvenient . . . for themselves or their witnesses." *Id.* at 14-15.

Plaintiffs do not dispute this legal framework, nor do they dispute the District Court's determination that the first and third prongs of the *forum non conveniens* test weigh in favor of dismissal. Rather, Plaintiffs confine their appeal to "the second prong of this test," arguing that (i) the *Atlantic Marine* modification to the traditional analysis does not apply here, and therefore the District Court erred in not considering private factors, and (ii) the District Court abused its discretion in considering the public interest factors. PB27-36. None of this is accurate.

### 1. The District Court Did Not Abuse Its Discretion In Analyzing The Public Interest Factors

Taking the public interest factors first, Plaintiffs lob two baseless arguments: that the District Court (i) overweighted Slovenia's interest in this dispute because Pipistrel is not a party to the suit, and (ii) mistakenly held that Slovenian law would apply to the tortious interference claims. Plaintiffs are wrong. PB33-36.

As to Plaintiffs' first argument, the critical point here is that Plaintiffs' tortious interference claims are fundamentally about—and require as an essential element—a breach of the underlying contract. *E.g.*, *Sourcing Sols. USA, Inc. v. Kronos Am., LLC*, 2011 WL 13223514, at *3 (S.D. Fla. Jan. 26, 2011) (breach of contract is a "necessary element" of tortious interference with contract); Doc. 95 at 11 ("To succeed on their claims for tortious interference, Plaintiffs would have to show that Pipistrel breached the underlying contracts."). "If there was no underlying breach,

there was no interference." *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 848 (11th Cir. 2017).

Thus, the baseline issue here is whether Pipistrel breached the underlying contracts with Declan and RRA. And because those contracts are governed by Slovenian law, the substantive question of breach is likewise a question of Slovenian law, as Dr. Možina made clear and as the District Court recognized. Doc. 90-3 ¶¶ 14-15; Doc. 95 at 14, 16 n.6. The District Court was therefore wholly justified in determining that the core dispute is ultimately about "a breach of Pipistrel's U.S. sales and distribution contracts," and concluding that because Pipistrel is a Slovenian company, "the Slovenian forum has a strong interest in resolving this dispute." Doc. 95 at 15 n.5. That Plaintiffs sued two U.S. companies "under the guise of a domestic tortious interference claim," Doc. 95 at 16, does not somehow render the District Court's clear-eyed analysis an abuse of discretion. *See Aldana*, 578 F.3d at 1288.

As to Plaintiffs' second argument, they are simply wrong that the District Court "assum[ed] that, under Slovenian law, the choice of law provisions in *contracts* between Plaintiffs and non-party Pipistrel should apply to a U.S.-based *tort* claim between Plaintiffs and Textron." PB34 (emphasis in original). The District Court never held that Slovenian law would govern Plaintiffs' tort claims; rather, it correctly recognized that the core question of *breach* would be governed by Slovenian law. Doc. 95 at 14-16 & n.5, n.6. Indeed, contrary to Plaintiffs' assertion that the District

36

Court "did not even acknowledge Dr. Galič's declaration when it concluded that a Slovenian court would apply Slovenian law to decide Plaintiffs' tortious interference claim," PB36, the District Court *directly* addressed that declaration, stating, "As Dr. Galič explained, at worst, a Slovenian court would apply U.S. law to Plaintiffs' claims of tortious interference *ancillary to its application of domestic law to the primary issue of whether the contract was breached*." Doc. 95 at 14.

Nowhere did Plaintiffs or Dr. Galič—either on appeal or below—dispute that even if U.S. law applied to the tort claim, Slovenian law would still govern the core question of breach, as Dr. Možina made clear.[8] The District Court was thus well within its discretion to conclude that Slovenia's interests in resolving this dispute were "entitled to the greater weight," particularly given the "risk of inconsistent rulings regarding the breach of contract question, which is the crux of this dispute." *Id.* at 16; *see also Nygård v. DiPaolo*, 753 F. App'x 716, 728-729 (11th Cir. 2018) (dismissing where there was "risk of an inconsistent outcome"); *A/S Dan-Bunkering Ltd. v. M/V Centrans Demeter*, 633 F. App'x 755, 758 (11th Cir. 2015) ("need to resolve and apply foreign law points us toward dismissal"); *Aldana*, 578 F.3d at 1288.

## 2. *The District Court Correctly Applied* Atlantic Marine *In Disregarding Private Interests.*

---

[8] Plaintiffs make the blanket statement that "only U.S. tortious interference law is applicable," PB32, but never address, much less challenge, Dr. Možina's conclusion that Slovenia law governs the question of breach.

Plaintiffs' argument that the District Court erred in applying *Atlantic Marine* to disregard the private interest factors fails for multiple reasons.

*First,* the argument is waived because it was not raised below. Nowhere did Plaintiffs so much as *hint* that the *Atlantic Marine* framework did not apply, and that the District Court was thus obligated to consider private interests—despite Defendants having expressly argued that *only* public interest factors need be considered. Doc. 90 at 18-19; *see generally* Doc. 91; *see also Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009) ("[L]egal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal.").

While Plaintiffs made vague "allusions" to "the fact that some events occurred in Florida and that some witnesses reside in the U.S.," which the district court characterized as "primarily private interest factors," Doc. 95 at 15, this one-sentence-long, wholly unspecific and unsupported assertion is insufficient to preserve the argument to which Plaintiffs now dedicate multiple pages of their appellate brief. *See* PB28-33; *see also Mitchell*, 2024 WL 140065, at *3. Plaintiffs never argued that such allegations even *are* private interest factors, or that the court was obligated to weigh such allegations—indeed, Plaintiffs never even argued that these allegations weigh in favor of U.S. jurisdiction, only that it was "baffling" that the case should be litigated in Slovenia. *See Ledford v. Peeples*, 657 F.3d 1222, 1258 (11th Cir. 2011) ("A mere recitation of the underlying facts . . . is insufficient to preserve an argument;

the argument itself must have been made below.").  Plaintiffs have thus waived their argument on appeal.  *Supra* 18-20.

*Second*, even if this Court were to consider Plaintiffs' argument, it fails on its merits.  To recap the specifics of Plaintiffs' argument, they contend that *even if* the FSC applies—that is, that Defendants may enforce it against them and that they are bound by it—the District Court should *still* have considered their private interests because *Atlantic Marine*'s modification of the *forum non conveniens* analysis *only* applies if Defendants were also signatories.  PB26-32 ("Even if the contractual forum selection clauses . . . could be applied to Textron . . . , the district court abused its discretion . . . .").  This is nonsensical and contrary to law.

While the parties in *Atlantic Marine* were all signatories to the agreement and thus bound by the FSC—and thus the Supreme Court only had occasion to discuss that scenario—its reasoning was not based on an accounting of whose signatures appear on the contract.  The real question is whether the party resisting enforcement of the FSC is bound by the clause, such that consideration of its private interests is obviated by the fact that it already contracted away such considerations when it agreed to the FSC.  As this Court has stated, *Atlantic Marine* stands for the proposition that "*[a] binding forum-selection clause* requires the court to find that the *forum non conveniens* private factors entirely favor the selected forum." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1029 (11th Cir. 2014).

Here, Plaintiffs agreed to broad, mandatory FSCs that encompass, in the Declan Contract, "*Any controversial relations arising from this or in connection with this contract*," and in the RRA Contract, "*any dispute arising out of or in connection with*" the contract. Doc. 76-3 § 9.1; Doc. 76-4 Art. 28.1. Plaintiffs have never disputed that these clauses encompass tort claims arising from or in connection with the alleged breaches of those contracts. And as the District Court held—and which Plaintiffs' argument on this point accepts—they are bound by those clauses through the application of equitable estoppel. Doc. 95 at 10-11.

As such, all of the reasoning in *Atlantic Marine* applies. Plaintiffs knew full well when entering into their contracts with Pipistrel that any lawsuit they could bring—as U.S. companies with U.S.-based witnesses—that arose from or were in connection with those contracts would be litigated in Slovenia. They then brought precisely such a lawsuit (while ignoring the FSCs). They cannot now complain that, suddenly, it is too inconvenient to litigate in Slovenia an action fundamentally about whether Pipistrel breached those Slovenian contracts, when they have already "preselected [a] forum . . . for themselves and their witnesses, [and] for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64. "[W]hatever inconvenience" Plaintiffs now believe they would suffer by having to litigate in Slovenia was contractually accepted long ago. *Id.* It thus makes all the sense in the world that *Atlantic Marine* would apply here to obviate consideration of Plaintiffs' private interests.

This is precisely how this Court and others have treated this issue—when the party resisting the FSC is in fact bound by the clause, *Atlantic Marine* applies to disregard that party's private interests. *See Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016) (non-signatory plaintiff bound by the clause, applying *Atlantic Marine* to consider only public factors); *HNA*, 2021 WL 4459404, at *5 (nonparty can enforce against signatory plaintiff, *Atlantic Marine* modification applies); *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 70 (3d Cir. 2018) (non-signatory plaintiff bound by clause, *Atlantic Marine* modification applies); *Vloeibare Pret Ltd. v. Lloyd's Reg. N. Am., Inc.*, 606 F. App'x 782, 786 (5th Cir. 2015) (non-signatory plaintiff bound by clause and thus only public interest factors considered); *Ney v. 3iGro., P.L.C.*, 2023 WL 6121774, at *5 (5th Cir. Sept. 19, 2023) (non-signatory defendants could enforce clause against signatory plaintiff, *Atlantic Marine* applied).

Indeed, the Third Circuit has explicitly rejected Plaintiffs' contention that its *Howmedica* decision restricts *Atlantic Marine* only to signatories. *See* PB28, 31 (relying on *In re Howmedica Osteonics Corp*, 867 F.3d 390 (3d Cir. 2017)). In *McGraw-Hill*, 909 F.3d at 70, the court stated that "*Howmedica* did not go so far, and we reject [the plaintiffs'] request" to "adopt[] a 'bright-line' rule: *Atlantic Marine* applies only to signatory parties." *Howmedica*, the court explained, concerned the *opposite* of what is happening here. That case "addressed a situation in which

41

signatory plaintiffs sought to bind non-signatory defendants to a forum selection clause . . . .  Having determined those non-signatories were *not bound* by the clause, [the court] concluded they were properly treated as 'non-contracting parties,'" and thus their private interests "must still be considered." *McGraw-Hill*, 909 F.3d at 69 (citing *Howmedica*, 867 F.3d at 403-07).  This makes sense, because a litigant that never entered into and is not bound by an FSC "did not . . . make any such advance agreements" as to forum, and "*their* private interests must still be considered by the district court." *In re Rolls Royce Corp.*, 775 F.3d 671, 679 (5th Cir. 2014).

Thus, as the Fifth Circuit explained in *Rolls Royce*—on which Plaintiffs rely— while courts *should* consider "private factors of those parties who have *not* signed a forum selection agreement," for "**the party who signed the agreement**, *Atlantic Marine* is clear—**the court cannot consider private-interest factors that counsel against transfer to the agreed-upon forum**." *Id*.  So Plaintiffs have it exactly backwards.  Because they signed the contracts and are bound by the FSCs, their private interests are not considered.  That Defendants are non-signatories is irrelevant—unless the clause were to be enforced against Defendants, in which case Defendants' private interests *would* be considered.[9]

---

[9] In a last-ditch effort, Plaintiffs contend—for the first time on appeal—that the Declan Contract is "specifically limited to 'the contracting parties.'" PB30 n.10. Because this argument was never raised in the District Court, it is waived. *Supra* 18-20.  In any event, the argument is unavailing.  Although the contract mentions "the contracting parties"—because, as with any contract, it is primarily concerned with

### 3. *Even If Private Factors Applied, They Do Not Outweigh The Public Factors*

Even if the Court considers Plaintiffs' argument that private factors applied, dismissal is warranted. The only even arguably relevant considerations Plaintiffs raised below as private factors were "allusions to the fact that some events occurred in Florida and that some witnesses reside in the U.S." Doc. 95 at 15 (citing Doc. 91 at 12). Plaintiffs reiterate those same vague "allusions" on appeal. PB32.

Plaintiffs' unsupported contention that "the majority" of the "case events" occurred in the U.S. is wrong. PB32. Throughout the briefing below, Plaintiffs never disputed that "[t]he gravamen of a tortious interference claim is that the defendant induced a third party to breach the contract." *Sekula v. Residential Credit Sols., Inc.*, 2016 WL 4272203, at *3 (M.D. Fla. Aug. 15, 2016); *see also People for the Ethical Treatment of Animals, Inc. v. Dade City's Wild Things, Inc.*, 2017 WL 10299577, at *2 (M.D. Fla. July 14, 2017) (liability "only if the defendant 'induces' a person to breach a contract"). Nor have they ever disputed that the location giving rise to a tortious interference claim is wherever the defendant "allegedly convinced [the third party] to breach her contract." *Metnick & Levy, P.A. v. Seuling*, 123 So.3d 639, 645-

---

the contracting parties—there is *no* indication that that language limits enforcement of the clause *only* to the contracting parties. Indeed, Plaintiffs cannot seriously contend that the clause is so limited, otherwise it would nullify their *own position* that a third-party successor is bound by the clause. PB25-26. It is unclear what Plaintiffs mean to argue when they point out, in the same footnote, that the RRA Contract directs disputes to Slovenian court, PB30 n.10, which is precisely Defendants' point.

46 (Fla. Dist. Ct. App. 2013); *Hunt v. Cornerstone Golf, Inc.*, 949 So.2d 228, 230 (Fla. Dist. Ct. App. 2007) (same); *Don King Prods., Inc. v. Mosely*, 2016 WL 3950930, at *4 (S.D. Fla. Jan. 27, 2016) (same).

The crux of Counts I and II is thus whether Pipistrel breached its contracts with Plaintiffs, and if so, whether Defendants induced them to do so. As such, most, if not all, of the SAC's buckshot allegations about Defendants' purported actions in the U.S.—concocted to try to contrive jurisdiction in Florida—are utterly irrelevant to Plaintiffs' claims.[10] Conversely, much of the actually-relevant evidence and witnesses will be located in Slovenia. Plaintiffs' own SAC is replete with allegations about Pipistrel and Pipistrel personnel. *E.g.*, SAC ¶¶ 1-2, 5-9, 13, 38-39, 53, 58, 61-66, 74, 76-77, 80, 92-100, 112-116, 126. Plaintiffs' canard that the relevant events and witnesses are so overwhelmingly located in the U.S. as to override the public interests in favor of Slovenia should thus be rejected.

Fundamentally, Plaintiffs' cries of inconvenience are unsupportable. Whether

---

[10] For example, as to Count II, Plaintiffs allege that eAviation "committed an act of tortious interference when it attended and participated as a presenter of Pipistrel aircraft" at a convention in Florida. SAC ¶¶ 38, 123. Plaintiffs also include a vague allegation that RRA re-sold an airplane to eAviation in Florida. SAC ¶ 41. Plaintiffs additionally allege that RRA hosted a team from non-party Textron Aviation for training. SAC ¶ 44. None of this has anything to do with inducing Pipistrel to breach. As to Count I, Plaintiffs have no allegations about relevant activity occurring in Florida at all, and the main allegation of eAviation "procuring the . . . contract's breach and tortiously interfering with it" is the hand-delivery of a letter by eAviation to Declan *in Kansas*. SAC ¶¶ 73, 81. This, again, has nothing to do with inducing Pipistrel to breach, and even if it did, would not allow for jurisdiction in Florida.

the FSCs apply here or not, it is undisputed that Plaintiffs, at minimum, agreed to litigate in Slovenia if they sued Pipistrel on a direct breach of contract claim. Plaintiffs thus clearly have no problem litigating in Slovenia, notwithstanding the fact that they are U.S. businesses and their own witnesses would be based in the U.S.  It is spurious to contend that just because they have now sued U.S. entities on the same questions of breach, their willingness and ability to litigate in Slovenia evaporates.[11] Indeed, even as this case was being litigated in the U.S., Plaintiffs engaged in pre-suit negotiations with Pipistrel's counsel in Slovenia.  Doc. 80-6 ¶¶ 3-12.

Plaintiffs have failed to articulate any compelling private factors (or public factors, *supra* 35-37) that would outweigh what the District Court concluded was Slovenia's "strong interest in resolving this dispute," and the need to avoid inconsistent rulings on the breach of contract question.  Doc. 95 at 15-16 & n.5.  This Court should affirm the dismissals of Counts I and II.

---

[11] Plaintiffs contend that the need to translate documents is a private interest, PB32 & n.11, though administrative concerns are generally considered public interests. *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1384 (11th Cir. 2009).  Either way, the District Court held that the "minor administrative accommodation" of "translating some documents" are "inferior to Slovenia's interest."  Doc. 95 at 15 & n.5.  This does not come close to an abuse of discretion.  Plaintiffs now speculate that the contracts represent only a "small fraction" of the evidence that would have to be translated, PB32 n.11, but this is baseless—no discovery has taken place and there is nothing to suggest that a Slovenian court would even *need* documents translated, much less how many.  In any case, it certainly does not render the District Court's conclusion an abuse of discretion.

## II.    THE DISTRICT COURT CORRECTLY DISMISSED COUNT III FOR FAILURE TO STATE A CLAIM

Although the District Court erred in finding that it had jurisdiction over Count III, *infra* 53-62, it was correct to conclude that Plaintiffs had failed to state a claim on Count III.  Plaintiffs' arguments to the contrary are unavailing.

As an initial matter, Plaintiffs mischaracterize the District Court's decision as based on a "single, narrow ground."  PB36.  In addition to the ground on which Plaintiffs focus—the unrebutted argument that Mesa was predisposed to breach—the District Court also stated that "Defendants contend that RRA fails to state a claim in Count III because they cannot point to a breach of the Mesa Contract," Doc. 95 at 21; that Plaintiffs had generally failed to rebut *any* of Defendants' arguments as to Count III, *id.* at 22; and that Plaintiffs had failed to rebut Defendants' argument regarding the privilege to interfere, *id*.  More broadly, the District Court held that the SAC as a whole "remain[ed] a prohibited 'shotgun pleading,'" *id.* at 23 n.11.  Each of these provide independent bases to dismiss Count III.

### A.    Plaintiffs Never Addressed Mesa's Predisposition To Breach

Defendants argued below that, per Plaintiffs' *own allegations*, it was Mesa's CEO who approached Textron Inc.'s CEO to negotiate a new deal directly between Pipstrel and Mesa.  Doc. 90 at 32-33 (citing SAC ¶ 119); Doc. 95 at 21-22.  And because it was the termination of the Mesa Agreement in favor of this new agreement that Plaintiffs alleged "constitute[d] tortious interference with the Mesa Agreement,"

46

SAC ¶ 119, Defendants cannot be liable since Mesa was going to terminate the Mesa Agreement anyway.  Doc. 90 at 33 (citing *Farah v. Canada*, 740 So.2d 560, 562 (Fla. Dist. Ct. App. 1999) (reversing where contracting party predisposed to breach)).

The District Court was correct in finding that Plaintiffs simply ignored this argument.  Doc. 95 at 22.  Plaintiffs' Opposition did not even acknowledge this argument, much less try to rebut it.  *See* Doc. 91.  It was thus entirely appropriate for the District Court to treat Plaintiffs' silence as conceding the issue.  *See Emrit v. Universal Music Grp.*, 2020 WL 4751446, at *5 (M.D. Fla. Aug. 17, 2020), *aff'd*, 833 F. App'x 333 (11th Cir. 2021) (holding that failing to address an argument in response brief concedes the issue and collecting cases holding the same).

On appeal, Plaintiffs pretend that they did not concede the issue, but they do not and cannot point to any part of their Opposition brief that remotely addressed this argument.  Nor do they take issue with the clear case law holding that arguments are deemed conceded when unaddressed in an opposition brief.  Instead, they point to a smattering of disconnected pages from their Opposition brief that happened to embed citations to the SAC, wherein Plaintiffs alleged in conclusory fashion that Defendants "cut" RRA out of the Mesa deal and caused the breach of the Mesa Agreement.  PB37.  But none of these pieced-together conclusory allegations actually address Defendants' argument, and simply citing to allegations in a complaint does not suffice.  *See Mesa v. L. Enf't Sys., LLC*, 2015 WL 12804525, at *7 (S.D. Fla. Aug. 4,

2015) (dismissing case where "Plaintiff fails to respond to any of these arguments and instead merely restates his conclusory allegations"). And while a district court must accept nonconclusory allegations as true on a 12(b)(6) motion, it need not, as Plaintiffs now suggest, scour a brief's random citations to construct an argument for the plaintiffs that the plaintiffs themselves never made. PB37.[12]

## B.    Plaintiffs Never Identified Any Breach Of The Mesa Agreement

As the District Court noted, Defendants also argued that Plaintiffs failed to allege which provisions of the Mesa Agreement were breached, what conduct established that breach, who breached, and how Defendants allegedly induced that

---

[12] Even now, Plaintiffs' rewriting of the SAC, PB37-40, *still* does not even cite the key allegation raised by Defendants below (SAC ¶ 119). Instead, Plaintiffs concoct a gross misrepresentation of their own allegations. They now pretend to have alleged that it was Pipistrel that "without explanation" arranged for eAviation to be a part of the discussions with Mesa. PB38-39. In reality, the cited portion of the SAC makes plain that it was *RRA itself* that "arranged for a discussion between RRA, Mr. Massey [Pipistrel], Mr. Scholl [eAviation] and Mesa," due to the "size of the Mesa transaction." SAC ¶ 109. Similarly, contrary to the present narrative that it was Pipistrel unilaterally forcing a new pricing structure onto RRA, the SAC alleges that it was *RRA itself* that sought to "work through the [pricing] 'issues'" and "make something work" even after executing the Mesa Agreement. SAC ¶¶ 112-13. And contrary to Plaintiffs' current story that it was only after RRA failed to deliver planes to Mesa that "Mesa approached Textron," PB40, the SAC alleges that it was during the discussions about the pricing structure—which, again, RRA itself facilitated— that Mesa's CEO called Textron Inc.'s CEO to "work out" a new contract between Pipistrel and Mesa. SAC ¶ 119. In any event, setting aside these factual deficiencies, insofar as this misrepresentation of the SAC constitutes a rebuttal to Defendants' argument, such "arguments" cannot be raised for the first time on appeal. *Supra* 18-20.

party to breach. Doc. 95 at 21 (citing Doc. 90 at 32).[13] On appeal, Plaintiffs ignore this point and still fail to point to any of this information. This is fatal to their claim and independently warrants dismissal of Count III. *See Centennial Bank v. Servisfirst Bank Inc.*, 2016 WL 6037539, at *2-3 (M.D. Fla. Oct. 14, 2016) (dismissing tortious interference claim where plaintiff failed to identify which provisions were breached and which conduct established the breach); *Sourcing Sols.*, 2011 WL 13223514, at *3 (breach is a "necessary element" of tortious interference with contract).

### C.  Plaintiffs Ignored Defendants' Other Arguments, Including Defendants' Privilege To Interfere

In a similar vein, the District Court stated more generally that "inexplicably, nowhere in Plaintiffs' thirty-five page Response does RRA rebut Defendants arguments that Count III fails to state a claim. . . . Thus, they have conceded it does not." Doc. 95 at 22. And indeed, in addition to the foregoing, Plaintiffs also wholly ignored Defendants' argument that "[b]y Plaintiffs' own allegations . . . eAviation's alleged 'interference' had no effect on Mesa's intent to continue performing under the Mesa Agreement." Doc. 90 at 32. Plaintiffs' Opposition brief is entirely devoid of any mention of this argument, *see generally* Doc. 91, as is its appellate brief.

Furthermore, as the District Court noted, while Plaintiffs "meekly rebut

---

[13] Plaintiffs' Opposition cited, without elaboration, paragraphs 114, 125, 126, and 160 of the SAC, but none of those paragraphs include any coherent allegations about what provisions of the Mesa Agreement were breached, who breached, or how Defendants allegedly induced that party to breach. *See* Doc. 91 at 28.

Defendants' secondary argument that Defendants had a privilege to interfere with these contracts, they only did so ambiguously and without any reference to the Mesa contract." Doc. 95 at 22. Indeed, Plaintiffs' Opposition referred *only* to the contracts "Pipistrel executed . . . with RRA and Declan," concluding that Defendants are "strangers to *the* contract," without once mentioning the Mesa Agreement, which was executed between RRA and Mesa. Doc. 91 at 36. Plaintiffs do not raise this issue on appeal, thus waiving any arguments they may have. *Whitten*, 778 F. App'x at 793.

### D. The District Court Correctly Dismissed The SAC As A Shotgun Pleading

This Court has long admonished plaintiffs against the "sin[s]" of shotgun pleadings. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Here, after having already similarly admonished Plaintiffs when it dismissed the FAC, the District Court held that the SAC remained, "[i]n more vivid relief than most," a "prohibited 'shotgun pleading.'" Doc. 95 at 23 n.11. As such, notwithstanding and in addition to all of the District Court's other reasons for dismissal, it unambiguously held that the SAC, including Count III, should be dismissed as an "emblematic" shotgun pleading which "fail[ed] to give Defendants and the Court adequate notice of the [] grounds upon which each claim rests." *Id.*

Plaintiffs try to minimize this dispositive holding by contending that the District Court "did not dismiss on that basis." PB42 n.13. This is obviously false, and in any event Plaintiffs' meager efforts at rehabilitating their shotgun pleading

deficiencies fail. Plaintiffs do not and cannot rebut the District Court's finding that the SAC "continues to lump claims against both Defendants without specifying which of the defendants are responsible for which acts or omissions." Doc. 95 at 23 n.11. All Plaintiffs say in response is "Count III is pled solely against Textron and its agent, Textron eAviation." PB42 n.13. But the issue is not whether Plaintiffs have named identifiable defendants, it is whether the allegations provide sufficient notice as to what *each* defendant *actually did* that would render it liable to Plaintiffs. *See Prolow v. Aetna Life Ins. Co.*, 510 F. Supp. 3d 1303, 1310-11 (S.D. Fla. 2021) (dismissing complaint where it "impermissibly lump[ed] the two Defendants together" and failed to "adequately differentiate between Defendants [or] inform each Defendant separately of the allegations that appl[ied] to it").

Plaintiffs here have flagrantly failed to do so. Throughout the SAC, including on Count III, Plaintiffs lump together Textron Inc. and eAviation when alleging actions taken by the latter (or Pipistrel, or Mesa), without stating what Textron Inc. supposedly did. *E.g.*, SAC ¶¶ 12-14, 30-34, 37-40, 112-116, 122-128.

As before, Plaintiffs try to salvage their faulty allegations by doubling-down on the conclusory allegation that eAviation was Textron Inc.'s "agent." PB42 n.13. But as Defendants explained below, Doc. 90 at 20-22, Doc. 94 at 2, 9-10, the SAC does not come close to alleging any agency relationship. To meet this "high bar," a plaintiff must show "operational control of the subsidiary by the parent" and "control

51

of the subsidiary's daily basic operation." *Team Health Holdings, Inc. v. Caceres*, 357 So.3d 746, 752 (Fla. Ct. App. 2023). Plaintiffs utterly fail to meet this "high bar," and Defendants' unrebutted declarations conclusively disproved any agency relationship. Doc. 79-4, 79-5.

The District Court also held that the SAC violated shotgun pleading rules by including "vague[] reference [to] some other tranche of contracts that were purportedly tortiously interfered with which have no connection to the three counts plead in the [SAC]." Doc. 95 at 23 n.11 (citing SAC ¶ 126 n.7). Indeed, these allegations—which list over two dozen RRA contracts, none of which appear to form the basis of any of the three counts actually pled—are indecipherable. *See* SAC ¶ 126 & n.7. According to the SAC, Plaintiffs are claiming "damages incurred" by "brazen and malicious misconduct" concerning these contracts, *id.*, yet there is *zero* indication of what the "misconduct" is, why and how damages were "incurred" as a result, how such damages allegedly "flow" from the RRA Contract, and whether Plaintiffs are alleging that each of these contracts were breached or interfered with. Plaintiffs' current one-sentence protestation that these allegations "provide further evidence that the Defendants interfered with the Right Rudder-Pipistrel Contract" does not answer any of these questions, nor explain how this smattering of allegations have anything to do with the elements of RRA's tortious interference claim. PB42 n.13.

The SAC, including Count III, thus remains a shotgun pleading and should be

dismissed.  Indeed, because the District Court's shotgun pleading holding applies to the SAC as a whole, notwithstanding any of the other arguments raised by Plaintiffs, the SAC was properly dismissed.

## III.    THE DISTRICT COURT ERRED IN FINDING THAT IT COULD EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS ON COUNT III

The District Court need not have reached the merits of Count III because Count III should have been dismissed for lack of personal jurisdiction.  Defendants thus cross-appeal the District Court's erroneous conclusions that (i) the Mesa Agreement's Florida FSC conferred jurisdiction, and (ii) apparently in the alternative, the long-arm statute's breach-of-contract prong conferred jurisdiction.

### A.    The Mesa Agreement's Forum Selection Clause Does Not Confer Jurisdiction

The District Court held that the Mesa Agreement's "underlying forum-selection clause is determinative" on the jurisdictional question.  Doc. 95 at 17.  This is an argument that even Plaintiffs never made, apparently recognizing that the Mesa Agreement's FSC does not confer jurisdiction here.  The District Court's *sua sponte* justification for jurisdiction was incorrect for numerous reasons.

*First*, the District Court applied the wrong legal standards in determining whether a contractual FSC could confer jurisdiction.  A plaintiff must satisfy the Florida long-arm statute in order for the court to exercise jurisdiction.  *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (exercise of jurisdiction

must satisfy the long-arm statute and comport with due process). In 2013, the Florida legislature amended the long-arm statute by adding subsection (1)(a)(9), which authorizes Florida courts to "exercise specific jurisdiction over nonresidents who enter into contracts that contain a provision by which such person agrees to submit to the jurisdiction of the courts of this state of [Florida]." *Worth Grp. Inc. v. Morales*, 2023 WL 526318, at *3 (S.D. Fla. Jan. 27, 2023), *aff'd*, 2023 WL 9018410 (11th Cir. Dec. 29, 2023); Fla. Stat. § 48.193(1)(a)(9). More specifically, the contract "must comply with all the requirements of Fla. Stat. § 685.101 and Fla. Stat. § 685.102." *Dollar Rent a Car, Inc. v. Westover Car Rental, LLC*, 2017 WL 5495126, at *5 (M.D. Fla. Nov. 16, 2017); Fla. Stat. § 48.193(1)(a)(9).

Thus, to satisfy the long-arm's requirements for contractual consent to jurisdiction, the contract "must (1) include a choice of law provision designating Florida law as the governing law, (2) include a provision whereby the non-resident agrees to submit to the jurisdiction of the courts of Florida, (3) involve consideration of not less than $250,000, (4) not violate the United States Constitution, and (5) either bear a substantial or reasonable relation to Florida or have at least one of the parties be a resident of Florida or incorporated under its laws." *Dollar*, 2017 WL 5495126, at *5.

The District Court did not analyze *any* of the foregoing. Indeed, the District Court failed to even *cite* subsection (1)(a)(9) of the long-arm, or any of the statutory

law incorporated therein.  Instead, the District Court referenced the long-arm's *breach-of-contract* prong; referred to its analysis under Counts I and II; and stated that even though Defendants were non-signatories to the Mesa Agreement, their alleged "collu[sion]" with Mesa and "close affiliation to the dispute" justified applying the FSC against them.  Doc. 95 at 18-20.  None of this ad hoc analysis adheres to the analytical framework required by the long-arm.  The District Court's failure to apply the proper legal standards alone warrants reversal.  *Cf. Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257, 1259 (11th Cir. 2002) (applying wrong legal standard "is an abuse of discretion.").

*Second*, applying the correct standards, it is clear that the Mesa Agreement's FSC does not satisfy the long-arm statute.  Crucially, the relevant statutes incorporated into subsection (1)(a)(9) refer *only* to *parties* to a contract.  *See* Fla. Stat. § 685.102(1) (action may be maintained against out-of-state person or entity if, *inter alia*, the contract from which the action arises "contains a provision by which *such person or other entity* . . . agrees to submit to the jurisdiction of the courts of this state."); Fla. Stat. § 685.101 (referring only to "[t]he parties" to a contract).

Hence, courts have consistently held that to properly invoke subsection (1)(a)(9), the contract at issue must "include a provision whereby ***the non-resident agrees to submit to the jurisdiction*** of the courts of Florida."  *Dollar*, 2017 WL 5495126, at *5; *see also United Cap. Funding Corp. v. Salaman*, 2017 WL 6205792,

at *2 (M.D. Fla. Dec. 6, 2017) ("Florida's long-arm statute **requires a provision in which the nonresident agreed to submit to Florida's jurisdiction**.").

It follows, therefore, that where the defendant is not a party to the contract containing the FSC, the long-arm statute is not satisfied. As *Salaman* explained in rejecting the argument that a non-signatory was "nonetheless bound" by an FSC, the "long-arm statute requires more than a close relation to confer jurisdiction over a nonsignatory, nonresident. ***[Where] [a] provision in which [the defendant] agreed to submit to jurisdiction in Florida is not included in [the contracts at issue,] [t]hese contracts . . . do not comply with Florida's statutory requirements***" and the defendant "is **not subject to Florida's jurisdiction**" under the long-arm. 2017 WL 6205792, at *2-3 (citations omitted); *see also SANDP Sols., Inc. v. Silver Logic, LLC*, 2022 WL 7049243, at *8 (S.D. Fla. Jan. 14, 2022) ("Sections 685.101 and 685.102 must be strictly construed and any doubts . . . must be resolved in favor of the defendant. . . . [T]hese sections **only contemplate enforcement of a contract by a party to a contract against another party**. . . . The Court cannot depart from the plain and unambiguous language of [those sections] when personal jurisdiction is challenged. Thus **[because defendants] are not parties to the [agreement] . . . the Court cannot exercise jurisdiction**."); *Serra-Cruz v. Carnival Corp.*, 400 F. Supp. 3d 1354, 1363 n.4 (S.D. Fla. 2019) ("Sections 685.101 and 685.102 do not address third-party beneficiaries and **only contemplate enforcement of a contract by a party**

56

*to a contract against another party*.").

Here, it is undisputed that Defendants were not signatories to the Mesa Agreement. Only RRA and Mesa were. Defendants have not "[e]nter[ed] into a contract," Fla. Stat. § 48.193(1)(a)(9), containing "a provision by which [Defendants] agree[d] to submit to the jurisdiction of the courts of this state," Fla. Stat. § 685.102(1). Therefore, under clear Florida law, the district court could not exercise jurisdiction over Defendants, and it erred in holding to the contrary.

*Third*, assuming *arguendo* that some circumstance could allow for the Mesa Agreement to subject nonparties to Florida jurisdiction, none of the District Court's stated bases for bringing Defendants within the ambit of the clause are valid. The District Court referred to the "reasons outlined in Count I and II," Doc. 95 at 18-19, but Count I and II do not concern the Mesa Agreement, and involve *non-signatory Defendants* asserting FSCs against the *signatory* Plaintiffs under the estoppel doctrine, *see* Doc. 95 at 10-11. Here, it would be signatory RRA enforcing the FSC against non-signatory Defendants, with no articulated—or discernible—application of the estoppel doctrine. The District Court's reasoning under Counts I and II is simply not transferrable to Count III.

The District Court next stated that maintenance of the suit "does not offend traditional notions of fair play and substantial justice" because the Mesa Agreement's FSC applies to "[a]ny dispute . . . related in any way to [the Mesa Contract] **or the**

57

**legal relationship between Seller and Purchaser**.” Doc. 95 at 19 (emphasis in original). But the District Court gave no explanation for why this language exclusively referencing the Seller (RRA) and Purchaser (Mesa) should encompass nonparties Textron Inc. and eAviation. That the clause’s *scope* may broadly cover all manner of disputes between RRA and Mesa has no bearing on *whether nonparties may be bound by it*. *See Stiles*, 637 F. App’x at 559-562 (analyzing scope and whether nonparty was bound separately). Indeed, the due process considerations of “fair play and substantial justice” are “offended” when a nonparty is baselessly drawn into a forum to which it did not consent and with which it has no minimum contacts.[14] *See Econocaribe Consolidators, Inc. v. EGF Energy Partners, LLC,* 2012 WL 13014703, at \*2 (S.D. Fla. June 19, 2012) (FSC cannot confer jurisdiction over nonparty because such theory “does not rely on a knowing, freely negotiated clause or explicit consent” and violates notions of “due process”); *Slaihem v. Sea Tow Bahamas Ltd.*, 148 F. Supp. 2d 1343, 1348 (S.D. Fla. 2001).

The District Court next relied on *Lipcon* for the proposition that nonparty Defendants are bound by the FSC because they “colluded” with signatory Mesa, and because eAviation was “intimately involved with the formation of the Mesa Contract” and had “close affiliation to the dispute,” thus making it “foreseeable” that

---

[14] For the reasons briefed below, which the District Court did not consider, Count III does not satisfy constitutional due process (or the long-arm statute). Doc. 90 at 15-23; Doc. 94 at 3-4.

the FSC would apply to "any future lawsuits." Doc. 95 at 19-20. This is not the law.

The law is clear that the "closely related" doctrine stated in *Lipcon* is insufficient to satisfy the long-arm statute. *Salaman*, 2017 WL 6205792, at *2 (the "long-arm statute requires ***more than a close relation*** to confer jurisdiction over a nonsignatory, nonresident"). Moreover, *Lipcon* is inapposite because it was decided *prior to* the addition of subsection (1)(a)(9) of the long-arm. *See Salaman*, 2017 WL 6205792, at *2 (rejecting reliance on *Lipcon* because "Florida's long-arm statute was not at issue" in that case).

Furthermore, as this Court has explained, *Lipcon* stands for the limited proposition that non-signatories were bound by FSC "where the parties' rights were *completely derivative* of those of the [signing parties]—and thus directly related to, if not predicated upon the interest of the [signing parties.]." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1170 (11th Cir. 2009).

Here, Textron Inc.'s and eAviation's "rights" in connection with Count III have nothing to do with, much less are "completely derivative" of, Mesa's or RRA's rights. *Lipcon* thus has no application here, and does not reach vague invocations of "collu[sion]" with a signatory or "intimate[] involve[ment]" with the "formation" of a contract. *See Wiand v. Stoel Rives LLP*, 2016 WL 8931304, at *3-4 (M.D. Fla. Dec. 27, 2016) (rejecting reliance on *Lipcon* where claims were not "completely derivative"); *E-One, Inc. v. R. Cushman & Assocs., Inc.*, 2006 WL 2599130, at *13

(M.D. Fla. May 15, 2006) (same); *420 Julia St., L.L.C. v. Meecorp Cap. Markets, LLC*, 2010 WL 11623496, at \*2-3 (M.D. Fla. Nov. 30, 2010) (noting that *Lipcon* has been applied to relationships such as spouses of signatories, guarantors, and a president of a signatory company, none of which are relevant here).  And certainly nothing in *Lipcon* suggests, as the District Court indicated, that allegedly being *aware* of an FSC makes it foreseeable to a non-signatory that *it* will be bound by that clause. *See Matuszevoska v. Princess Cruise Lines, Ltd.*, 2007 WL 7728281, at \*7 n.7 (S.D. Fla. Feb. 12, 2007) (being "aware" of clause "does not necessarily result in a finding that it was foreseeable that Plaintiff would be bound").

Additionally, the party in *Lipcon* "arguing against enforcement of the forum selection clause . . . was the party initiating the action.  [The] court [did not] b[ind] a non-signing defendant to a forum selection clause in order to exercise personal jurisdiction over the defendant."  *Slaiheim*, 148 F. Supp. 2d at 1348.  As *Slaiheim* explained, in the latter scenario—*i.e.*, the scenario here—due process considerations "weigh heavily" against Plaintiffs seeking to bind non-signing Defendants to a clause to which they did not consent.  *Id.*; *see also supra* 58.

The Mesa Agreement's FSC thus does not confer jurisdiction over Defendants, and the District Court erred in holding to the contrary.

### B.    The Breach-Of-Contract Prong Of The Long-Arm Statute Does Not Provide A Basis For Jurisdiction

As part of its discussion of the Mesa Agreement's FSC, the District Court

60

stated that because Defendants allegedly "colluded" with Mesa "to induce a breach," and because Defendants allegedly "played a pivotal role in frustrating the aims" of RRA's contracts, these allegations "alone" satisfy the long-arm statute's breach-of-contract prong. Doc 95 at 18 (citing Fla. Stat. § 48.193(7)). While somewhat unclear, the District Court appeared to be positing the breach-of-contract prong of the long-arm statute as an alternative basis for jurisdiction separate from the Mesa Agreement's FSC. This was error.

The long-arm's breach-of-contract prong allows for jurisdiction over a person who "[b]reach[es] a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Fla. Stat. § 48.193(1)(a)(7). Here, however, Defendants were not "required by the [Mesa Agreement] to perform[]" any acts in Florida, and thus could not have breached the Mesa Agreement by failing to perform any such acts. They were not parties to the Mesa Agreement and none of the allegations referenced by the District Court have anything to do with *Defendants* breaching any contract. Indeed, Plaintiffs, who have alleged only *tort* claims for *tortious interference with contract*, have never sought to rely on the breach-of-contract prong of the long-arm statute to establish jurisdiction. Rather, the parties' briefing was directed at the tortious act prong of the long-arm statute, Fla. Stat. § 48.193(1)(a)(2), which the District Court did not reference.

The long-arm's breach-of-contract prong thus cannot serve as a basis for

exercising jurisdiction over Defendants. *Argos Glob. Partner Servs., LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1087 (S.D. Fla. 2020) (separately analyzing allegations of tortious interference independent of breach-of-contract prong).

<u>**CONCLUSION**</u>

The District Court's finding that it had jurisdiction over Count III should be reversed. The District Court's dismissal of the SAC should be affirmed.

Date: July 5, 2024

Respectfully submitted,

MITCHELL A. KARLAN, ESQ.
TIMOTHY SUN, ESQ.

GIBSON, DUNN & CRUTCHER LLP
200 PARK AVENUE
NEW YORK, NY 10166-0193
mkarlan@gibsondunn.com
tsun@gibsondunn.com

*/s/ Keef F. Owens*
SCOTT A. RICHMAN, ESQ.
KEEF FRED OWENS, ESQ.

MCDONALD TOOLE WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 246-1800
srichman@mtwlegal.com
DeclanFlightvTextronInc@mtwlegal.com

*Attorneys for Appellees/Cross-Appellants Textron Inc. and Textron eAviation Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 15,227 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365, in 14-point Times New Roman font.

Date: July 5, 2024

*/s/ Keef F. Owens*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing Appellees/Cross-Appellants' Brief was filed electronically on July 5, 2024, and will, therefore be served electronically upon all counsel.

*<u>/s/ Keef F. Owens</u>*