# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## Case No. 24-10913-A

---

DECLAN FLIGHT, INC. and RIGHT RUDDER
AVIATION, LLC,

*Appellants/Cross-Appellees*,

v.

TEXTRON eAVIATION INC. and TEXTRON INC.,

*Appellees/Cross-Appellants*.

---

Appeal from the United States District Court for the Middle District of Florida
No. 5:23-cv-00301-GAP-PRL

---

## APPELLEES/CROSS-APPELLANTS' REPLY BRIEF

---

Mitchell A. Karlan, Esq.
Timothy Sun, Esq.

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000

Scott A. Richman, Esq.
Keef Fred Owens, Esq.

McDonald Toole Wiggins, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL 32801
Telephone: (407) 246-1800

*Attorneys for Appellees/Cross-Appellants Textron Inc. and Textron eAviation Inc.*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, the undersigned certifies that the persons and entities listed below have an interest in the outcome of this case.

1.    Bailey Glasser LLP (counsel for Appellees/Cross-Appellants)

2.    Barrett, John W. (attorney for Appellees/Cross-Appellants)

3.    Bell, Robert R. (attorney for Appellees/Cross-Appellants)

4.    Brueckner, Leslie (attorney for Appellees/Cross-Appellants)

5.    Chan, Andrew (owner of Right Rudder Aviation, LLC)

6.    Declan Flight, Inc. (Appellee/Cross-Appellant)

7.    Freire, Andrew (attorney for Appellees/Cross-Appellants)

8.    Gibson, Dunn & Crutcher LLP (counsel for Appellees/Cross-Appellants)

9.    Glasser, Brian A. (attorney for Appellants/Cross-Appellees)

10.   Gvardjančič, Minu Anamaria (Slovenian attorney for Pipistrel)

11.   Karlan, Mitchell A. (attorney for Appellees/Cross-Appellants)

12.   Kauffman, James L. (attorney for Appellants/Cross-Appellees)

13.   Kennedy, Jessica M. (attorney for Appellees/Cross-Appellants)

14.   Law Firm Ketler & Partners l.f. LLC, a member of Karanovic & Partners (Slovenian counsel for Pipistrel, based in Ljubljana, Slovenia)

15.     Lawson, Charles (owner of Right Rudder Aviation, LLC)

16.     McDonald Toole Wiggins, P.A. (counsel for Appellees/Cross-Appellants)

17.     Mesa Air Group, Inc. (contractual signatory of the Mesa Agreement)

18.     Owens, Keef F. (attorney for Appellees/Cross-Appellants)

19.     Pipistrel d.o.o. (contractual signatory of the RRA Contract)

20.     Pipistrel Italia S.r.l. (contractual signatory of the RRA Contract)

21.     Pipistrel Vertical Solutions d.o.o. (contractual signatory of the Declan Contract)

22.     Presnell, Gregory A. (United States District Judge)

23.     Richman, Scott A. (attorney for Appellees/Cross-Appellants)

24.     Right Rudder Aviation, LLC (Appellants/Cross-Appellees)

25.     Ruhtar, Kevin (Slovenian attorney for Pipistrel)

26.     Signorelli, Jacklyn (attorney for Appellees/Cross-Appellants)

27.     Sun, Timothy (attorney for Appellees/Cross-Appellants)

28.     Textron eAviation Inc. (Appellee/Cross-Appellant) – Textron eAviation Inc. ("eAviation") is not publicly traded. eAviation is a wholly-owned subsidiary of Textron Inc.

29.     Textron Inc. (TXT) (Appellee/Cross-Appellant) – Textron Inc. is a U.S. publicly-held corporation with its common stock traded on the New

York Stock Exchange. Based upon reports filed by Textron Inc. with the U.S. Securities and Exchange Commission, both The Vanguard Group, Inc. and T. Rowe Price Mid-Cap Growth Fund, Inc. are deemed to beneficially own more than 10 percent of the stock of Textron Inc.

30.  Turner, John G. (attorney for Appellants/Cross-Appellees)

31.  Wood, Bryan (owner of Declan Flight, Inc.)

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

ARGUMENT ........................................................................................ 1

THE DISTRICT COURT ERRED IN FINDING THAT IT COULD
     EXERCISE JURISDICTION OVER DEFENDANTS ON COUNT III ....... 1

I.    PLAINTIFFS CONCEDE THAT THE DISTRICT COURT'S
     JURISDICTIONAL ANALYSIS WAS INCORRECT AND
     "IRRELEVANT." ........................................................................ 2

II.   PLAINTIFFS' ALTERNATIVE GROUNDS FOR AFFIRMANCE
     FAIL ........................................................................................ 4

     A.    Count III Does Not Satisfy The Florida Long-Arm Statute's
         Tortious Act Prong. ....................................................... 4

          1.    Plaintiffs' Vague Allegations Are Insufficient To
             Establish A Prima Facie Case of Jurisdiction. ............ 4

          2.    Defendants' Allegedly Tortious Acts, To The Extent
             Alleged At All, Did Not Occur In Florida. ................ 7

     B.    Exercising Jurisdiction Over Defendants On Count III Would
         Violate Due Process. ..................................................... 10

          1.    Count III Does Not "Arise Out Of Or Relate To"
             Defendants' Contacts With Florida. ......................... 11

          2.    Defendants Did Not Purposefully Avail Themselves Of
             The Privilege Of Conducting Activities In Florida. .......... 12

          3.    Exercising Jurisdiction Would Offend Traditional Notions
             of Fair Play And Substantial Justice. ....................... 17

CONCLUSION ................................................................................... 20

CERTIFICATE OF COMPLIANCE ................................................... 21

CERTIFICATE OF SERVICE ............................................................ 22

## <u>TABLE OF CITATIONS</u>

<u>Page(s)</u>

### Cases

*Access Now, Inc. v. Southwest Airlines Co.*,
   385 F.3d 1324 (11th Cir. 2004) .............................................................. 4

*Adinolfe v. United Techs. Corp.*,
   768 F.3d 1161 (11th Cir. 2014) ............................................................. 4

*\*Anderson v. Talentsy, Inc.*,
   599 F. Supp. 3d 1207 (M.D. Fla. 2022) ............................................... 16

*Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*,
   2017 WL 11680202 (S.D. Fla. Apr. 26, 2017) ..................................... 9

*Beckham v. Baker & Hostetler, LLP*,
   2023 WL 9957259 (N.D. Ga. Aug. 17, 2023) ..................................... 19

*Calder v. Jones*,
   465 U.S. 783 (1984) ....................................................................... 12, 13

*Casita, L.P. v. Maplewood Equity Partners, L.P.*,
   960 So.2d 854 (Fla. Ct. App. 2007) .................................................... 17

*Diamond Resorts U.S. Collection Dev., LLC v. Neally*,
   2022 WL 2056197 (M.D. Fla. Jan. 27, 2022) ...................................... 9

*Don King Prods., Inc. v. Mosely*,
   2016 WL 3950930 (S.D. Fla. Jan. 27, 2016) ....................................... 8

*Dorman v. Aronofsky*,
   36 F.4th 1306 (11th Cir. 2022) ............................................................ 6

*\*Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.*,
   2018 WL 3635112 (M.D. Fla. May 9, 2018), *report and
   recommendation adopted*, 2018 WL 6264836 (M.D. Fla. Nov. 30,
   2018) ................................................................................................... 15

*Est. of Scutieri v. Chambers*,
   386 F. App'x 951 (11th Cir. 2010) ................................................. 7, 17

*Flava Works, Inc. v. Roje on Holiday Inc.*,
   2012 WL 1535684 (S.D. Fla. May 1, 2012) ........................................ 9

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021) ....................................................................... 11, 12

*Hunt v. Cornerstone Golf, Inc.*,
   949 So. 2d 228 (Fla. Dist. Ct. App. 2007) ........................................... 8

## TABLE OF CITATIONS
*(continued)*

Page(s)

*Louis Vuitton, S.A. v. Mosseri*,
 736 F.3d 1339 (11th Cir. 2013) ................................................... 11, 17

*\*McCall v. Zotos*,
 2023 WL 3946827 (11th Cir. June 12, 2023) .............................. 15

*\*Metnick & Levy, P.A. v. Seuling*,
 123 So.3d 639 (Fla. Dist. Ct. App. 2013) ..................................... 8

*Michel v. NYP Holdings, Inc.*,
 816 F.3d 686 (11th Cir. 2016) ..................................................... 6

*\*Moore v. Cecil*,
 109 F.4th 1352 (11th Cir. 2024) ................................................. 12, 15

*Parker v. Alcon Mgmt. S.A.*,
 2022 WL 3905872 (11th Cir. Aug. 31, 2022) .............................. 12

*PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*,
 598 F.3d 802 (11th Cir. 2010) ..................................................... 5, 7

*Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*,
 723 F. App'x 871 (11th Cir. 2018) ............................................... 18, 19

*Steinhilber v. Lamoree*,
 825 F. Supp. 1003 (S.D. Fla. 1992), *aff'd*, 15 F.3d 1097 (11th Cir.
 1994) ............................................................................................. 17

*\*Sturmanskie LLC v. Picturemaxx Ag*,
 2022 WL 3030451 (S.D. Fla. July 5, 2022), *report and
 recommendation adopted*, 2002 WL 3028072 (S.D.Fla. Aug. 1,
 2022) ............................................................................................. 16

*\*Walden v. Fiore*,
 571 U.S. 277 (2014) ....................................... 2, 13, 14, 15, 16, 17, 19

*Wendt v. Horowitz*,
 822 So.2d 1252 (Fla. 2002) .......................................................... 5

*Wiegering v. Blue Cross & Blue Shield of Mass., Inc.*,
 2017 WL 1294907 (S.D. Fla. Feb. 2, 2017) ................................ 18

*Wolf v. Celebrity Cruises, Inc.*,
 683 F. App'x 786 (11th Cir. 2017) ............................................... 10

### Statutes

Fla. Stat. § 48.193(1)(a)(2) ................................................................... 2, 4

Fla. Stat. § 48.193(7) ............................................................................ 3

## **ARGUMENT**[1]

## **THE DISTRICT COURT ERRED IN FINDING THAT IT COULD EXERCISE JURISDICTION OVER DEFENDANTS ON COUNT III**

As explained in Defendants' opening and response brief, the District Court correctly dismissed all of Plaintiffs' claims. With respect to Count III, the District Court correctly held that Plaintiffs failed to state a claim for relief, and correctly dismissed that claim with prejudice. The District Court's dismissal of all claims should be affirmed.

The District Court's judgment as to Count III should also be affirmed on the independent basis that the District Court lacked jurisdiction over Defendants with respect to that claim. The District Court's contrary determination that it could lawfully exercise jurisdiction over Defendants on Count III was incorrect, and nothing in Plaintiffs' response brief changes that ineluctable conclusion.

Even Plaintiffs agree that the District Court erred in its *sua sponte* jurisdictional analysis of Count III. Without citing to, or applying, the proper legal standards under Florida's long-arm statute, the District Court held that the Mesa Agreement's FSC, which Defendants did not sign, conferred personal jurisdiction

---

[1] Citations in the form "Doc. X at Y" refer to the District Court docket entry X at page Y. Citations to particular pages reference the CM/ECF page number at the top of the page. Plaintiffs' opening appellate brief is cited as "PB." Defendants' opening and response appellate brief is cited as "DB." Plaintiffs' response and reply appellate brief is cited as "PRB." Citations to Doc. 90 are to Defendants' motion to dismiss, filed under seal, and may be found in Plaintiffs' Appendix Volume VI.

1

over Defendants.

Plaintiffs do not defend the District Court's decision or its reasoning. They simply pretend the District Court's decision was based on their preferred prong of the Florida long-arm statute, resurrecting their arguments before the District Court regarding the tortious-act prong of the long-arm, Fla. Stat. § 48.193(1)(a)(2).

But they are wrong on that basis, too, as none of Defendants' alleged tortious conduct with respect to Count III took place in Florida and due process requires more than "mere injury to a forum resident." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). This Court should reject the District Court's finding that it had jurisdiction over Count III and affirm the District Court's dismissal of the SAC.

## I.    PLAINTIFFS CONCEDE THAT THE DISTRICT COURT'S JURISDICTIONAL ANALYSIS WAS INCORRECT AND "IRRELEVANT."

The District Court held that it could exercise jurisdiction over Defendants on Count III based on (i) the Mesa Agreement's FSC, and (ii) the Florida long-arm statute's breach-of-contract prong. Doc. 95 at 17-20. As explained in Defendants' cross-appeal, these grounds for jurisdiction were never raised by any party, and in any event those conclusions are clearly incorrect. DB53-62.

Plaintiffs do not address any of Defendants' arguments. Rather, they *agree* that RRA never argued for jurisdiction based on contractual consent, and that any such analysis is "irrelevant." PRB46-47. They also concede that RRA never relied

2

on the breach-of-contract prong of the long-arm statute, but rather the tortious-act prong, and that the District Court's reliance on the former was a non sequitur.  *See* PRB46.

Despite conceding that the legal bases for the District Court's jurisdictional holding on Count III are irrelevant and incorrect, Plaintiffs try to interpret the District Court's holding as somehow in accord with what Plaintiffs *actually* argued below, which is that jurisdiction was proper under the tortious-act prong of the long-arm statute.  *See, e.g.*, PRB46-47.  In doing so, they state that the District Court merely "mentioned the forum selection clause" in the Mesa Agreement and that it did not hold that jurisdiction was proper based on contractual consent.  *Id.*

But the District Court could not have been clearer when it said "the underlying forum-selection clause is determinative," Doc. 95 at 17, and held that it "is satisfied that it has personal jurisdiction over Defendants *through the forum selection clause* of the Mesa Contract" *id.* at 20 (emphasis added).  And as for the tortious-act prong of the long-arm statute, the District Court never once even *cited* to that provision, instead relying entirely on the undisputedly inapplicable breach-of-contract prong. *See id.* at 18 (citing Fla. Stat. § 48.193(7)).  Plaintiffs' blatant mischaracterization of the District Court's holding is of no merit and should be rejected.

In short, Plaintiffs do not and cannot defend any of the grounds on which the District Court found jurisdiction.  This should end the matter, and the District Court's

3

conclusion should be rejected.  *See, e.g.*, *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) (arguments not briefed are deemed abandoned and will not be addressed); *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1172 (11th Cir. 2014) (generally, this Court "analyze[s] only the grounds for dismissal which the district court found dispositive").

## II.    PLAINTIFFS' ALTERNATIVE GROUNDS FOR AFFIRMANCE FAIL.

To the extent that Plaintiffs are contending that jurisdiction was proper under the tortious-act prong of the long-arm statute and attendant due process considerations, their arguments fail.  The District Court did not come close to so holding, and if this Court entertains these alternative arguments, it should reject them.

### A.    Count III Does Not Satisfy The Florida Long-Arm Statute's Tortious Act Prong.

Contrary to Plaintiffs' contentions, PRB40-47, the District Court lacked specific jurisdiction over Defendants for Count III under the tortious-act prong of the long-arm statute.   That provision confers jurisdiction over a defendant who "[c]omit[s] a tortious act *within this state*."  Fla. Stat. § 48.193(1)(a)(2) (emphasis added).  For the reasons that follow, Plaintiffs fail to satisfy that prong of the long-arm statute.

#### 1. *Plaintiffs' Vague Allegations Are Insufficient To Establish A Prima Facie Case of Jurisdiction.*

"In Florida, before a court addresses the question of whether specific

jurisdiction exists under the long-arm statute, the court must determine whether the allegations of the complaint state a cause of action." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 808 (11th Cir. 2010) (because complaint did not adequately allege causes of action, "[t]hose counts were . . . beyond the reach of Florida's long-arm statute"); *see also, e.g.*, *Wendt v. Horowitz*, 822 So.2d 1252, 1260 (Fla. 2002) (where jurisdiction turns on whether a tort is committed in Florida, court must determine whether complaint states a cause of action).

Here, as Defendants explained, the District Court correctly concluded that Plaintiffs—after *three* attempts to plead cognizable claims—had failed to state a claim on Count III. *See* DB7-8, 46-53. The Florida long-arm statute thus does not reach Count III.

Plaintiffs' reply brief attempts to counter the numerous reasons Count III fails to state a claim, but these efforts are unavailing.[2] For example, Plaintiffs now purport to supply critical allegations missing from Count III, including "what was breached, who breached and how Defendants induced the breach" of the Mesa Agreement. PRB34. But the SAC is vague and self-contradictory as to all of these issues. It first

---

[2] In compliance with Fed. R. App. P. 28.1(c)(4), Defendants do not seek to further argue the issue of whether Count III adequately states a claim for relief, and respectfully refer the Court to pages 46-53 of Defendants' opening and response brief for a fulsome discussion of the issue. Defendants will address here only the aspects of Plaintiffs' response which most directly implicate the jurisdictional issue raised on cross-appeal.

alleges that Pipistrel's "failure to deliver the planes at the instruction of Textron and Textron eAviation caused a breach of the Mesa Agreement." SAC ¶ 125. Then one paragraph later it alleges that it was Mesa's "wrongful[]" "terminat[ion]" of the Mesa Agreement that was the "breach[]." *Id.* ¶ 126. Then in the actual Count, it alleges that Defendants caused "a termination and breach of the Mesa Agreement," and that it was "Mesa" who was caused "not to perform under that agreement." *Id.* ¶ 160.

Now, in a responsive brief on appeal, Plaintiffs *still* cannot identify which provision of the Mesa Agreement was breached. *See* PRB34-35. Nor can they provide a coherent explanation of *who* breached the Mesa Agreement or how. Plaintiffs imply that *RRA* breached by quoting the District Court's opinion that the delay of "delivery of aircraft from Pipistrel to [Right Rudder] . . . prevent[ed] [Right Rudder] from performing its duties under the Mesa Contract." *Id.* (citing Doc. 95 at 18). But this totally ignores their allegations that it was *Mesa* who could not perform, and that the "breach" was Mesa's wrongful termination of the Mesa Agreement. No explanation of that contradictory allegation is ever given, nor would such a belated "explanation," provided for the first time in a responsive appellate brief, salvage allegations raised in the SAC. *See Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022) ("facts contained in a motion or brief cannot substitute for missing allegations in the complaint"); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 705 (11th Cir. 2016) (plaintiff "cannot now use his briefing to add new allegations and argue

6

that those new assertions support his cause of action").

Fundamentally, the incoherence that characterizes so much of the SAC carries through to this day. Did Defendants induce *RRA*'s breach by "instructing Pipistrel to refuse to deliver the planes to RRA"? PRB34-35. Or did Defendants induce *Mesa*'s breach by "collud[ing] with Mesa's CEO to frustrate the aims of the Mesa Contract"? PRB35. And what *provision* of the Agreement was breached?

This pervasive vagueness requires dismissal on jurisdictional grounds. If Plaintiffs cannot coherently allege what the breach was, which signatory breached the contract, or how Defendants induced this breach, it is impossible to determine where and how Defendants committed the allegedly tortious act, or if any "tortious act" was committed at all. "Vague allegations" like those that permeate Count III are "insufficient" to "make out a prima facie case of jurisdiction" and require dismissal. *Est. of Scutieri v. Chambers*, 386 F. App'x 951, 956 (11th Cir. 2010).

For these and the reasons already briefed, Plaintiffs have not stated a claim as to Count III, and thus that count is "beyond the reach of Florida's long-arm statute." *PVC*, 598 F.3d at 809.

### 2. Defendants' Allegedly Tortious Acts, To The Extent Alleged At All, Did Not Occur In Florida.

In any event, whatever theory Plaintiffs invoke, none of the purportedly "tortious" activity took place in Florida. The location giving rise to a tortious interference claim is where the defendant "allegedly convinced [the third party] to

breach her contract." *Metnick & Levy, P.A. v. Seuling*, 123 So.3d 639, 645-46 (Fla. Dist. Ct. App. 2013); *Don King Prods., Inc. v. Mosely*, 2016 WL 3950930, at *4 (S.D. Fla. Jan. 27, 2016) (same). "[A]ny claim for tortious interference should be made where those initial communications took place, rather than Florida." *Hunt v. Cornerstone Golf, Inc.*, 949 So. 2d 228, 230 (Fla. Dist. Ct. App. 2007).

Plaintiffs concede that Mesa operated out of Arizona, SAC ¶ 105, and Pipistrel of course is Slovenian. Textron Inc. is a Delaware corporation with its principal place of business in Rhode Island, and eAviation is a Delaware corporation with its principal place of business in Kansas. Textron Inc. does not have any locations in Florida, Doc. 80-4 ¶ 6, and eAviation has no offices or employees in Florida and is not registered to do business in Florida, Doc. 80-5 ¶¶ 5-6. Even assuming that the claimed conduct is actionably tortious, the claim would have arisen where Mesa was induced to breach or where Pipistrel was instructed to abandon its delivery—neither location is specified in the SAC, but presumably these events would have taken place in Arizona, Slovenia, Rhode Island, or Kansas. There is no allegation that any of it took place in Florida.

Indeed, as to Textron Inc., setting aside Plaintiffs' invalid claims of "agency" between Textron Inc. and eAviation, *see* DB51-52, Doc. 90 at 20-22,[3] Doc. 94 at 6,

---

[3] It has come to the undersigned's attention that, due to scrivener's error, certain citations to Doc. 90 (Defendants' December 15, 2023 motion to dismiss, filed under seal) in Defendants' opening and response brief are incorrect. Specifically, at pages

13-14, they do not allege any tortious acts on the part of Textron Inc. *at all*. At most, Plaintiffs allege one phone call from Mesa's CEO to Textron Inc.'s CEO. SAC ¶ 119. But as previously explained, this phone call is not the least bit tortious. *See* DB46-48. Nor is it alleged to have taken place in Florida. With no other specific allegations as to what Textron Inc. specifically *did*, as differentiated from eAviation, there can be no jurisdiction over Textron Inc. *See, e.g., Flava Works, Inc. v. Roje on Holiday Inc.*, 2012 WL 1535684, at *5 (S.D. Fla. May 1, 2012) (plaintiffs must establish jurisdiction "over *each* individual Defendant based on *that* Defendant's activities in and contacts with Florida." (emphasis added)); *Diamond Resorts U.S. Collection Dev., LLC v. Neally*, 2022 WL 2056197, at *7 (M.D. Fla. Jan. 27, 2022) (dismissing in part because plaintiff failed to allege "which Defendants took which actions"); *Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*, 2017 WL 11680202, at *5 (S.D. Fla. Apr. 26, 2017) (dismissing complaint where plaintiff "does not distinguish between [] Defendants in addressing personal jurisdiction").

    Plaintiffs fare no better with eAviation. They do not allege that eAviation

---

8-9 of Defendants' opening and response brief, citations to Doc. 90 should be to pages 5-15, rather than 12-22; pages 16-19, rather than 23-26; pages 19-24, rather than 26-31; pages 24-34, rather than 31-41; pages 3-5, rather than 10-12; and pages 34-35, rather than 41-42. At footnote 14 of Defendants' opening and response brief, the citation to Doc. 90 should be to pages 8-15, rather than 15-23. Additionally, on page 52 of Defendants' opening and response brief, citations to Doc. 79-4 and 79-5 should, instead, be to Doc. 80-4 and 80-5 (exhibits to the Karlan Declaration submitted in support of Defendants' motion to dismiss).

"renegotiate[ed]" the Mesa Agreement in Florida, SAC ¶ 114, or induced Mesa to terminate the agreement in Florida, or had any interactions with Mesa in Florida whatsoever. While Plaintiffs suggest that Mesa sent its notice cancelling the Mesa Agreement to RRA in Florida, they do not allege that Defendants had anything to do with that letter. SAC ¶ 124. Nor is there anything but the most conclusory of speculation that "Textron and Textron eAviation" "instruct[ed]" Pipistrel to not deliver planes, SAC ¶ 125, and even if such "instruction" *did* occur, there is zero allegation that it occurred in Florida. And even if it is true that "Defendants then directed Pipistrel to execute a new contract between Pipistrel and Mesa," PRB45, this also does not evidence any contact whatsoever between Defendants and Florida.

This utter dearth of Florida contacts cannot possibly justify jurisdiction over Defendants in Florida. *See, e.g., Wolf v. Celebrity Cruises, Inc.*, 683 F. App'x 786, 793 (11th Cir. 2017) (affirming dismissal "[b]ecause the alleged tortious activity occurred outside of Florida").

## B.    Exercising Jurisdiction Over Defendants On Count III Would Violate Due Process.

Plaintiffs do not really dispute any of the foregoing, nor could they. There is simply no relevant contact between Defendants and the forum. Instead, Plaintiffs argue that because RRA expected "payment" to be made to it in Florida, it was thus "injured" in Florida—and that is all that is required for personal jurisdiction, both as a matter of the Florida long-arm statute and constitutional due process. *See* PRB43-

45, 47-51.  But this is simply incorrect as a matter of law.  Even if injury alone were sufficient under the long-arm statute, it clearly is *not* under the due process clause of the Fourteenth Amendment, as discussed further below.

To satisfy due process, (1) the claims must "arise out of or relate to" the defendant's contacts with the forum, (2) the defendant must "purposefully avail[] himself of the privilege of conducting activities within the forum state," and (3) the exercise of jurisdiction must not "violate traditional notions of fair play and substantial justice."  *Louis Vuitton, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).  Plaintiffs' position fails each step of this analysis.

### 1. Count III Does Not "Arise Out Of Or Relate To" Defendants' Contacts With Florida.

For Plaintiffs' claim to "arise out of or relate to the defendant's contacts with the forum" there "must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359-60 (2021).

As discussed above, there are *no* such "contacts with the forum" here, much less the "strong" "relationship among the defendant, the forum, and the litigation" that forms the "essential foundation" of specific jurisdiction.  *Id.* at 365.  Depending on Plaintiffs' theory of the day, the cause of action arose either from Defendants communicating with Mesa or communicating with Pipistrel.  Those activities are not

alleged to have taken place in Florida, nor are there any allegations that Defendants directed into Florida any other communications giving rise to the alleged tort.

In short, there is not a single allegation of any "activity or . . . occurrence" on either Defendants' part having anything to do with the breach of the Mesa Agreement that "takes place in the forum State" and is "therefore subject to the State's regulation." *Id.* at 359-60. Thus, a finding of jurisdiction is improper. *See Parker v. Alcon Mgmt. S.A.*, 2022 WL 3905872, at *5 (11th Cir. Aug. 31, 2022) (no jurisdiction where there was no evidence that defendant had any contact with the state).

### 2. Defendants Did Not Purposefully Avail Themselves Of The Privilege Of Conducting Activities In Florida.

In cases involving intentional torts, jurisdiction over a defendant may be established under the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783, 787 (1984). This test requires a showing that "the defendant [] committed an intentional tort [] that was directly aimed at the forum, [] causing an injury within the forum that the defendant should have reasonably anticipated." *Moore v. Cecil*, 109 F.4th 1352, 1362 (11th Cir. 2024).

Plaintiffs grab onto their own distorted understanding of the *Calder* "effects" test like it is a panacea for their inadequate allegations. They contend that both the "relatedness" prong and the "purposeful availment" prong of the due process analysis are satisfied as long as a nonresident defendant "commits an intentional tort against a resident of the forum" or "aim[s] their tortious acts toward a Florida resident,

thereby tortiously interfering with a Florida contract and causing injury in Florida." PRB49, 50. In the wake of the United States Supreme Court decision in *Walden v. Fiore*, 571 U.S. 277 (2014), this is clearly incorrect, and the pre-*Walden* cases relied upon by Plaintiffs are unavailing.

In *Walden*, Nevada-resident plaintiffs sued a Georgia-based Drug Enforcement Administration agent in Nevada after he seized nearly $100,000 in cash from them at an Atlanta, Georgia airport. 571 U.S. at 279-280. Relying on *Calder*, the Nevada District Court dismissed the case, concluding that even if the defendant caused harm to respondents in Nevada while knowing they lived in Nevada, that fact alone did not confer jurisdiction. *Id.* at 281. The Ninth Circuit reversed, and the Supreme Court in turn reversed the Ninth Circuit. *Id.* at 282.

The Supreme Court explained that "mere injury to a forum resident is not a sufficient connection to the forum" to establish personal jurisdiction. *Id.* at 290. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* That connection must "arise out of the contacts that the defendant *himself* creates with the forum State." *Id.* at 284. Contacts between the *plaintiff* or third parties and the forum state cannot satisfy the "defendant-focused 'minimum contacts' inquiry." *Id.* Moreover, the analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. The

13

"plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

Specifically addressing *Calder*, the Supreme Court held that "[t]hese same principles apply when intentional torts are involved." *Id.* at 286. Jurisdiction "must be based on intentional conduct by the defendant that creates the necessary contacts with the forum . . . not just [with] a plaintiff who lived there." *Id.* at 286, 288.

As such, the defendant in *Walden* lacked the requisite minimum contacts with Nevada to justify the exercise of jurisdiction. *Id.* at 288. The Ninth Circuit erred by "shifting the analytical focus from [the defendant's] contacts with the forum to his contacts with [the plaintiffs]" and his "knowledge of [the plaintiffs'] strong forum connections." *Id.* at 289. Doing so "impermissibly allows a plaintiff's contact with the defendant and forum to drive the jurisdictional analysis." *Id.* That the plaintiffs felt the injury in Nevada was irrelevant because Nevada was simply "where [they] chose to be at a time when they desired to use the funds seized by [the defendant]." *Id.* at 290. Nothing "independently occurred there," and the plaintiffs would have "experienced [their] same lack of access [to the funds] in California, Mississippi, or wherever else they might have traveled." *Id.*

In light of *Walden*, Plaintiffs' insistence that jurisdiction is proper because Defendants allegedly intentionally harmed a "Florida resident" whose bank account

happened to be in Florida is clearly incorrect. "Post-*Calder*, the Supreme Court clarified that a defendant's actions do not create sufficient contacts with the forum state 'simply because he allegedly directed his conduct at [a] plaintiff[ ] whom he knew had . . . connections with the forum state.'" *Moore*, 109 F.4th at 1363 (quoting *Walden*, 571 U.S. at 289). "The mere fact that [the defendants allegedly] knew that the plaintiffs resided in Florida is not sufficient to show that Florida was targeted as the focal point of the statements." *McCall v. Zotos*, 2023 WL 3946827, at *5 (11th Cir. June 12, 2023); *see also Env't Mfg. Sols., LLC v. Fluid Grp., Ltd.*, 2018 WL 3635112, at *9 (M.D. Fla. May 9, 2018), *report and recommendation adopted*, 2018 WL 6264836 (M.D. Fla. Nov. 30, 2018) (rejecting under *Walden* the plaintiffs' reliance on "the fact that Defendants allegedly committed intentional torts that they knew would harm Plaintiffs in Florida").

As discussed above, other than RRA's address and bank account being in Florida, Plaintiffs do not allege any event that "independently occurred there" giving rise to their tortious interference claim. *Walden*, 571 U.S. at 290. Even if Defendants knew that their communications with Mesa or Pipistrel—none which is alleged to have taken place in Florida—would "injure Plaintiffs in Florida," "[t]hat is not enough under *Walden*." *Env't Mfg. Sols.*, 2018 WL 3635112, at *9. Had Plaintiffs moved or changed their bank, there would be no connection to Florida whatsoever. Jurisdiction is improper under these circumstances. *See, e.g.*, *Anderson v. Talentsy,*

*Inc.*, 599 F. Supp. 3d 1207, 1217 (M.D. Fla. 2022) (defendant's "conduct occurred elsewhere, and the fact that his conduct affected Plaintiffs in Florida does not suffice to authorize jurisdiction. . . . Had [Plaintiffs'] lived in Alabama or Wyoming during this period, his injury would have occurred there, and were Plaintiffs' argument to carry the day, [defendant] would be subject to the jurisdiction of those states.  That cannot be the case."); *Sturmanskie LLC v. Picturemaxx Ag*, 2022 WL 3030451, at *7-8 (S.D. Fla. July 5, 2022), *report and recommendation adopted*, 2002 WL 3028072 (S.D.Fla. Aug. 1, 2022) (if "Plaintiffs were to move tomorrow to another state, this matter would have little to no connection with Florida . . . without Plaintiff, Defendants simply have no connection to Florida").

Plaintiffs, notwithstanding their *own* citation to *Walden*, bizarrely double-down on *RRA's* connection to the forum—precisely what *Walden* teaches is constitutionally improper.  Plaintiffs argue that RRA "is a Florida corporation doing business in Florida"; the Mesa Agreement was "performable in Florida" and had a Florida FSC;[4] "commissions were to be paid in Florida"; Defendants knew of the Mesa Agreement and that RRA would be harmed in Florida.  PRB51.  All of this, according to Plaintiffs, somehow means that Defendants are subject to Florida

---

[4] Just a few pages earlier in their brief, Plaintiffs stated that consent by contract was "irrelevant."  PRB47.  Now, suddenly, the FSC is somehow relevant to the due process analysis.  To be clear, it is not, as it has nothing to do with any "contacts that [Defendants themselves] create[d] with the forum state."  *Walden*, 571 U.S. at 284; *see also* DB53-60.

jurisdiction.  *Id.*

But this is simply the wrong legal analysis.  *Walden*, 571 U.S. at 284-285 (a plaintiff's contacts with the forum and a defendant's contacts with the resident plaintiff, as opposed to with the forum, are irrelevant).  "[W]hen viewed through the proper lens—whether the *defendant's* actions connect him to the *forum*— [Defendants] formed no jurisdictionally relevant contacts with [Florida]." *Id.* at 289.[5]

### 3. Exercising Jurisdiction Would Offend Traditional Notions of Fair Play And Substantial Justice.

Exercising jurisdiction would violate traditional notions of fair play and substantial justice.  In this analysis, the court looks to "the burden of the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in

---

[5] Regarding the Florida long-arm statute, it is true that federal courts in this circuit— while acknowledging that Florida courts are not in agreement—have stated that the tortious-act prong extends to "a nonresident defendant [who] commits an act *outside* the state that causes *injury within Florida*." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1353 (11th Cir. 2013); *Est. of Scutieri*, 386 F. App'x at 955 (acknowledging lack of uniform guidance from Florida courts on the issue).  Post-*Walden*, this view—if taken to mean that injury alone is sufficient to confer jurisdiction under the long-arm statute—must be incorrect.  "The Florida long-arm statute must . . . be strictly construed to ensure compliance with due process requirements." *Steinhilber v. Lamoree*, 825 F. Supp. 1003, 1005 (S.D. Fla. 1992), *aff'd*, 15 F.3d 1097 (11th Cir. 1994).  A reading of the long-arm that would confer jurisdiction simply because injury is felt in Florida would render the statute unconstitutional.  Indeed, even before *Walden*, Florida courts acknowledged that accepting this position would "raise a substantial federal constitutional question." *Casita, L.P. v. Maplewood Equity Partners, L.P.*, 960 So.2d 854, 857-58 (Fla. Ct. App. 2007).  Post-*Walden*, there is little doubt that such an interpretation of the long-arm would impermissibly "extend the Florida long-arm law beyond its constitutional limits." *Id.*

obtaining convenient and effective relief, and the shared interest of the several states in furthering fundamental substantive social policies." *Rowe v. Gary, Williams, Parteni, Watson & Gary, P.L.L.C.*, 723 F. App'x 871, 876 (11th Cir. 2018).

As Defendants have noted, the District Court did not consider this inquiry, having focused its attention on the distinct and irrelevant due process considerations of binding Defendants to the Mesa Agreement's FSC. *See* DB57-58 & n.14. Plaintiffs now quote from the District Court's FSC discussion to make it seem like the District Court actually ruled on this issue, and that Defendants "fail[ed]" to address the relevant considerations. PRB52. But in truth, the District Court was engaged in a separate analysis, to which Defendants were responding.

Actually focusing on the relevant "fair play and substantial justice" considerations, it is clear that they weigh in favor of Defendants. First, the burden on Defendants would be substantial. Neither is based in Florida, and none of the relevant Textron Inc. or eAviation witnesses are in Florida. *See, e.g., Wiegering v. Blue Cross & Blue Shield of Mass., Inc.*, 2017 WL 1294907, at *9 (S.D. Fla. Feb. 2, 2017) ("Defendant will be burdened by litigating in this forum because all of its business operations are located in Massachusetts."). Plaintiffs contend that the "burden on Defendants is not an issue" because Defendants would consent to litigating in Slovenia. PRB53. But consenting to litigate Counts I and II in Slovenia says absolutely nothing about the burdens of litigating Count III in Florida, especially

where Counts I and II fundamentally concern whether a Slovenian counterparty breached a Slovenian contract, whereas Count III's only tie to Florida is the fact that RRA is a Florida entity.

Similarly, while it may be more convenient for RRA to litigate in Florida, due process limits on personal jurisdiction "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs." *Walden*, 571 U.S. at 284.

Moreover, Florida "has a minimal interest in adjudicating the dispute" because "far more of the relevant conduct occurred elsewhere." *Beckham v. Baker & Hostetler, LLP*, 2023 WL 9957259, at *7 (N.D. Ga. Aug. 17, 2023). As discussed above, none of the "tortious acts" at issue—Defendants communicating with Mesa or Pipistrel—are alleged to have taken place anywhere near Florida, and none of those entities are Florida companies or operate out of Florida. *See Rowe*, 723 F. App'x at 877 (Georgia had "limited interest in adjudicating this dispute because the lion's share of the conduct alleged occurred outside of Georgia").

Fundamentally, Plaintiffs' only real argument in favor of jurisdiction is that RRA is a Florida company and believes it should have gotten paid in Florida. The law is clear that that is not sufficient to confer jurisdiction over Defendants.

## **CONCLUSION**

The District Court's dismissal of all of Plaintiffs' claims should be affirmed. But the District Court's determination that it had jurisdiction over Count III should be rejected.

Date: August 26, 2024

Respectfully submitted,

MITCHELL A. KARLAN, ESQ.
TIMOTHY SUN, ESQ.

GIBSON, DUNN & CRUTCHER LLP
200 PARK AVENUE
NEW YORK, NY 10166-0193
mkarlan@gibsondunn.com
tsun@gibsondunn.com

*/s/ Keef F. Owens*
SCOTT A. RICHMAN, ESQ.
KEEF FRED OWENS, ESQ.

MCDONALD TOOLE WIGGINS, P.A.
111 N. Magnolia Avenue, Suite 1200
Orlando, FL  32801
Telephone: (407) 246-1800
srichman@mtwlegal.com
DeclanFlightvTextronInc@mtwlegal.com

*Attorneys for Appellees/Cross-Appellants*
*Textron Inc. and Textron eAviation Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2)(C) because this brief contains 4,909 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365, in 14-point Times New Roman font.

Date: August 26, 2024

*/s/ Keef F. Owens*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Appellees/Cross-Appellants' Brief was filed electronically on August 26, 2024, and will, therefore be served electronically upon all counsel.


*/s/ Keef F. Owens*

22